Ira D. Kharasch (CA Bar No. 109084)
John W. Lucas (CA Bar No. 271038)
Jason H. Rosell (CA Bar No. 269126)
Victoria A. Newmark (CA Bar No. 183581)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
E-mail:    ikharasch@pszjlaw.com
jlucas@pszjlaw.com
jrosell@pszjlaw.com
vnewmark@pszjlaw.com

Counsel to Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No. 8:20-bk-11507-ES |
| HYTERA COMMUNICATIONS AMERICA (WEST), INC., *et al.*, | Chapter 11 |
| Debtors and Debtors-in-Possession. | Jointly Administered With Case Nos.: 8:20-BK-11508-ES and 8:20-BK-11509-ES |
| Affects: | **NOTICE OF DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. § 363 APPROVING THE ENGAGEMENT CONTRACT OF DAVID STAPLETON AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS AND STAPLETON GROUP TO ASSIST THE CRO AND RELATED RELIEF** |
| ☒ All Debtors | |
| ☐ HYTERA COMMUNICATIONS AMERICA (WEST), INC., ONLY | |
| ☐ HYTERA AMERICA INCORPORATED, ONLY | [No Hearing Required Unless Requested Per L.B.R. 2014-1(b)] |
| ☐ HYT NORTH AMERICA, INC., ONLY | |

**TO THE HONORABLE ERITHE A. SMITH, UNITED STATES BANKRUPTCY JUDGE, THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS, THE OFFICE OF THE UNITED STATES TRUSTEE, PARTIES ENTITLED TO NOTICE PURSUANT TO F.R.B.P. 2002(i):**

**PLEASE TAKE NOTICE** that, on the date hereof, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed the *Debtors' Application for an Order Pursuant to 11*

1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*U.S.C. § 363 Approving the Engagement Contract of Stapleton Group to Provide David Stapleton as Chief Restructuring Officer of the Debtors and to Assist the CRO and Related Relief* (the "Application").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Rule 2014-1(b)(3)(E), any response or objection to the Application must be filed with the Clerk of the United States Bankruptcy Court for the Central District of California, Santa Ana Division (the "Bankruptcy Court") on or before **January 26, 2021**.

**PLEASE TAKE FURTHER NOTICE** that, at the same time, you must also serve a copy of the response or objection upon: (i) attorneys for the Debtors: Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, California 90067-4100, Attention: Ira D. Kharasch (ikharasch@pszjlaw.com) and John W. Lucas (jlucas@pszjlaw.com) and (ii) the U.S. Trustee, 411 West Fourth Street, Suite 9041, Santa Ana, California 92701, and shall be filed with the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE** THAT IF YOU FAIL TO RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF DEMANDED BY THE APPLICATION WITHOUT FURTHER NOTICE OR HEARING.

**PLEASE TAKE FURTHER NOTICE** that if a timely objection is filed, that a hearing will be scheduled and the Debtors will provide separate notice therefor.

Dated: January 13, 2021

PACHULSKI STANG ZIEHL & JONES LLP

By  */s/ John W. Lucas*
Ira D. Kharasch (CA Bar No. 109084)
John W. Lucas (CA Bar No. 271038)
Jason H. Rosell (CA Bar No. 269126)
Victoria A. Newmark (CA Bar No. 183581)

*Counsel to the Debtors and
Debtors in Possession*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

2

DOCS_LA:335013.2

1  Ira D. Kharasch (CA Bar No. 109084)
   John W. Lucas (CA Bar No. 271038)
2  Jason H. Rosell (CA Bar No. 269126)
   Victoria A. Newmark (CA Bar No. 183581)
3  PACHULSKI STANG ZIEHL & JONES LLP
   10100 Santa Monica Blvd., 13th Floor
4  Los Angeles, California 90067
   Telephone:  (310) 277-6910
5  Facsimile:  (310) 201-0760
   E-mail:  ikharasch@pszjlaw.com
6           jlucas@pszjlaw.com
            jrosell@pszjlaw.com
7           vnewmark@pszjlaw.com

8  Counsel to Debtors and Debtors in Possession

9              **UNITED STATES BANKRUPTCY COURT**

10             **CENTRAL DISTRICT OF CALIFORNIA**

11                  **SANTA ANA DIVISION**

| 12 | In re: | Case No.  8:20-bk-11507-ES |
|---|---|---|
| 13 | HYTERA COMMUNICATIONS AMERICA (WEST), INC., *et al.*, | Chapter 11 |
| 14 | Debtors and Debtors-in Possession. | Jointly Administered With Case Nos.: 8:20-BK-11508-ES and 8:20-BK-11509-ES |
| 15 | | |
| 16 | Affects: | **DEBTORS' APPLICATION FOR ENTRY OF ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE APPROVING THE ENGAGEMENT CONTRACT OF DAVID STAPLETON AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS AND STAPLETON GROUP TO ASSIST THE CRO AND RELATED RELIEF** |
| 17 | ☒ All Debtors | |
| 18 | ☐ HYTERA COMMUNICATIONS AMERICA (WEST), INC., ONLY | |
| 19 | | |
| 20 | ☐ HYTERA AMERICA INCORPORATED, ONLY | [No Hearing Required Unless Requested Per L.B.R. 2014-1(b)] |
| 21 | | |
| 22 | ☐ HYT NORTH AMERICA, INC., ONLY | |

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3

DOCS_LA:335013.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1     Hytera Communications America (West), Inc. ("Hytera West"), Hytera America

2 Incorporated ("Hytera East"), and HYT America, Inc. ("HYT"), the above-captioned debtors and

3 debtors in possession (the "Debtors"), hereby file this Application (the "Application") for entry of an

4 order approving the letter agreement dated January 12, 2021 (the "Engagement Contract"), annexed

5 hereto as **Exhibit A**, by and between the Debtors and Stapleton Group ("SG", or the "Firm"), *nunc*

6 *pro tunc* to January 12, 2021 (the "Engagement Date"). Pursuant to the Engagement Contract,

7 David Stapleton ("Mr. Stapleton") will serve as Chief Restructuring Officer ("CRO") to the Debtors

8 and sole director of HYT, and additional individuals (the "Additional Personnel") will provide other

9 services to the Debtors in support of the CRO. In support of this Application, the Debtors submit the

10 Declaration of David Stapleton (the "Stapleton Declaration") annexed hereto as **Exhibit B**, and

11 further respectfully represents as follows:

**I.**

**STATEMENT OF FACTS**

**A.**     **Jurisdiction and Venue**

15     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a

16 core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue of this chapter 11 case is proper pursuant

17 to 28 U.S.C. §§ 1408 and 1409.

**B.**     **General Background**

19     On May 26, 2020 (the "Petition Date"), the Debtors filed voluntary petitions for relief under

20 chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to

21 operate and manage their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of

22 the Bankruptcy Code. On June 15, 2020, the Office of the United States Trustee appointed an

23 Official Committee of Unsecured Creditors (the "Committee"). No request has been made for the

24 appointment of a trustee or an examiner in these chapter 11 cases.

25     The Debtors previously served American customers and markets through the distribution of

26 products developed by Hytera Communications Corp., Ltd. ("Hytera China"), which is not a debtor

27 and is a public company listed on the Shenzhen Stock Exchange. Hytera China is a leading global

28

4

1    provider of innovative land mobile radio communications solutions that improve organizational

2    efficiency and make the world safer.

3          On December 23, 2020, the Court entered an order approving, among other relief, the sale

4    (the "Sale") of certain of the assets of the Debtors to Hytera US Inc. (the "Purchaser") [Docket No.

5    375]. It is anticipated that that transaction will shortly close after the filing of this Application.

6    Pursuant to that certain *Transition Services Agreement* (the "TSA") entered into by the Debtors and

7    the Purchaser in connection with the Sale, the Debtors are providing certain transition services to

8    Purchaser post-closing of the Sale including, *inter alia*, assistance with the transfer of data included

9    in certain of the purchased assets to Purchaser, transitioning to Purchaser the use and operation of

10   certain purchased assets consisting of information technology systems and related software, as well

11   as access to certain information needed to enable Buyer to pay salary and administer benefits to

12   Purchaser's employees (the "Transition Services").

13                                    **II.**

14                          **RELIEF REQUESTED**

15          By this Application, the Debtors request the entry of an order, pursuant to sections 105 and

16   363 of the Bankruptcy Code, approving the Engagement Contract attached hereto as **Exhibit A** to

17   the declaration of Mr. Stapleton in support of the Application. A copy of the Stapleton Declaration

18   is annexed hereto as **Exhibit B**. Pursuant to the Engagement Contract, Mr. Stapleton will serve as

19   CRO to the Debtors and sole director of HYT, and the Additional Personnel will perform other

20   services under the Engagement Contract.[1]

21          The Debtors' relief requested herein is necessary to the successful administration of these

22   bankruptcy cases. The Debtors are seeking to retain the CRO and SG to provide management

23   services through the resolution of their chapter 11 cases. Further, any delay of the CRO's and SG's

24   services could cause irreparable harm to the Debtors' estates, as all of the Debtors' employees are

25

26   _____

27   [1]  Upon the closing of the Sale, Craig Barbarosh, the independent director of Hytera East and Hytera West, will be the
       sole director of Hytera East and Hytera West. Pursuant to the *Second Amended and Restated Independent Director
       Service Agreement* by and among Mr. Barbarosh, Hytera East, and Hytera West, Mr. Barbarosh is expected to

28     remain the sole director of Hytera East and Hytera West until thirty (30) days after the closing of the sale of the
       Debtors' inventory (accused and non-accused inventory).

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:335013.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    being transferred to the Purchaser upon the closing of the Sale and the Debtors will not have any

2    remaining employees.

3          Mr. Stapleton and SG will, among other things, assist management in developing and

4    negotiating a chapter 11 plan, prepare a liquidation analysis, perform claims analysis and

5    reconciliation, manage the performance of the Transition Services, in each case, pursuant to the

6    terms of the Engagement Contract.  Without such services, it would be difficult, if not impossible,

7    for the Debtors to complete the process of winding down the Debtors operations and administering

8    the estates. A proposed form of order approving the Application is annexed hereto as **Exhibit C**.

## III.

## QUALIFICATIONS

### A.    Qualifications of David Stapleton as Chief Restructuring Officer

Mr. Stapleton is a principal with SG.  Mr. Stapleton is well-suited to provide the restructuring
services required by the Debtors.   Mr. Stapleton helps operationally and financially distressed
organizations in both out-of-court workouts and chapter 11 reorganizations.  Mr. Stapleton has been
instrumental in a number of prominent restructurings, assuming various senior executive and
advisory rolls on an interim basis including:

- Interim chief executive officer / chief restructuring officer for a national distributor of bedding plants, shrubs, and ornamental plants with $100 million in sales

- Interim chief executive officer and receiver for energy service provider with offices in Pennsylvania, Texas and California and extensive fleet of service vehicles and FF&E

- Receiver and interim chief executive officer for multimillion dollar family business with three divisions

- Managed dairies and agricultural matters through receivership

- Liquidating trustee in a chapter 11 bankruptcy for multiple broadcast television stations

- Plan administrator to manage chapter 11 bankruptcy plan for estate with real property – including office, retail, industrial and condominium developments – in excess of $175 million

### B.    Qualifications of SG and Scope of Services of SG and CRO

The Debtors are familiar with the professional standing and reputation of SG. The Debtors
understand that SG has a wealth of experience in providing advisory services in restructurings and

DOCS_LA:335013.2

1    reorganizations and enjoys an excellent reputation for services its professionals have rendered on

2    behalf of debtors and creditors throughout the United States.

3        The Debtors have determined that obtaining the services of a CRO and other personnel with

4    chapter 11 experience will substantially enhance their ability to (a) meet their administrative

5    obligations in these bankruptcy cases and (b) preserve and maximize the value of the estates pending

6    the wind down and exit from these cases. As such, the Debtors seek to utilize SG personnel pursuant

7    to the Engagement Contract and Mr. Stapleton of SG as CRO, subject to the Court granting this

8    Application.

9        The Debtors believe that SG is well-qualified and able to advise them in a cost-effective,

10   efficient and timely manner. The Debtors have been advised by SG that it will endeavor to

11   coordinate with the other professionals retained in these bankruptcy cases to eliminate unnecessary

12   duplication or overlap of work. Therefore, the Debtors submit that the retention and employment of

13   SG is in the best interests of their estates, creditors and other stakeholders in these bankruptcy cases.

**IV.**

## SERVICES TO BE PROVIDED

16   By this Application, the Debtors seek an order authorizing the employment of SG to provide

17   the CRO services as described in the Engagement Contract (the "CRO Services") including, but not

18   limited to the following:

- Develop a chapter 11 plan of liquidation;

- Create a liquidation analysis;

- Oversee cash management and disbursements, provide Monthly Operating Reports (MORs), regular financial reports and manage preparation of tax returns;

- Assist Imperial Capital with operational logistics as requested, including the sale of inventory;

- Claims reconciliation (administrative and priority claims for plan confirmation purposes);

- Communicate with creditors as requested by the Debtors;

7

DOCS_LA:335013.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

- Management of services to be provided by the Debtors under the Transition Services Agreement (*e.g.*, oversee payroll processing, transfer of human resource services, transfer of assets, etc.);

- Assist legal counsel in the Debtors' chapter 11 bankruptcy cases; and

- Provide other services to the Debtors, as needed.

Additionally, as sole director of HYT, Mr. Stapleton shall perform such duties as shall be usual and customary for directors overseeing a holding company in a chapter 11 bankruptcy case (the "Director Services" and, together with the CRO Services, the "Services") and shall also perform those duties and fulfill those obligations as set forth in this Engagement Contract. For the avoidance of doubt, HYT is a holding company, whose only assets are its ownership interests in Hytera East and Hytera West. Accordingly, time expended providing Director Services is expected to be minimal.

The Debtors agree that SG will provide Mr. Stapleton to serve in the capacity of CRO under the protection of chapter 11 of the U.S. Bankruptcy Code. In this capacity, Mr. Stapleton will:

- Work on a collaborative basis with senior executives of the Debtors, coordinate the restructuring efforts of the Debtors, subject to the reporting structure above, including the identification, development, and implementation of strategies related to the Debtors' debt obligations, business plan and other related matters; and,

- In consultation with the Debtors' senior executives, coordinate and manage the Services as discussed above and the SG professional staff on the engagement.

To address and handle the above responsibilities on behalf of the Debtors, the CRO will be assisted by Additional Personnel provided through SG at various levels. All such Additional Personnel will be provided under and subject to the terms in the Engagement Contract.

The Debtors will indemnify those persons serving as corporate officers pursuant to the terms of the Engagement Contact. Accordingly, as part of this Application, the Debtors request that the Court approve the indemnification provisions as set forth therein as modified by the proposed order.

Notwithstanding any provisions of the Engagement Contract to the contrary, consistent with the "Jay Alix Protocol" implemented by the Office of the United States Trustee, Mr. Stapleton and SG agree that:

8

(a)   In the event the Debtors seek to have any of the Additional Personnel assume executive officer positions other than Mr. Stapleton, or to materially change the terms of the engagement by modifying the functions of the executive officer personnel, a motion to modify the employment as such will be filed.

(b)   Except for the appointment of Mr. Stapleton to the board of HYT as set forth herein, subject to this Court's approval, no principal, employee, or independent contractor of SG and its affiliates will serve as a director of the Debtors during the pendency of the Debtors' chapter 11 cases.

(c)   For a period of three (3) years after the conclusion of the engagement, neither SG nor any of its affiliates will make any investments in the Debtors.

## V.

## **PROFESSIONAL COMPENSATION**

The Debtors and SG have agreed to the proposed compensation and payment structure summarized below and set forth in detail in the Engagement Contract (the "Fee Structure"):

(a) Fees in connection with this engagement will be based upon the time incurred providing the Services, multiplied by the applicable hourly rates summarized as follows:

| Personnel Level | Rate Per Hour |
| --- | --- |
| CRO/Principal | $425 |
| Managing Director | $375 |
| Director/ Financial Advisory | $350 |
| Senior Financial Analyst | $295 |
| Controller | $275 |
| Jr. Analyst | $225 |
| Paralegal / Clerical | $100 |

SG's fees for Director Services will be invoiced together for its fees for the CRO Services. For the avoidance of doubt, SG shall be compensated for Director Services at the hourly rate for the Director ($425/hour).

In addition to the hourly rates set forth above, the Debtors shall reimburse SG and the CRO respectively for all reasonable out-of-pocket expenses incurred in connection with this engagement such as travel, lodging, telephone and facsimile charges.

SG shall file with the Court, with copies to the United States Trustee and all official committees, a monthly report of staffing on the engagement for the previous month. Such report shall include the names and functions filled of the individuals assigned. All staffing shall be subject to review by the Court in the event an objection is filed.

9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

SG shall file with the Court (and serve copies on the United States Trustee and any official committees appointed in this case contemporaneously with such filing) reports of compensation earned and expenses incurred on at least a monthly basis. Such reports shall contain summary charts which describe services provided, identify the compensation earned by each executive officer and employee provided, and itemize the expenses incurred. Time records for the CRO and all Additional Personnel shall (i) be appended to the reports, (ii) contain detailed time entries describing the task(s) performed, and (iii) be organized by project category. When SG personnel are providing services at an hourly rate, such personnel shall record their time entries in increments of no greater than one-half hour (.5). All compensation shall be subject to review by the Court in the event an objection is filed. The first monthly report will be submitted fifteen (15) days from the end of the first calendar month after the Engagement Date and will cover the period to and including the last day of the first month after the Engagement Date. This procedure will continue at monthly intervals thereafter. Because the CRO and SG are not being employed as a professional under section 327 of the Bankruptcy Code, they will not be submitting regular fee applications pursuant to sections 330 and 331 of the Bankruptcy Code. The CRO and SG will, however, submit the reports described above.

**VI.**

**<u>GENERAL DISINTERESTEDNESS OF SG</u>**

Although the Debtors do not propose to retain the CRO and SG under section 327 of the Bankruptcy Code, SG has nonetheless performed a computerized conflict check and, to the best of its knowledge and except to the extent disclosed in the Stapleton Declaration, does not hold any interest adverse to the interests of the Debtors' estates. Furthermore, by the Stapleton Declaration, Mr. Stapleton provides full and complete disclosure to demonstrate that SG satisfies all requirements that would be imposed by the Bankruptcy Code and Bankruptcy Rules for employment in these cases.

SG has agreed not to share with any person or entity any compensation received by it in the Debtors' cases with any non-affiliated entity. Neither SG, nor any of its principals, employees, agents or affiliates has any connection with the Debtors, their significant creditors, the United States

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:335013.2

1    Trustee or any other significant party with an actual or potential interest in these bankruptcy cases or

2    their respective attorneys or accountants, except as set forth in the Stapleton Declaration.

3         From time to time, SG has provided services, and likely will continue to provide services, to

4    certain creditors of the Debtors and various other parties adverse to the Debtors in matters unrelated

5    to these bankruptcy cases.

6         These unrelated matters involve numerous attorneys, financial advisors, and creditors, some

7    of whom may be claimants or parties with actual or potential interests in these bankruptcy cases or

8    may represent such parties.

9         Additionally, in the ordinary course of its business, SG may engage counsel or other

10   professionals in unrelated matters who now represent, or who may in the future represent, creditors,

11   or other interested parties in these bankruptcy cases.

12        The Debtors maintain business relationships with numerous shareholders, lenders, creditors

13   and other parties.  SG may have advisory or other commercial or professional relationships with

14   such entities or persons unrelated to the Debtors or their business affairs.  No such relationships are

15   related to these bankruptcy cases.

16        Because the Debtors are a large enterprise with numerous creditors and other relationships,

17   SG is unable to state with certainty that every client relationship or other connection has been

18   disclosed.  In this regard, if SG discovers additional information that requires disclosure, SG will file

19   a supplemental disclosure with the Court.

20        SG has not been retained to assist any entity or person other than the Debtors on matters

21   relating to, or in connection with, these bankruptcy cases.  If this Court approves the Application, SG

22   will not accept any engagement or perform any services for any entity or person other than the

23   Debtors in these bankruptcy cases.  SG will, however, continue to provide professional services to,

24   and engage in commercial or professional relationships with, entities or persons that may be

25   creditors of the Debtors or parties in interest in these bankruptcy cases, provided, however, that such

26   services do not relate to, or have any direct connection with, these bankruptcy cases.

27        The Debtors does not owe SG any amount for services performed or expenses incurred prior

28   to the Petition Date and thus SG is not a prepetition creditor of the Debtors.

11

DOCS_LA:335013.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   Accordingly, to the extent relevant, the Debtors believe that SG is a "disinterested person" as

2   defined in section 101(14) of the Bankruptcy Code.

3   **VII.**

4   **INDEMNIFICATION AND LIABILITY LIMITATION PROVISIONS**

5   The Engagement Contract contains standard indemnification and limitation of liability

6   language with respect to SG's services.  Notwithstanding any provisions of the Engagement Contract

7   to the contrary, in accordance with the J. Alix Protocol, SG has agreed otherwise, as set forth below.

8   With respect to Mr. Stapleton in his capacity as CRO, the Debtors shall indemnify the CRO

9   on the same terms as provided to the Debtors' directors under the Debtors' by-laws and applicable

10  state law.

11  With respect to the Additional Personnel, the Debtors shall have no obligation to indemnify

12  SG or to provide contribution or reimbursement to SG for any claim or expense that is either (a)

13  judicially determined to have resulted primarily from the willful misconduct, gross negligence, bad

14  faith or self-dealing of SG; or (b) settled prior to a judicial determination as to SG's willful

15  misconduct, gross negligence, bad faith or self-dealing but determined by the Court, after notice and

16  a hearing, to be a claim or expense for which SG should not receive indemnity, contribution or

17  reimbursement under the terms of the Engagement Contract.

18  If SG believes that it is entitled to the payment of any amounts by the Debtors on account of

19  the Debtors' indemnification with respect to the Additional Personnel, including without limitation

20  the advancement of defense costs, before the earlier of (a) the entry of an order confirming a chapter

21  11 plan in these bankruptcy cases (that order having become a final order no longer subject to

22  appeal) and (b) the entry of an order closing, dismissing or converting these chapter 11 cases, SG

23  must file an application to this Court seeking such payment, and the Debtors may not pay any such

24  amounts to SG before the entry of an order by this Court approving the payment; provided, however,

25  that the foregoing is intended only to specify the period of time during which the Court shall have

26  jurisdiction over any request for indemnification by SG, and is not a provision limiting the duration

27  of the Debtors' obligation to indemnify SG.

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

12

1  　　　　Finally, notwithstanding any provisions of the Engagement Contract to the contrary, SG has

2  agreed not to raise or assert any defense based upon jurisdiction, venue, abstention or otherwise to

3  the jurisdiction and venue of this Court to hear or determine any controversy or claims with respect

4  to, in connection with, arising out of, or in any way related to SG's services performed during these

5  bankruptcy cases.

6  　　　　　　　　　　　　　　　　　　　　VIII.

7  　　　　　　　　　　　　　　　**BASIS FOR RELIEF**

8  　　　　Section 363 of the Bankruptcy Code provides, in relevant part, that a debtor in possession

9  "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business,

10  property of the estate." 11 U.S.C. § 363(b). Under applicable case law in this and other circuits, if a

11  debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a

12  reasonable business judgment on part of the debtor, such use should be approved. *See e.g., Myers v.*

13  *Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re*

14  *Schipper)*, 933 F.3d 513, 515 (7th Cir. 1991)); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390

15  (6th Cir. 1986); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel)*, 722 F.2d 1063, 1070

16  (2d Cir. 1983); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In*

17  *re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (Bankr. D. Del. 1991) (courts have applied the

18  "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *In re*

19  *Integrated Resources, Inc.*, 147 B.R. 650, 656 (Bankr. S.D.N.Y. 1992) (quoting *Smith v. Van*

20  *Gorkom*, 488 A.2d 858, 872 (Del. 1985)) ("[T]he business judgment rule is a 'presumption that in

21  making a business decision the directors of a corporation acted on an informed basis, in good faith

22  and in the honest belief that the actions were in the best interests of the company.'").

23  　　　　Bankruptcy courts have analyzed the propriety of a debtor's employment of corporate

24  restructuring officers, advisors and professionals under section 363 on numerous occasions and have

25  determined it is an appropriate exercise of the debtor's business judgment to employ a restructuring

26  professional in this manner.[2] *See In re S.B. Restaurant Co.*, Case No. 14-13778 (ES) (Bankr. C.D.

27

28  _____

[2] Because of the voluminous nature of the orders cited herein, they are not annexed to this Application. Copies of these orders are available upon request made to the Debtors' proposed counsel.

13

DOCS_LA:335013.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Cal. Aug. 25, 2014); *In re American Suzuki Motor Corporation,* Case No. 8:12-22808-SC (Bankr.

2    C.D. Cal. 2012); *In re Westcliff Medical Laboratories, Inc.*, Case No. 10-16743 (Bankr. C.D. Cal.

3    June 25, 2010); *In re Fatburger Restaurants of California, Inc., et al.*, Case No. 09-13965 (Bankr.

4    C.D. Cal. Feb. 16, 2011); *In re Fairfield Residential LLC*, Case No. 09-14378 (Bankr. D. Del Jan 13,

5    2010); *In re Motor Coach Industries International, Inc.*, Case No. 08-12136 (Bankr. D. Del Oct. 15,

6    2008) (approving retention of CRO and crisis managers); *In re Pappas Telecasting, Inc.*, Case No.

7    08-10916 (Bankr. D. Del June 26, 2008); *In re Linens Holding Co.*, Case No. 08-10832 (CSS)

8    (Bankr. D. Del May 28, 2008); *In re Hoop Holdings, LLC*, Case No. 08-10544 (BLS) (Bankr. D. Del

9    Apr. 22, 2008); *In re Leiner Health Products, Inc.*, Case No. 08-10446 (KJC) (Bankr. D. Del. Apr. 8,

10    2008); *In re TOUSA, Inc.*, Case No. 08-10928 (Bankr. S.D. Fla. Mar. 26, 2008); *In re American*

11    *Home Mortgage Holdings, Inc.*, Case No. 07-11047 (Bankr. D. Del. Sept. 5, 2007); *In re Calpine*

12    *Corp.*, Case No. 05-60200 (Bankr. S.D.N.Y. Jan 17, 2007).

13         A debtor, pursuant to section 363(b), may employ one or more professionals to act as their

14    restructuring officers or managers or crisis officers or managers. *See In re Tokheim Corp.*, Case No.

15    02-13437 (RJN) (Bankr. D. Del. Feb. 25, 2003).    The retention of interim corporate officers and

16    other temporary employees is proper under section 363 of the Bankruptcy Code.    Numerous courts

17    have authorized retention of officers utilizing this provision of the Bankruptcy Code, including this

18    Court. *See In re S.B. Restaurant Co.*, Case No. 14-13778 (ES) (Bankr. C.D. Cal. Aug. 25, 2014); *In*

19    *re American Suzuki Motor Corporation,* Case No. 8:12-22808-SC (Bankr. C.D. Cal. 2012); *In re*

20    *Westcliff Medical Laboratories, Inc.*, Case No. 10-16743 (Bankr. C.D. Cal. June 25, 2010); *In re*

21    *Fatburger Restaurants of California, Inc., et al.*, Case No. 09-13965 (Bankr. C.D. Cal. Feb. 16,

22    2011); *In re Fairfield Residential LLC*, Case No. 09-14378 (Bankr. D. Del Jan. 13, 2010); *In re The*

23    *Holliston Mill, Inc.*, Case No. 07-10687 (MFW) (Bankr. D. Del. June 6, 2007); *In re Sea Containers*

24    *Ltd.*, Case No. 06-11156 (KJC) (Bankr. D. Del. May 8, 2007); *In re Adva-Lite, Inc.*, Case No. 07-

25    10264 (KJC) (Bankr. D. Del. Mar. 16, 2007); *In re Global Home Products, LLC*, Case No. 06-10340

26    (KG) (Bankr. D. Del. May 4, 2006); *In re World Health Alternatives, Inc.*, Case No. 06-10166

27    (PJW) (Bankr. D. Del. Mar. 15, 2006).

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

14

1    Additionally, the Court's general equitable powers codified in section 105(a) of the

2 Bankruptcy Code provide ample authority for the relief requested herein.   Section 105(a) of the

3 Bankruptcy Code empowers the court to "issue any order, process, or judgment that is necessary to

4 carry out the provisions of this title."  *See 11 U.S.C. § 105(a).  See also United States v. Energy*

5 *Resources Co.*, 495 U.S.545, 549 (1990); *In re Continental Airlines*, 203 F.3d 203, 211 (3d Cir.

6 2000) ("Section 105(a) of the Bankruptcy Code supplements courts' specifically enumerated

7 bankruptcy powers by authorizing orders necessary or appropriate to carry out provisions of the

8 Bankruptcy Code."); *Baron & Budd, P.C. v. Unsecured Asbestos Claimants Comm.*, 2005 WL

9 435207, *14 (D.N.J. Feb. 25, 2005) (reciting the power of the bankruptcy court to "… issue any

10 order … that is necessary or appropriate to carry out the provisions of … [title 11]").

11    This Court in other chapter 11 cases has approved the employment of chief restructuring

12 officer and its staff pursuant to section 363 of the Bankruptcy Code on terms and conditions

13 substantially similar to those in the Engagement Contract.  *See, e.g., In re S.B. Restaurant Co.*, Case

14 No. 14-13778 (ES) (Bankr. C.D. Cal. Aug. 25, 2014) [Docket. No. 302]; *In re American Suzuki*

15 *Motor Corporation*, Case No. 12-22808 (SCC) (Bankr. C.D. Cal. Dec. 10, 2012) [Docket No. 274];

16 *In re Fatburger Restaurants of California, Inc.*, Case No. 09-13965 (GM) (Bankr. C.D. Cal. Feb. 16,

17 2011) [Docket No. 506]; *In re Westcliff Medical Laboratories, Inc.*, Case No. 10-16743 (TA)

18 (Bankr. C.D. Cal. June 25, 2010) [Docket No. 151].

19    The terms and conditions of the Engagement Contract were negotiated by the Debtors and

20 SG at arm's length and in good faith.  The Debtors submit that the employment of SG is a sound

21 exercise of their business judgment and satisfies section 363 of the Bankruptcy Code as SG's

22 services are necessary and essential to the Debtors' restructuring efforts.   Mr. Stapleton has

23 extensive experience providing management and financial services to distressed companies.

24 **C.**  **Retention of SG is Important to the Debtors' Success**

25    Denying the relief requested herein would deprive the Debtors of the assistance of a highly

26 qualified CRO and disadvantage the Debtors and all parties in interest.  Indeed, the Debtors would

27 be forced to identify and present an alternative CRO which would set the Debtors back given the

28 brief timeframe within which the Debtors seek to emerge from these bankruptcy cases.  Accordingly,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

1    the Debtors respectfully submit that the services provided by SG are important to the success of

2    these bankruptcy cases and request that the Court approve the Engagement Contract.

3        The Debtors submit that the employment of SG and Mr. Stapleton under the terms of the

4    Engagement Contract would greatly benefit the Debtors' estates and creditors.    The absence of

5    executives capable of achieving a successful reorganization would severely hinder the Debtors'

6    ability to reorganize in an efficient and effective manner.

7        Moreover, Mr. Stapleton is clearly qualified for the position for which he is being employed.

8    The Debtors have determined that the terms of the Engagement Contract are within the range of

9    those for senior executive officers employed with the companies of comparable size, value and

10   reputation.    Accordingly, the Debtors' decision to enter into the Engagement Contract reflects an

11   exercise of the Debtors' sound business judgment.

12                                            **IX.**

13                                          **NOTICE**

14       The Debtors have provided notice of the Application to:  (a) the Office of the United States

15   Trustee, (b) counsel to the official committee of unsecured creditors; and (c) the parties that file with

16   the Court requests for notice of all matters in accordance with Bankruptcy Rule 2002.  The Debtors

17   submit that no other or further notice be given in light of the circumstances of these bankruptcy

18   cases.

19                                             **X.**

20                                       **CONCLUSION**

21       For the reasons set forth above, the Debtors respectfully request the entry of a proposed

22   order, substantially in the form attached hereto as **Exhibit C**, approving the Engagement Contract

23   *nunc pro tunc* to the Engagement Date and granting such other and further relief as the Court deems

24   appropriate under the circumstances of these bankruptcy cases.

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

16

1

2

Dated:    January 13, 2021                      PACHULSKI STANG ZIEHL & JONES LLP

3

By      /s/ John W. Lucas

4                                                     Ira D. Kharasch (CA Bar No. 109084)
                                                      John W. Lucas (CA Bar No. 271038)
5                                                     Jason H. Rosell (CA Bar No. 269126)
                                                      Victoria A. Newmark (CA Bar No. 183581)

6                                                     *Counsel to the Debtors and Debtors in*
                                                      *Possession*

7

8

9

10

11                                                    .

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

17

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

## **EXHIBIT A**

2

**(Engagement Contract)**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

**STAPLETON**
GROUP

*CONFIDENTIAL*

January 11, 2021

Ms. Ni Huang
President                                                    *Via email*
HYT North America, Inc.
Hytera Communications America (West), Inc.
Hytera America Inc.
8 Whatney, Unit 200
Irvine, CA 92618
alla.huang@hytera.us

Re:    **Engagement of Stapleton Group as Chief Restructuring Officer ("CRO")
and David Stapleton as Director**

Dear Ms. Huang,

This letter (the "Engagement Letter") confirms and sets forth the terms and conditions of the
engagement between Stapleton Group (collectively, "SG" or "CRO") and HYT North America,
Inc. ("HYT"), Hytera Communications America (West), Inc., and Hytera America Inc.
(collectively, "Hytera" or "Company"), including the scope of the services to be performed and
the basis of compensation for those services. This letter also confirms David Stapleton's (the
"Director") agreement to serve as the sole director of HYT during the term of this Engagement
Letter.

Upon execution of this Engagement Letter by each of the parties below, this Engagement Letter
will constitute an agreement between the Company and SG, subject to approval by the United
States Bankruptcy Court for the Central District of California.

This Engagement Letter, together with the Standard Terms and Conditions (the "Standard
Terms") annexed hereto and incorporated by reference (collectively, the "Agreement"), sets forth
the agreed upon terms of our engagement by the Company (the "Engagement").

You shall, by executing this letter, engage SG to provide financial and operational support to the
Company in its wind down and liquidation activities. SG will report directly to the Company's
Board of Directors.

Our services ("Services") include but are not limited to the following areas:

**Scope of CRO Services**
- Develop a chapter 11 plan of liquidation

- Create a liquidation analysis
- Oversee cash management and disbursements, provide Monthly Operating Reports (MORs), regular financial reports and manage preparation of tax returns.
- Assist Imperial Capital with operational logistics as requested, including the sale of inventory
- Claims reconciliation (administrative and priority claims for plan confirmation purposes)
- Communicate with creditors as requested by Company.
- Management of services to be provided by the Company under the Transition Services Agreement (*e.g.*, oversee payroll processing, transfer of human resource services, transfer of assets, etc.).
- Assist legal counsel in the Company's chapter 11 bankruptcy cases.
- Provide other services to the Company, as needed.

### Director Services

HYT represents and warrants to the Director that its shareholder has appointed the Director as the sole member of its board of directors effective as of January 12, 2021. Director hereby acknowledges and accepts his appointment as the sole director of HYT effective as of January 12, 2021. The Director agrees to serve as the sole director of HYT, subject to the terms of this Engagement Letter.

The Director shall perform such duties as shall be usual and customary for directors overseeing a holding company in a chapter 11 bankruptcy case (the "Director Services") and shall also perform those duties and fulfill those obligations as set forth in this Agreement.

The Company understands and agrees that (i) CRO in no manner guarantees the Services, the financial success of Company or the projected results of Company's future operations, and (ii) CRO does not guarantee or represent that it will be successful in negotiating with creditors, investors and/or financers.

We appreciate the time you spent with us to describe Hytera's business and your primary concerns. Stapleton is uniquely qualified to address the issues you raised. We provide practical solutions to challenging circumstances.

SG's fees for the Services are set forth below. SG will invoice the Company on a monthly basis. The hourly rates for SG's professionals are set forth below:

| | |
|---|---|
| Principal (DS, NG, MB) | $ 425 |
| Managing Director (DK, JD) | $ 375 |
| Director, Financial Advisory | $ 350 |
| Senior Financial Analyst | $ 295 |
| Controller | $ 275 |
| Junior Analyst | $ 225 |
| Paralegal / Administrative / Clerical | $ 100 |

Ms. Huang
Page **3** of **9**

SG's fees for Director Services will be invoiced together for its fees for the Services.  For the avoidance of doubt, SG shall be compensated for Director Services at the prevailing hourly rate for the Director ($425/hour).

In addition, SG will be reimbursed by the Company for the reasonable out-of-pocket expenses of the CRO, incurred in connection with this engagement. In addition, SG shall be reimbursed by the Company for the reasonable fees and expenses of its counsel incurred in connection with the enforcement of this Agreement.

The terms of this CRO Engagement may not be altered or terminated without the prior approval of the Company's Board of Directors.

Indemnification. The Company shall indemnify SG against any and all claims that result from or arise out of this Engagement as provided in the Standard Terms & Conditions incorporated herein. For purposes of this Engagement, SG shall be covered as an officer under the Company's existing director and officer liability insurance policies, if such policy is in effect, and the Company shall also maintain any such insurance coverage for the CRO.

If the foregoing is acceptable to you, please sign this letter and initial the terms and conditions and return to me. This Agreement will be effective, and we will commence providing the Services, on January 11, 2021 (the "Effective Date"). If you have any questions, please call me at (213) 235-0601.

We appreciate the opportunity to work for you and, of course, should you have any questions or concerns, do not hesitate to contact the undersigned.

Confidentiality. The CRO and the Company shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except (i) as requested by the Company or its legal counsel, (ii) as required by legal proceedings, or (iii) as reasonably required in the performance of this engagement and all obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

Independent Contractor. The CRO is an Independent Contractor and not an employee of the Company.

While the Director shall have the applicable fiduciary duties of a director under Florida law, the parties agree that the Director will be treated as an independent contractor, and that this Engagement Letter shall not create the relationship of employee and employer between the Director and HYT.

If the foregoing is acceptable to you, please sign this letter and initial the terms and conditions and return to me.

If you have any questions, please call me at (213) 235-0601.

Ms. Huang
Page **4** of **9**

We appreciate the opportunity to work for you and look forward to your prompt response.

Very truly yours,

David P. Stapleton
President

**ACCEPTED AND AGREED TO:**
HYT North America, Inc.
Hytera Communications America (West), Inc.
Hytera America Inc.

By: _____
    Ni Huang
Its:   President

**ACCEPTED AND AGREED TO AS TO DIRECTOR SERVICES:**

By: _____
    David P. Stapleton

Ms. Huang
Page **5** of **9**

### Standard Terms & Conditions

The terms and conditions set forth below (the "Standard Terms") are incorporated by reference into that certain Engagement Letter by and between Hytera Communications America (West), Inc., and Hytera America Inc. (collectively, "Hytera" or "Company") and SG, dated as of January 11, 2021 (the "Effective Date") (the Engagement Letter, together with the Standard Terms, the "Agreement").

FEES AND EXPENSES

1.     Invoices. SG will provide an invoice for Services to the Company on a monthly basis (the "Invoice"). Each Invoice will provide sufficient details identifying the Services and the Reimbursable Expenses incurred.

2.     Payment for Services/Invoices. As provided in the Engagement Letter, SG shall submit invoices on a monthly basis. Payment of each Invoice is due upon receipt, subject to any compensation procedures established by the United States Bankruptcy Court for the Central District of California (the "Bankruptcy Court"). If any invoice is not paid in full when due, you agree that SG has the rights and options, in its discretion until all outstanding Invoices are paid in full: (i) to suspend or terminate Services and/or (ii) withhold delivery of Services, testimony, Deliverables (as defined herein), reports or data (written or oral) in which event you agree that SG will not be liable for any resulting losses, damages or expenses in connection with or resulting from such suspension, withholding or termination of Services or any delay in completion of or performance of the Services or compliance with any deadlines or timelines related to the Services.

3.     Reimbursable Expenses. SG will be reimbursed timely by you for any and all reasonable, actual out-of-pocket expenses incurred in connection with or related to the Services, including but not limited to airfare, hotel, car rental, photocopying charges, telephone calls, postage, shipping, meals, report preparation, delivery services, and other costs (collectively, the "Reimbursable Expenses").

4.     Information, Access to Information. The Company shall use all reasonable efforts to: (i) provide SG with access to the Company's management and other representatives of the Company; and (ii) furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that SG requests in connection with and in furtherance of their performance of the Services. SG shall rely, without further independent verification, on the accuracy and completeness of all publicly available information and all information that is furnished to SG by or on behalf of the Company and otherwise revised by SG in connection with the Services. The Company acknowledges and agrees that SG is not responsible for the accuracy or completeness of such information and shall not be responsible to the Company or any third party for any inaccuracies or omissions therein. SG is under no obligation to update data submitted to SG or to review any other areas of the Company's business or operations unless specifically set forth in the Engagement Letter or as mutually agreed by and between the Company and SG in writing. The source of such information, whether the Company's management or other third party, as the case may be, shall be responsible for any and all financial information provided to SG pursuant to this Agreement. Furthermore, unless specifically retained to do so, SG will not independently examine, compile, or verify any financial information provided to SG by the Company and/or the Company's management, as the case may be. The Company shall use reasonable skill, care and attention to ensure that all information and documentation SG may reasonably require is provided to SG on a timely basis and is accurate and complete and relevant for the purpose for which it is required. The Company shall also notify SG promptly if it subsequently learns that the information provided is outdated, incorrect or inaccurate or otherwise should not be relied upon, and, in addition, The Company may not rely upon any Deliverable that contains outdated, incorrect or inaccurate information which the Company knows or have reason to believe is outdated, incorrect or inaccurate.

5.     Cooperation and Responsibility. The Company shall cooperate with SG in the performance of the Services. The Company shall be responsible for, among other things: (a) the performance of its personnel and agents, (b) the accuracy and completeness of all data and information provided to SG for purposes of the performance of the Services, (c) designating a competent, responsible person to oversee the Services, (d) evaluating the adequacy and results of the Services, (e) accepting responsibility for the results of the Services, and (f) establishing and maintaining internal controls, including monitoring ongoing activities, SG's performance is dependent upon the timely and effective satisfaction of the Company's responsibilities hereunder and timely decisions and approvals of the Company in connection with the Services.

6.     Forward Looking Statements. The Services may include the preparation of projections and other forwarding-looking statements, and numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and statements. Moreover, SG will be relying upon information provided by the Company in the preparation of those projections and other forward-looking statements and is not responsible for any variances from the projections and other forward-looking statements.

7.     Deliverables. The tangible items specified as deliverables or work product in the Engagement Letter (the "Deliverables") are complete only when presented in their entirety and only for the purpose stated therein. Furthermore, (i)

Ms. Huang
Page **6** of **9**

neither the Services nor any Deliverables, in whole or in part, shall constitute a fairness or solvency opinion, (ii) SG will not provide any legal advice or address any questions of law, and (iii) the performance of the Services does not constitute an audit conducted in accordance with generally accepted auditing standards, an examination of internal controls, or other attestation or review services in accordance with standards, established by the American Institute of Certified Public Accountants ("AICPA"), the Public Companies Accounting Oversight Board (the "PCAOB"), or other state or federal professional ore regulatory body. Upon full payment to SG hereunder, and subject to the terms and conditions contained herein, (i) the tangible items specified in Deliverables shall become the property of Companies.

LIMITATIONS ON SERVICES

8.      Use and Purpose of Advice and Deliverables. Any advice given, communications (oral or written), report or Deliverable issued by SG is provided solely for the use and benefit of the Company and only in connection with the Services. Unless required by law or with the prior consent of SG, the Company shall not share or disclose any advice given, communication, report or Deliverable to any third party (a "Third Party") or refer to the Services. Neither the Services nor any Deliverables are intended for the express or implied benefit of any Third Party. Unless otherwise agreed to in writing by SG, no Third Party is entitled to rely in any manner or for any purpose on the Services or Deliverables. Regardless of whether consent has been provided by SG or disclosure is mandated as a matter of law or disclosure is made in violation of the Standard Terms, under no circumstances shall SG assume any responsibility to any Third Party to whom any such advice, communication, report or Deliverable is disclosed or otherwise made available. The Services and this Engagement do not create privity between SG and any Third Party.

9.      No Audit, Review or Compilation. The Company acknowledges and agrees that SG is not being retained to, and SG Personnel are not being requested to, perform an audit, review or compilation, or any other type of financial statement reporting engagement that is subject to the rules of AICPA, the SEC or other state or federal professional or regulatory body.

10.     No Assurances. The Services will not result in the issuance of any written or oral communications by SG to the Company or any Third Party expressing any opinion, conclusion, or any other form of assurance with respect to, among other things, accounting policies, financial data, financial statements and related footnotes, appropriate application of generally accepted accounting principles, disclosure, operating or internal controls, compliance with the rules and regulations of the SEC or the PCAOB, compliance with the Sarbanes-Oxley Act of 2002 and related rules and regulations, or any other matters. SG services cannot be relied upon to disclose errors or fraud should they exist. The Services to be provided by SG will **not** include any predictions or provide any opinions or other assurances concerning the outcomes of future events, including, without limitation, those that pertain to the operating results of any entity, the achievability of any business plan, the success of any investment, the recovery of any asset, or the ability to pay any debt. The Company expressly acknowledges that SG does not guarantee, warrant, or otherwise provide any assurances regarding the outcome of any of the Company's strategies or objectives as set forth in this Agreement. The undersigned expressly acknowledge and agree that Financial Advisor does not guarantee or warrant any specific results or outcome, or otherwise provide assurance that information provided to Company will produce any defined result in litigation or other context.

11.     No Assessment of Other Professionals Work. The Services may include access to the work of other professional advisors or to financial statements or financial information or data reported on by such other professional advisors. The Company agrees that such access is not for the purpose of affirming or evaluating the procedures or professional standards other professional advisors may have performed concerning the same information or data, books, or accounts and records, and that other advisors may reach different observations than SG for a variety of reasons, including the possibilities that additional or different information or data might be provided to them that was not provided to SG, that they might perform different procedures from SG, or that professional judgments concerning, among others, complex, unusual, or poorly documented matters may differ.

12.     Strategic Decisions. SG will not assume any responsibility for the Company's decision to pursue, or not pursue any business strategy, or to effect, or not to effect any transaction, SG shall be responsible for implementation only of the Services and only to the extent and in the manner directed and authorized by the Company.

13.     Limitations on Warranties. This is a services engagement. SG warrants that it shall perform the Services in good faith and with due professional care. SG DISCLAIMS ALL OTHER WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

14.     Limitations on Damages. SG, its subsidiaries and subcontractors, and their respective personnel shall not be liable to the Company for any claims, liabilities, or expenses relating to this Engagement ("Company Claims") for an aggregate amount in excess of the fees paid to SG pursuant to this Engagement, except to the extent resulting from the gross negligence, bad faith or intentional misconduct of SG or its subcontractors. In no event shall SG, its subsidiaries or subcontractors, or their respective personnel be liable to the Company for any loss of use, data, goodwill, revenues or profits (whether or not deemed to constitute a direct Company Claim), or any consequential, special, indirect, incidental, punitive, or exemplary loss, damages, or expense

Ms. Huang
Page 7 of **9**

relating to this engagement. In circumstances where any limitation on damages or indemnification provision hereunder is unavailable, the Company agrees that the aggregate liability of SG, its subsidiaries and subcontractors, and their respective personnel for any Company Claim shall not exceed an amount that is proportional to the relative fault that the conduct of SG and its subcontractors bears to all other conduct giving rise to such Company Claim.

15.     Expert Witness Services. Unless specifically included in the description of Services contained in the Engagement Letter, it is understood that the engagement of SG to provide services as an expert witness, with respect to written reports, testimony or otherwise, in connection with or related to any administrative or judicial proceeding, or perform any level of related investigation (collectively, "Expert Witness Services"), is excluded from the definition of Services in this Agreement.

16.     No Expert Advice on Securities Matters. SG is not an expert under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, and will not consent to be a named expert in any of the Company's filings with the SEC under the Securities Act of 1933, as amended, or the Securities Exchange Act of 1934, as amended, or otherwise.

INDEMNIFICATION

17.     Indemnification, Generally. As part of the consideration for SG's agreement to furnish the Services, the Company agrees to indemnify and hold harmless SG and its owners, partners, members, managers, officers, directors, agents, employees, Financial Advisors, attorneys and agents and any successors or assigns thereof (each, an "SG Indemnified Party") to the fullest extent lawful from any and all claims, liabilities, losses, damages, debts, judgments and/or expenses or actions (collectively, "Indemnified Claims") in respect thereof, incurred, related to or arising out of or in connection with the Services, the Engagement and/or this Agreement, including, without limitation, any and all such SG Indemnified Parties' reasonable costs, fees and expenses incurred in connection with investigating, preparing, defending, or settling any Indemnified Claim arising from or relating to such liabilities, including all such SG Indemnified Parties' reasonable legal fees and expenses; provided, however, that the Company shall not be responsible for any Indemnified Claim to the extent, and only to the extent, that it is finally and judicially determined by a final, non-appealable court order, that such Indemnified Claim was caused primarily due to such SG Indemnified Party's bad faith, willful misconduct or gross negligence. The indemnity and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Company may have to SG at common law or otherwise, (ii) shall survive the completion of the Engagement, as amended, modified or extended, and/or the termination of this Agreement, (iii) shall apply to any modification of this agreement or revisions to the Services, and (iv) shall be binding on any successor or assign of the Company and its successors or assigns.

RELATIONSHIP OF THE PARTIES

18.     Independent Contractor. Except as set forth in this Agreement, SG is an independent contractor under this Agreement. This Agreement is not intended to create and does not create an employment agreement. No one on behalf of SG, nor any members, managers, directors, employees, agents, independent Financial Advisors for contractors thereof, shall be considered to be a director, officer, member, manager, partner, control person, employee, representative, agent, or Insider of Company unless expressly agreed to in a writing signed by SG. As an independent contractor SG will have exclusive control over the management and operation of SG, including hiring and paying the wages or other compensation of its Personnel.

19.     No Fiduciary Relationship. Except as set forth in this agreement, nothing in this agreement is intended to create, or shall be deemed or construed to create a fiduciary relationship between the companies, including without limitation, the company's board, directors, officers, authorizing officer, members, managers, Partners, control persons, shareholders, employees, Representatives, agents, or creditors, on the one hand and SG, SG personnel affiliated, Financial Advisors, directors, officers, members, managers, Partners, control persons, shareholders, employees, Representatives, attorneys, agents, successors and assigns on the other hand.

20.     No Agency Relationship. Except as set forth in the screen at the services are not intended to and do not create the agency relationship between companies and SG.

21.     No Tenancy Created. If SG is provided with access to or use of company's facilities for the purpose of Performing the services such facilities may not be dedicated solely for SG's use and SG will not be deemed a tenant of companies with respect to such facilities.

22.     Non-Exclusivity. SG may provide any services to any person or entity in matters for engagements unrelated to this agreement, and to develop for itself, or for others, any materials or processes, including those that may be similar to those produced as a result of the services, provided that SG complies with the obligations of confidentiality set forth hereunder.

CONFLICTS

Ms. Huang
Page **8** of **9**

23.     Future Conflicts. SG is retained by the Company in the ordinary course of business. As a result, SG cannot assure that, following the completion of our internal conflict search in connection with the Engagement, a new engagement for or involving one of the Company's creditors of the other parties-in-interest or their respective attorneys and accountants will not be accepted by SG or its affiliates. Should any potential conflict come to the attention of SG, we will endeavor to resolve such potential conflict and will determine what action needs to be taken. You agree that you will inform us of the parties-in-interest to this matter or of additions to, or name changes for, those parties-in-interest whose names you provided. SG determination of conflicts is based on the substance of the work to be performed on an engagement as opposed to the parties involved. It is possible that some of SG's past present or future clients will have disputes with and other matters relating to the Company during the course of and subsequent to this Engagement. As a condition of this Engagement, the Company agrees that SG may be engaged by parties with interest that are adverse to and may not be consistent with the interests of the Company. SG reserves the right to accept engagement with other parties consistent with its internal, prior practices without obligation by the Company.

CONFIDENTIALITY

24.     Duty to Maintain Confidentiality. SG shall keep as confidential all non-public information received in conjunction with the Engagement, except (1) as requested by the Company or its legal counsel; (ii) as reasonably required by legal proceedings (iii) as reasonably required in the performance of the Engagement to the extent that such disclosure is (a) reasonably determined by the SG to be furtherance of its duties to the Company.

25.     Disclosure. To the extent that, in connection with this Engagement, either party (each, the "receiving party") comes into possession of any confidential information of the other (the "disclosing party"). It will not disclose such information to any third party without the disclosing party's consent using at least the same degree of care as it employs in maintaining in confidence its own confidential information of a similar nature, but in no event less than a reasonable degree of care. The disclosing party hereby consents to the receiving party disclosing such information: (1) to subcontractors, whether located within or outside of the United States, that are providing services in connection with this engagement and that have agreed to be bound by confidentiality obligations similar to those in this Clause; (ii) as may be required by law, regulation, judicial or administrative process, or in accordance with applicable professional standards or rules, or in connection with litigation or arbitration pertaining hereto; or (iii) to the extent such information (a) is or becomes publicly available other than as a result of a disclosure in breach hereof, (b) becomes available to the receiving party on a non-confidential basis from a source that the receiving party believes is not prohibited from disclosing such information to the receiving party, (c) is already known by the receiving party without any obligation of confidentiality with respect thereto, or (d) is developed by the receiving party independently of any disclosures made to the receiving party hereunder. Nothing in this Clause shall alter the Company's obligations under any other Clause. SG, however, may use and disclosure any knowledge and ideas acquired in connection with the Services, to the extent they are retained in the unaided memory of its personnel. Further, SG and its affiliates and related entities shall have the right to use the Company's name as part of a general Company listing and as a specific citation in proposals or similar directed marketing efforts.

26.     Subject Tax Planning Advice. No term of this Agreement is or is to be construed as a condition of confidentiality within the meaning of PCAOB Release 2005-014, Internal Revenue Code Sections 6011 and 6111 or the regulations thereunder, any related Internal Revenue Service guidance, or any other similar law, with respect to any Services, Deliverables or other materials of any kind provided hereunder relating to the tax treatment or tax structure (collectively referred to as "Subject Tax Planning Advice"). Notwithstanding anything herein to the contrary, no provision of the Agreement shall place any limitation on the Company's disclosure of any Subject Tax Planning Advice. In the event of any unauthorized reliance on any Subject Tax Planning Advice by a Third Party, the Company agrees to indemnify and hold harmless SG, its subcontractors, and their respective personnel from any and all claims of a Third-Party, liabilities, costs, and expenses, including attorneys' fees and expenses as provided for in the "Indemnification" Section of the Standard Terms.

TERMINATION

27.     Termination with Notice. In addition to the provisions of paragraph 2 of these Standard Terms, any party to this Engagement may terminate the Engagement upon thirty (30) days' prior written notice to the other party(ies). Upon receipt by the non-terminating party of such written notice, SG will stop all work immediately. Upon any termination of this Engagement, SG shall be entitled to all incurred and unpaid fees for Services, other fees and expenses described in the Agreement.

28.     Termination at Completion of Engagement, Unless terminated sooner as set forth herein, this Agreement shall terminate upon (i) the completion of the Services and the Engagement, and (ii) the payment in full of all outstanding Invoices.

MISCELLANEOUS

29.     Collection Costs. If an action or proceeding is commenced by SG to collect any Invoice, fee, Reimbursable Expense or cost or enforce any other obligation of the Company under this Agreement whether commenced during or after termination of this Agreement (an "Enforcement Action"), the Company agrees to pay and reimburse SG for all reasonable time, administration costs and expenses, including attorneys' fees, costs and expenses incurred in connection with such Enforcement Action.

Ms. Huang
Page **9** of **9**

30.     Misc. Fees, Expenses & Costs. SG will be compensated for time and expenses, including attorneys' fees, costs and expenses, that SG may incur in connection with the Services (whether during the Engagement or after termination of this Agreement) with respect to the responding discovery requests, subpoenas or other requests for documents or information, or in participating as a witness or otherwise in any legal, regulatory, arbitration, or other proceeding (including, without limitation, those unrelated to the matters that are subject to this Engagement) as a result of or in connection with the Services, the Engagement or this Agreement.

31.     Survival and Interpretation. All provisions which are intended by their nature to survive performance of the Services and/or the termination of this Agreement, shall survive such performance, or the expiration or termination of this Agreement and remain an independent obligation of the Company and of SG. Each of the provisions of these terms shall apply to the fullest extent of the law, whether in contract, statute, common law, or otherwise, notwithstanding the failure of the essential purpose of any remedy. Any references herein to the term "including" shall be deemed to be followed by "without limitation."

32.     Assignment. Except as provided in this Agreement, neither party may assign any of its rights or obligations hereunder (including interests, Claims or the Company Claims) without the prior written consent of the other party.

33.     Severability. If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable, in whole or in part, the remaining portions shall remain in effect.

34.     Successors and Assigns. This Agreement shall be binding upon SG and the Company together with their respective heirs, successors, and assignees and any heir, successor, or assignee of a substantial portion of its businesses and/or assets.

35.     Entire Agreement; Bankruptcy Court.  Subject to the terms of any order entered by a court of competent jurisdiction presiding over the assets of the Company pertaining to and governing SG's performance of the Services or the Engagement, this Agreement incorporates the entire understanding of the parties with respect to the subject matter hereof and may not be amended or modified except in writing executed by the parties. This Agreement replaces and supersedes any previous proposal, draft letter of engagement, communication (oral or written), undertaking, representation, or correspondence – whether written or oral, regarding the Services.

36.     Limited Disclosure of Engagement. Notwithstanding anything herein to the contrary, SG may reference or list the Company's name and/or logo and/or a general description of the Services in SG's marketing materials, media, social media, website or in any disclosure to a court of law as appropriate.

37.     Force Majeure. No party shall be liable for any delays or nonperformance directly or indirectly resulting from circumstances or causes beyond its reasonable control, including fire, epidemic or other casualty, act of God, strike or labor dispute, war or other violence, or any law, order or requirement of any governmental agency or authority.

38.     Counterparts. This Agreement may be executed in counterparts, each of which together shall constitute one and the same document. This Agreement may be executed by facsimile signatures or signatures forwarded by email.

39.     No Waiver. No failure to delay in exercising any right, power or privilege related hereto, or any single or partial exercise thereof, shall operate as a direct or indirect waiver thereof.

40.     Waiver of Trial by Jury. THE PARTIES HEREBY IRREVOCABLY WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM RELATING TO THIS ENGAGEMENT AND THE SERVICES.

41.     Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California (without giving effect to the choice of law principles thereof). Any action based upon or arising out of this Agreement shall be brought and maintained exclusively in any state or federal court, in each case located in the State of California. Each of the parties hereby expressly and irrevocably submits to the jurisdiction of such courts for the purposes of any such action and expressly and irrevocably waives, to the fullest extent permitted by law, any objection which it may have or hereafter may have to the laying of venue of any such action brought in any such court and any claim that any such action has been brought in an inconvenient forum.

42.     Bankruptcy Filing. The Company is currently in a Chapter 11 proceeding. The Company shall apply promptly to the presiding court pursuant to applicable rules and regulations and procedural guidelines for approval of this Agreement, *nunc pro tunc* to the Effective Date, and shall use its best efforts to obtain court approval and authorization, and the Company shall supply SG and its counsel with a draft of such application and proposed order authorizing SG's retention under the terms of this Agreement is approved in the manner set forth above by final order of the court and which order is reasonably acceptable to SG in all material respects.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

## (Stapleton Declaration)

DOCS_LA:335013.2

Ira D. Kharasch (CA Bar No. 109084)
John W. Lucas (CA Bar No. 271038)
Jason H. Rosell (CA Bar No. 269126)
Victoria A. Newmark (CA Bar No. 183581)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760
E-mail:  ikharasch@pszjlaw.com
           jlucas@pszjlaw.com
           jrosell@pszjlaw.com
           vnewmark@pszjlaw.com

Counsel to Debtors and Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re: | Case No.  8:20-bk-11507-ES |
| HYTERA COMMUNICATIONS AMERICA (WEST), INC., *et al.*, | Chapter 11 |
| Debtors and Debtors-in Possession. | Jointly Administered With Case Nos.: 8:20-BK-11508-ES and 8:20-BK-11509-ES |
| Affects: | **DECLARATION OF DAVID STAPLETON IN SUPPORT OF DEBTORS' APPLICATION FOR ENTRY OF ORDER PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE APPROVING THE ENGAGEMENT CONTRACT OF DAVID STAPLETON AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS AND STAPLETON GROUP TO ASSIST THE CRO** |
| ☒ All Debtors | |
| ☐ HYTERA COMMUNICATIONS AMERICA (WEST), INC., ONLY | |
| ☐ HYTERA AMERICA INCORPORATED, ONLY | [No Hearing Required Unless Requested Per L.B.R. 2014-1(b)] |
| ☐ HYT NORTH AMERICA, INC., ONLY | |

I, David Stapleton, being duly sworn, says:

1.      I am President of Stapleton Group ("SG"), which has an office located at 515 South Flower Street, 18th Street, Los Angeles, California 90071.  I make this Declaration in support of the above-captioned debtors (the "Debtors") application (the "Application") for entry of order pursuant to section 363 of title 11 of the United States Code (the "Bankruptcy Code") approving the

20

*PACHULSKI STANG ZIEHL & JONES LLP*
*ATTORNEYS AT LAW*
*LOS ANGELES, CALIFORNIA*

1   engagement contract, dated January 12, 2021 (the "Engagement Contract") of SG to retain me as the

2   Chief Restructuring Officer (the "CRO"), and to provide additional individuals (the "Additional

3   Personnel") who will provide services in support of the CRO, *nunc pro tunc* to January 12, 2021 (the

4   "Engagement Date") . A copy of the Engagement Contract is attached to the Application as Exhibit

5   A.

6          2.       The statements set forth in this declaration (the "Declaration") are based upon my

7   personal knowledge, upon information and belief, and upon client matter records kept in the ordinary

8   course of business that were reviewed by me or other personnel of SG or its affiliates and I am duly

9   authorized to make this declaration on behalf of SG.

10         3.       SG is a consulting firm that provides services involving, among other things, interim

11  and wind-down management, turnaround, crisis management and financial restructuring in chapter

12  11 cases. SG's professionals have significant experience in the field of restructuring and providing

13  financial and operational guidance to companies in distressed situations.  SG's professionals have

14  provided services to debtors, creditors, and other constituents in numerous chapter 11 cases,

15  including, among others, Zacky and Sons Poultry, LLC; Plan Administrator for Ch. 11 of Lawrence

16  Kates; Plan Administrator for Ch. 11 Wood River Woods; and Plan Administrator for Ch. 11 of

17  Bayside Square.

18         4.       Additionally, I have approximately twenty-five (25) years of management and

19  consulting experience and have worked with a broad range of companies covering all aspects of

20  turnaround, crisis management, and financial advisory situations.  I have acted as the chief

21  restructuring officer of numerous companies.

22         5.       On the Engagement Date, SG entered into the Engagement Contract with the Debtors.

23  I and other personnel of SG and its affiliates are immediately beginning to become familiar with the

24  Debtors, their business operations, their financial conditions and other matters that may be relevant

25  to these chapter 11 cases.

26                                    **Overview of Services**

27         6.       SG will assist and advise the Debtors with respect to managing the process leading to

28  a possible refinancing, restructuring or modification of any or all of the Debtors' existing debt, other

21

DOCS_LA:335013.2

1  obligations or equity. SG will provide restructuring services described in the Engagement Contract,

2  including, but not limited to the following:

3  • Develop a chapter 11 plan of liquidation;

4  • Create a liquidation analysis;

5/6  • Oversee cash management and disbursements, provide Monthly Operating Reports (MORs), regular financial reports and manage preparation of tax returns;

7/8  • Assist Imperial Capital with operational logistics as requested, including the sale of inventory;

9  • Claims reconciliation (administrative and priority claims for plan confirmation purposes);

10  • Communicate with creditors as requested by the Debtors;

12/13  • Management of services to be provided by the Debtors under the Transition Services Agreement (*e.g.*, oversee payroll processing, transfer of human resource services, transfer of assets, etc.);

14  • Assist legal counsel in the Debtors' chapter 11 bankruptcy cases; and

15  • Provide other services to the Debtors, as needed.

16  Additionally, as sole director of HYT, I will perform such duties as shall be usual and customary for

17  directors overseeing a holding company in a chapter 11 bankruptcy case (the "Director Services"

18  and, together with the CRO Services, the "Services") and shall also perform those duties and fulfill

19  those obligations as set forth in this Engagement Contract.

20  7.    I will serve in the capacity of CRO and sole director of HYT. I will operate in the

21  capacity of CRO under the protection of chapter 11 of the U.S. Bankruptcy Code. In this capacity, I

22  will:

23/24  • Work on a collaborative basis with senior executives of the Debtors, coordinate the restructuring efforts of the Debtors, subject to the reporting structure above, including the identification, development, and implementation of strategies related to the Debtors' debt obligations, business plan and other related matters; and,

25/26  • In consultation with the Debtors' senior executives, coordinate and manage the Services as discussed above and the SG professional staff on the engagement.

27  I will be assisted by the Additional Personnel from SG pursuant to the terms of the Engagement

28  Contract.

22

DOCS_LA:335013.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

## Compensation

2      8.      The Debtors and SG have agreed to the proposed compensation and payment

3  structure summarized below and set forth in detail in the Engagement Contract (the "Fee Structure"):

4

5  Fees in connection with this engagement will be based upon the time incurred
   providing the Services, multiplied by the applicable hourly rates summarized
   as follows:

6

7  | | Per Hour |
|---|---|
| CRO/Principal | $425 |
| Managing Director | $375 |
| Director/ Financial Advisory | $350 |
| Senior Financial Analyst | $295 |
| Controller | $275 |
| Jr. Analyst | $225 |
| Paralegal / Clerical | $100 |

8

9

10

11      9.      SG's fees for Director Services will be invoiced together for its fees for the Services.

12  For the avoidance of doubt, SG shall be compensated for Director Services at the prevailing hourly

13  rate for the Director ($425/hour).

14      10.      In addition to the hourly rates set forth above, the Debtors will reimburse both SG and

15  the CRO for all reasonable out-of-pocket expenses incurred in connection with this engagement such

16  as travel, lodging, telephone and facsimile charges.

17      11.      SG shall file with the Court, with copies to the United States Trustee and all official

18  committees, a monthly report of staffing on the engagement for the previous month.  Such report

19  shall include the names and functions filled of the individuals assigned.  All staffing shall be subject

20  to review by the Court in the event an objection is filed.

21      12.      SG shall file with the Court (and serve copies on the United States Trustee and any

22  official committees appointed in this case contemporaneously with such filing) reports of

23  compensation earned and expenses incurred on at least a monthly basis.  Such reports shall contain

24  summary charts which describe services provided, identify the compensation earned by each

25  executive officer and staff employee provided, and itemize the expenses incurred.  Time records for

26  the CRO and all Additional Personnel shall (i) be appended to the reports, (ii) contain detailed time

27  entries describing the task(s) performed, and (iii) be organized by project category.  When personnel

28  are providing services at an hourly rate, such personnel shall record their time entries in increments

23

DOCS_LA:335013.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   of no greater than one-half hour (.5). All compensation shall be subject to review by the Court in the

2   event an objection is filed. The first monthly report will be submitted fifteen (15) days from the end

3   of the first calendar month after the Petition Date and will cover the period to and including the last

4   day of the first month after the Petition Date. This procedure will continue at monthly intervals

5   thereafter. Because the CRO and SG are not being employed as a professional under section 327 of

6   the Bankruptcy Code, SG will not be submitting regular fee applications pursuant to sections 330

7   and 331 of the Bankruptcy Code. The CRO and SG will, however, submit the reports described

8   above.

9          13.    As of the Petition Date, SG was not owed any amounts by the Debtors for services

10  rendered prior to such date.

11         14.    SG has not received any promises as to payment or compensation in connection with

12  these bankruptcy cases other than in accordance with the provisions of the Bankruptcy Code, the

13  Bankruptcy Rules, the Local Rules and the United States Trustee Guidelines, and as disclosed

14  herein.

15                        **General Disinterestedness of SG**

16         15.    SG has undertaken a search to determine, and to disclose, whether it or its affiliates is

17  or has been employed by or has other relationships with any of the Debtors, their significant

18  creditors, professionals or other entities with significant relationships with the Debtors identified on

19  **Exhibit 1** hereto (the "Parties in Interest"). SG and its affiliates have or may have provided

20  professional services to, or may currently provide professional services to, and may in the future

21  provide professional services in matters unrelated to these chapter 11 cases to certain of the Debtor's

22  creditors, other parties-in-interest, or to attorneys and accountants that are known to us to be

23  assisting the Debtors or various committees. Additionally, certain of these creditors, parties-in-

24  interest, attorneys or accountants have or may have provided goods or services to, currently provide

25  or may currently provide goods or services to, and may in the future provide goods or services to,

26  SG or its affiliates in matters unrelated to these chapter 11 cases.

27         16.    From its internal research, SG has determined that certain relationships should be

28  disclosed, as follows and as set forth on **Exhibit 2** hereto:

                                          24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:335013.2

a. SG provides services in matters unrelated to the Debtors and these chapter 11 cases to certain of the Debtors' largest unsecured creditors and other potential parties-in-interest listed on **Exhibit 2** or their affiliates.

b. Law firms identified on **Exhibit 2** have provided, currently provide and may in the future provide legal services to SG and/or its affiliates in matters unrelated to the Debtors and these chapter 11 cases, and/or SG and/or its affiliates have provided, currently provide, and may in the future provide services to such firms or their clients in matters unrelated to these chapter 11 cases.

c. In the ordinary course of its business, SG has business relationships in unrelated matters with its principal competitors which together with their affiliates may be potential parties-in-interest in these chapter 11 cases. For example, from time to time, SG and one or more such entities and/or their affiliates may work on assignments for the same client, involving clients related by ownership or some other form of business relationship, and/or may otherwise engage each other directly for various purposes.

d. Certain potential parties-in-interest in these chapter 11 cases may be a party to various litigation matters, unrelated to the Debtors and these chapter 11 cases, in which SG and/or one or more of its affiliates are also a party. In certain of these unrelated litigation matters, SG and/or its affiliate(s) may be co-defendants with, may provide services to clients related to or clients with a commonality of interest with various potential parties in interest in these chapter 11 cases. In other unrelated litigation matters, SG and/or its affiliates may be adverse to or may provide services to clients with an interest adverse to various potential parties in interest in these chapter 11 cases.

17.    Furthermore, through reasonable inquiry, I do not believe there is any connection between myself or the personnel of SG and its affiliates who are anticipated to assist me in the role of the CRO and the United States Bankruptcy Judge presiding in these chapter 11 cases, the United States Trustee for Region 16 and the Assistant United States Trustee for the Central District of California.

18.    Despite the efforts described above to identify and disclose SG's connections with the parties-in-interest, SG may have not stated with certainty that every client relationship or other connection has been disclosed. In this regard, if SG discovers additional information that requires disclosure, it will file a supplemental disclosure with the Court promptly.

19.    SG has received no promises regarding compensation in these chapter 11 cases other than in accordance with the Bankruptcy Code and as set forth in this Declaration. SG has no agreement with any nonaffiliated entity to share any compensation paid by the Debtors.

DOCS_LA:335013.2

1    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

2    correct.

3    Executed this 12 day of January, 2021 at Los Angeles, California.

David Stapleton

DOCS_LA:335013.2

1

**Exhibit 1**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCS_LA:335013.2

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# **Exhibit 1**

## **(Potential Parties in Interest)**

Motorola Solutions, Inc.
Motorola Solutions Malaysia SDN
UPS - United Parcel Service
IRVINE OFFICE AND STORAGE
Dianique Management
Waste Management
Flood Brothers
IRVINE RANCH WATER DISTRICT
ComEd
NICOR GAS
Village of Schaumburg
SCE
3E Tech Corp
AT&T
COMCAST
Nuebis, LLC
1 Touch Office Technology
Marlin Business Bank
National C,S Enterprise
JANI-KING OF IL
K&J Landscape Services
ORKIN
Southern California Shredding, Inc.
READYREFRESH
TYCO INTEGRATED SECURITY LLC
TYCO INTEGRATED SECURITY LLC
California Choice
ALLIED ADMINISTRATORS FOR DENTAL
BLUE SHIELD OF CALIFORNIA
WageWorks, Inc.
ADP, LLC
T-Mobile
Google AD
LINKEDIN 5284104474 LNKD.
CLOUDFLARE
CLICKBACK
BEANSTALK
Waste pro
Republic Service
PEST PRO SERVICES
Coverall North America Inc.
comcast
FPL
SUNBEAM

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:335013.2

PITNEY BOWES
CRYSTAL SPRING
MICROSOFT
Amazon Web Services
Milner
Paypal
EFAX
PBI*LeasedEquipment
CANTEEN
GOOGLE *YouTube TV
AT&T
Bank & credit card fee
3E Tech Corp
TESSCO
CommScope Technologies LLC
BIRD ELECTRONICS CORP.
DHL Express - USA
FedEx
UNITED PARCEL SERVICE
SAMLEX AMERICA, INC.
R.F. INDUSTRIES
A.W. ENTERPRISES
TIMES MICROWAVE
UPS Supply Chain Solutions, Inc.
Coverall North America Inc.
Cintas
ADCOM WORLWIDE, INC.
FORCE TRANSPORT
Canteen
IMPACT RADIO ACCESORIES
Amazon Capital Services
ZORO
EXPEDITORS CARGO INSURANCE BROKERS INC
Crystal Springs
EXPEDITORS INTL-LA
Worldwide Express-CA
Baker's Electronics & Communications, Inc.
WESTELL
Nationwide Generators
Service Communications
California Choice
SAMLEX AMERICA, INC.
City National Bank
Brunel Air Cargo
Pinacle
UPS - United Parcel Service
ADVERTISING EDGE, INC.
Solspace, Inc

29

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1      Logistic Solutions
     Pandata Corp.
2      UPS FREIGHT
3      Gregory Lieber
     T-Mobile
4      Bryan Rassbach
     DME Delivers, LLC
5      Echo Global Logistics, Inc
     Joel Mills
6      ADP, LLC
7      BLUE SHIELD OF CALIFORNIA
     Cogency Global INC.
8      Ryan Ousley
     Andrew R Tuch
9      Say Cargo Express
     Dean Carlson
10    Karon Rutsch
11    Nuebis, LLC
     Regina Gonzales
12    Village of Schaumburg
     Rita Weber
13    WageWorks, Inc.
     Ronald Smith
14    Southern California Shredding, Inc.
15    Jeffery S. Hill
     Jonathan Koorsen
16    Daniel Edward Smith Jr.
     AmeriGas
17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

30

1

## **EXHIBIT 2**

2

### **(Disclosures)**

3

Potential Parties-in-Interest or their affiliates for whom Stapleton Group or its affiliates has provided
or is currently providing services in matters unrelated to these chapter 11 cases or with whom such
parties have other relationships, including banking relationships.

4

5

6

Pachulski Stang Ziehl & Jones LLP
Steptoe & Johnson LLP
Imperial Capital
Grant Thornton International Ltd.
Omni Management Group, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCS_LA:335013.2

# EXHIBIT C

**(Proposed Order)**

32

1  | Ira D. Kharasch (CA Bar No. 109084)
   | John W. Lucas (CA Bar No. 271038)
2  | Jason H. Rosell (CA Bar No. 269126)
   | Victoria A. Newmark (CA Bar No. 183581)
3  | PACHULSKI STANG ZIEHL & JONES LLP
   | 10100 Santa Monica Blvd., 13th Floor
4  | Los Angeles, California 90067
   | Telephone: (310) 277-6910
5  | Facsimile: (310) 201-0760
   | E-mail: ikharasch@pszjlaw.com
6  |         jlucas@pszjlaw.com
   |         jrosell@pszjlaw.com
7  |         vnewmark@pszjlaw.com

8  | Counsel to Debtors and Debtors in Possession

9  | **UNITED STATES BANKRUPTCY COURT**

10 | **CENTRAL DISTRICT OF CALIFORNIA**

11 | **SANTA ANA DIVISION**

12 | In re:                                    | Case No.  8:20-bk-11507-ES

13 | HYTERA COMMUNICATIONS            | Chapter 11
14 | AMERICA (WEST), INC., *et al.*,
                                              | Jointly Administered With Case Nos.:
15 |           Debtors and Debtors-in          | 8:20-BK-11508-ES and 8:20-BK-11509-ES
   |           Possession.

16 | Affects:                                 | **ORDER PURSUANT TO 11 U.S.C. § 363
   |                                          | APPROVING THE ENGAGEMENT**
17 | ☒ All Debtors                            | **CONTRACT OF DAVID STAPLETON
   |                                          | AS CHIEF RESTRUCTURING**
18 | ☐ HYTERA COMMUNICATIONS        | **OFFICER OF THE DEBTORS AND
19 |    AMERICA (WEST), INC., ONLY           | STAPLETON GROUP TO ASSIST THE
   |                                          | CRO**
20 | ☐ HYTERA AMERICA INCORPORATED,
21 |    ONLY                                  | [No Hearing Required Unless Requested Per
   |                                          | L.B.R. 2014-1(b)]
22 | ☐ HYT NORTH AMERICA, INC., ONLY

23 |
24 |         Upon the Application (the "Application")[3] of the above-captioned debtors and debtors in
25 | possession (the "Debtors") for entry of an order approving the letter agreement (the "Engagement
26 | Contract") dated January 12, 2021, by and between the Debtors and Stapleton Group ("SG"); and
27 | upon consideration of the Stapleton Declaration; and due and proper notice of the Application
28 | having been given under the circumstances; and the Court being satisfied based on the

---

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Application.

33

DOCS_LA:335013.2

*(left margin, vertical)* PACHULSKI STANG ZIEHL & JONES LLP  ATTORNEYS AT LAW  LOS ANGELES, CALIFORNIA

1   representations made in the Application and the Stapleton Declaration that neither SG, nor Mr.

2   Stapleton represents an interest adverse to the Debtors' estates with respect to the matters upon

3   which they are to be engaged, and that their employment is necessary and would be in the best

4   interests of the Debtors' estates, and after due deliberation and sufficient cause appearing therefor,

5           **IT IS HEREBY ORDERED** that:

6       1.      The Application is **GRANTED**.

7       2.      The Debtors are authorized, *nunc pro tunc* to the Engagement Date, to (i) employ and

8   retain Stapleton Group ("SG") on the terms set forth in the Engagement Contract, subject to the

9   following terms, which apply notwithstanding anything in the Application or any exhibit(s) related

10  thereto to the contrary; (ii) designate David Stapleton as Chief Restructuring Officer ("CRO") of the

11  Debtors; and (iii) appoint Mr. Stapleton as sole director of HYT North America, Inc. ("HYT").

12      3.      All compensation and reimbursement due to, and other rights of the CRO and SG

13  under the Engagement Contract shall be treated and allowed (subject to the compensation review

14  procedures identified in this Order) pursuant to 11 U.S.C. 363 and shall be paid in accordance with

15  the Engagement Contract.

16      4.      The CRO and SG shall not act in any other capacity (for example, and without

17  limitation, as a financial advisor, claims agent/claims administrator or investor/acquirer) in

18  connection with the above-captioned cases.

19      5.      In the event the Debtors seek to have SG personnel assume additional or different

20  executive positions that the positions disclosed in the Application, to modify materially the functions

21  of the persons engaged, or to materially change the terms of the engagement by either (i) modifying

22  the functions of personnel, (ii) adding new personnel, or (iii) altering or expanding the scope of the

23  engagement, a motion to modify the retention shall be filed.

24      6.      Except for the appointment of Mr. Stapleton to the board of HYT as set forth herein,

25  no principal, employee or independent contractor of SG shall serve as a director of the above-

26  captioned Debtors during the pendency of these cases.

27      7.      SG shall file with the Court, with copies to the United States Trustee and all official

28  committees, a report of staffing on the engagement for the previous month.  Such report shall include

34

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    the names and functions filled of the individuals assigned.  All staffing shall be subject to review by

2    the Court pursuant to 11 U.S.C. 328, whether or not an objection is filed.

3         8.    SG shall file with the Court (and serve copies on the United States Trustee and the

4    official committee of unsecured creditors contemporaneously with such filing) reports of

5    compensation earned and expenses incurred on at least a monthly basis.  Such reports shall contain

6    summary charts which describe services provided, identify the compensation earned by each

7    executive officer and staff employee, and itemize the expenses incurred.  Time records for the CRO

8    and all Additional Personnel (i) be appended to the reports, (ii) contain detailed time entries

9    describing the task(s) performed, and (iii) be organized by project category.  When personnel are

10   providing services at an hourly rate, such personnel shall record their time entries in increments no

11   greater than one-half hour (.5).  All compensation shall be subject to review by the Court whether or

12   not an objection is filed.  The first monthly report will be submitted fifteen (15) days from the end of

13   the first calendar month after the Engagement Date and will cover the period to and including the

14   last day of the first month after the Engagement Date.  This procedure will continue at monthly

15   intervals thereafter.

16        9.    The Debtors are permitted to indemnify those persons serving as corporate officers

17   pursuant to the Application on the same terms as provided to the Debtors' other officers and

18   directors under the corporate bylaws and applicable state law.

19        10.   For a period of three (3) years after the conclusion of the engagement, neither SG nor

20   any of its affiliates shall make any investments in the Debtors or the Reorganized Debtors.

21        11.   SG shall disclose any and all facts that may have a bearing on whether the firm, its

22   affiliates, and/or any individuals working on the engagement hold or represent any interest adverse

23   to the Debtors, their creditors, or other parties in interest.  The obligation to disclose identified in this

24   subparagraph is a continuing obligation.

25        12.   The terms of this Order shall be immediately effective and enforceable upon its entry.

26        13.   The Court shall retain jurisdiction to hear and determine all matters arising from or

27   related to the implementation of this Order.

28                                    # # #

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

35

DOCS_LA:335013.2

PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

**Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Boulevard, 13th Floor, Los Angeles, CA  90067**

A true and correct copy of the document entitled:

**<u>NOTICE OF DEBTORS' APPLICATION FOR AN ORDER PURSUANT TO 11 U.S.C. § 363 APPROVING THE ENGAGEMENT CONTRACT OF DAVID STAPLETON AS CHIEF RESTRUCTURING OFFICER OF THE DEBTORS AND STAPLETON GROUP TO ASSIST THE CRO AND RELATED RELIEF</u>**  was served in the manner stated below:

**1**. **<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **<u>1/13/2021</u>**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**:
On (*date*), **<u>1/31/2021</u>**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>** (state method <u>for each person or entity served</u>): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **_____**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 1/13/2021 | Nancy Lockwood | /s/ Nancy Lockwood |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

DOCS_LA:329989.2 38393/002

**F 9013-3.1.PROOF.SERVICE**

**1**.    <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:

- Karol K Denniston    karol.denniston@squirepb.com,
  travis.mcroberts@squirepb.com;sarah.conley@squirepb.com;karol-k-denniston-9025@ecf.pacerpro.com
- Michael J Hauser    michael.hauser@usdoj.gov
- John W Lucas    jlucas@pszjlaw.com, ocarpio@pszjlaw.com
- Mark E McKane    mark.mckane@kirkland.com, mmckane@kirkland.com;alevin@kirkland.com;lydia-yale-8751@ecf.pacerpro.com
- Christopher Minier    becky@ringstadlaw.com, arlene@ringstadlaw.com
- David L. Neale    dln@lnbyb.com
- Victoria Newmark    vnewmark@pszjlaw.com
- Juliet Y Oh    jyo@lnbrb.com, jyo@lnbrb.com
- Jason H Rosell    jrosell@pszjlaw.com, mrenck@pszjlaw.com
- Jeffrey Snyder    eservice@bilzin.com, eservice@bilzin.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov
- Michael J. Weiland    mweiland@wgllp.com,
  kadele@wgllp.com;vrosales@wgllp.com;cbmeeker@gmail.com;lbracken@wgllp.com

**2.**    <u>**SERVED BY UNITED STATES MAIL**</u>

*See attached service list.*

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                   **F 9013-3.1.PROOF.SERVICE**
DOCS_LA:329989.2 38393/002

**In re Hytera Communications
America (West), Inc.,** *et al.*
**Chapter 11 Case No.:  20-11507,** *et al.*
**Master Mailing List**

Office of the U.S. Trustee – SA
Frank Cadigan
Michael J. Hauser
Office of the United States Trustee
411 West Fourth Street, Suite 7160
Santa Ana, CA  92701

**No Secured Creditors**

| | | |
|---|---|---|
| <u>**Request for Special Notice Pursuant to 2002**</u> | Mark McKane, P.C.<br>Adam R. Alper<br>Brandon H. Brown<br>KIRKLAND & ELLIS LLP<br>555 California  Street<br>San Francisco, CA  94104 | Michael De Vries<br>Christopher  Lawless<br>KIRKLAND & ELLIS LLP<br>555 South Flower Street<br>Los Angeles, CA 90071 |
| Chad J. Husnick<br>KIRKLAND & ELLIS LLP<br>300 North LaSalle<br>Chicago, IL  60654 | Karol K. Denniston<br>Squire Patton Boggs (US) LLP<br>275 Battery Street, Suite 2600<br>San Francisco, CA  94111 | Christopher J. Giaimo, Esq.<br>Squire Patton Boggs (US) LLP<br>2550 M Street, NW<br>Washington, DC  20037 |