Ira D. Kharasch (CA Bar No. 109084)
John W. Lucas (CA Bar No. 271038)
Jason H. Rosell (CA Bar No. 269126)
Victoria A. Newmark (CA Bar No. 183581)
PACHULSKI STANG ZIEHL & JONES LLP
10100 N. Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone:      (310) 277-6910
Facsimile:      (310) 201-0760
E-mail:          ikharasch@pszjlaw.com
                 jlucas@pszjlaw.com
                 jrosell@pszjlaw.com
                 vnewmark@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>HCA WEST, INC., *et al.*,<br><br>    Debtors and Debtors-in<br>    Possession.<br><br>Affects:<br><br>☒ All Debtors<br><br>☐ HCA WEST, INC., ONLY<br><br>☐ HAI EAST, INC., ONLY<br><br>☐ HNA, INC., ONLY | Case No.  8:20-bk-11507-ES<br><br>Chapter 11<br><br>Jointly Administered With Case Nos.:<br>8:20-bk-11508-ES and 8:20-bk-11509-ES<br><br>**NOTICE OF MOTION AND DEBTORS' MOTION FOR APPROVAL OF PURCHASE AGREEMENT AMONG THE DEBTORS AND THE PURCHASER, APPROVING SALE OF THE INVENTORY OF THE DEBTORS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(b), (f) AND (m), AND GRANTING RELATED RELIEF**<br><br>Hearing:<br><br>Date:  May 6, 2021<br>Time:  10:30 a.m. (Pacific Time)<br>Place:  ZoomGov |

**PLEASE TAKE NOTICE** that the above-captioned debtors and debtors in possession (collectively, the "Debtors"), move this Court (the "Motion") pursuant to sections 105 and 363 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 2002, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Bankruptcy Rule 6004-1, for approval of the sale of certain inventory of the Debtors (referred to herein as the "Inventory") to Hytera US Inc. (the "Purchaser") pursuant to the terms of the *Bill of Sale and Agreement*, dated April 14, 2021 (the "Purchase Agreement"),[1] substantially in the form attached hereto as Exhibit B, as set forth in the proposed order attached hereto as Exhibit A (the "Order"), free and clear of all liens, claims, encumbrances or other interests pursuant to sections 363(b), (f), and (m); and granting such other related relief as provided in the Order.

**PLEASE TAKE FURTHER NOTICE** that this Motion is based on the attached *Memorandum of Points and Authorities*, the declaration of David P. Stapleton in support of the Motion filed concurrently herewith, the arguments of counsel, and other admissible evidence properly brought before the Court at or before the hearing on this Motion.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to LBR 9013-1(f), if you wish to oppose the Motion, you must file a written response with the Court and serve a copy of it on (a) the Debtors, Attn: David P. Stapleton (david@stapletoninc.com) and Grace Wang (grace.wang@hytera.us); (b) counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, Attn: John W. Lucas (jlucas@pszjlaw.com); (c) counsel to the Committee, Levene Neale Bender Yoo & Brill L.L.P., Attn: David L. Neale (dln@lnbyb.com); and (d) counsel to the Purchaser, Cohen & Gresser LLP, Attn: Daniel H. Tabak (dtabak@cohengresser.com), no later than 14 days prior to the hearing. The failure to timely respond in the manner set forth above may be deemed consent to the relief requested in the Motion or a waiver of any right to oppose the Motion.

**PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Motion will be held before the Honorable Erithe A. Smith, United States Bankruptcy Judge, Central District of California, on **May 6, 2021 at 10:30 a.m. (Pacific Time)**.

---

[1]    A capitalized term not defined herein shall have the meaning ascribed to it in the PURCHASE AGREEMENT.

DOCS_LA:336163.5

**PLEASE TAKE FURTHER NOTICE that because of the COVID-19 pandemic, the Court will conduct the hearing using ZoomGov audio and video technology.** Information on how to participate in the hearing using ZoomGov is provided below.

**PLEASE TAKE FURTHER NOTICE** that video and audio connection information for the hearing will be provided on Judge Smith's publicly posted hearing calendar, which may be viewed online at: https://www.cacb.uscourts.gov/judges/honorable-erithe-smith. For more details on appearing via ZoomGov, please see the "Notice of Video and Telephonic Appearance Procedures" in the Telephonic Instructions section of the referenced website.

**PLEASE TAKE FURTHER NOTICE** that the following is the unique ZoomGov connection information for the above-referenced hearing:

Video/audio web address:      https://cacb.zoomgov.com/j/1618897382

ZoomGov meeting number:   161 889 7382

Password:                             736506

Telephone conference lines:  1 (669) 254-5252 or 1 (646) 828-7666

**PLEASE TAKE FURTHER NOTICE** that more information on using ZoomGov to participate in this hearing is available on the Court's website at the following web address: https://www.cacb.uscourts.gov/news/zoom-video-hearing-guide-participants.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will serve this Notice and Motion, the attached *Memorandum of Points and Authorities*, and the Declaration by email to the extent feasible, otherwise by first class mail, on: (i) the Office of the United States Trustee, (ii) counsel to the Committee; and (iii) the parties that file with the Court requests for notice of all matters in accordance with Bankruptcy Rule 2002.

**WHEREFORE,** the Debtors respectfully request that this Court enter an order: (i) granting this Motion; (ii) approving the Purchase Agreement to Purchaser, free and clear of all liens, claims, encumbrances and other interests; and (iii) granting such other and further relief as is just and proper under the circumstances.

1     Dated:  April 14, 2021                    PACHULSKI STANG ZIEHL & JONES LLP

2

3                                          By:   */s/ John W. Lucas*

4                                                Ira D. Kharasch (CA Bar No. 109084)
                                                 John W. Lucas (CA Bar No. 271038)
5                                                Jason H. Rosell (CA Bar No. 269126)
                                                 Victoria A. Newmark (CA Bar No. 183581)
6                                                PACHULSKI STANG ZIEHL & JONES LLP
                                                 10100 N. Santa Monica Blvd., 13th Floor
7                                                Los Angeles, California 90067
                                                 Telephone     (310) 277-6910
8                                                Facsimile:    (310) 201-0760
                                                 E-mail:       ikharasch@pszjlaw.com
9                                                              jlucas@pszjlaw.com
                                                               jrosell@pszjlaw.com
10                                                             vnewmark@pszjlaw.com

11                                               *Counsel to the Debtors and*
                                                 *Debtors in Possession*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                  4

Ira D. Kharasch (CA Bar No. 109084)
John W. Lucas (CA Bar No. 271038)
Jason H. Rosell (CA Bar No. 269126)
Victoria A. Newmark (CA Bar No. 183581)
PACHULSKI STANG ZIEHL & JONES LLP
10100 N. Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone:    (310) 277-6910
Facsimile:    (310) 201-0760
E-mail:    ikharasch@pszjlaw.com
          jlucas@pszjlaw.com
          jrosell@pszjlaw.com
          vnewmark@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>HCA WEST, INC., *et al.*,<br><br>            Debtors and Debtors-in<br>            Possession.<br><br>Affects:<br><br>☒  All Debtors<br><br>☐  HCA WEST, INC., ONLY<br><br>☐  HAI EAST, INC., ONLY<br><br>☐  HNA, INC., ONLY | Case No.  8:20-bk-11507-ES<br><br>Chapter 11<br><br>Jointly Administered With Case Nos.:<br>8:20-bk-11508-ES and 8:20-bk-11509-ES<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF DEBTORS FOR APPROVAL APPROVING PURCHASE AGREEMENT AMONG THE DEBTORS AND THE PURCHASER, APPROVING SALE OF THE INVENTORY OF THE DEBTORS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(B), (F) AND (M), AND GRANTING RELATED RELIEF**<br><br>Hearing:<br><br>Date:      May 6, 2021<br>Time:      10:30 a.m. (Pacific Time)<br>Place:     ZoomGov |

DOCS_LA:336163.5

## **Table of Contents**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ............................................................................................... 1

    A.   Jurisdiction and Venue.................................................................................. 1

    B.   General Background ..................................................................................... 2

    C.   The Inventory .............................................................................................. 2

III. THE PROPOSED SALE ................................................................................... 2

    A.   Material Terms of the PURCHASE AGREEMENT ................................... 2

IV. ARGUMENT .................................................................................................... 3

    A.   The Proposed Sale of the Inventory Should Be Approved Under
        Section 363(b) of the Bankruptcy Code...................................................... 3

    B.   The Sale of the Inventory Free and Clear of Liens, Claims, Encumbrances,
        and Interests Pursuant to 11 U.S.C. §§ 363(f) Should Be Approved............ 5

    C.   The Purchaser Acted in Good Faith in Connection With the Proposed Sale
        and is Therefore Entitled to the Protections of 11 U.S.C. § 363(m).............. 6

    D.   The Sale Complies with the Consumer Privacy Requirements of
        Section 363(b)(1) of the Bankruptcy Code................................................... 7

    E.   Notice of the Proposed Sale and Related Matters Is Reasonable
        Under the Circumstances .............................................................................. 8

    F.   Request for Waivers of Stay Under Bankruptcy Rule 6004(h) ..................... 8

V. CONCLUSION ................................................................................................. 9

DOCS_LA:336163.5

**Table of Authorities**

**Cases**

*Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*
   94 B.R. 343 (E.D. Pa. 1988) ................................................................. 5

*Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp.)*
   492 F.2d 793 (9th Cir. 1974) ................................................................. 4

*Ewell v. Diebert (In re Ewell)*
   958 F.2d 276 (9th Cir. 1992) ................................................................. 6

*In re Abbotts Dairies of Pennsylvania, Inc.*
   788 F.2d 143 (3d Cir. 1986) ................................................................. 6

*In re Bel Air Assocs., Ltd.*
   706 F.2d 301 (10th Cir. 1983) ................................................................. 7

*In re Canyon Partnership*
   55 B.R. 520 (Bankr. S.D. Cal. 1985) ................................................................. 3

*In re Channel One Communications, Inc.*
   117 B.R. 493 (Bankr. E.D. Mo. 1990) ................................................................. 5

*In re Continental Airlines, Inc.*
   780 F.2d 1223 (5th Cir. 1986) ................................................................. 4

*In re Curlew Valley Assocs.*
   14 B.R. 506 (Bankr. D. Utah 1981) ................................................................. 4

*In re Delaware & Hudson Ry.*
   124 B.R. 169 (Bankr. D. Del. 1991) ................................................................. 8

*In re Lionel Corp.*
   722 F.2d 1063 (2d Cir. 1983) ................................................................. 4

*In re Moore*
   110 B.R. 924 (Bankr. C.D. Cal. 1990) ................................................................. 3

*In re Pisces Leasing Corp.*
   66 B.R. 671 (E.D.N.Y. 1986) ................................................................. 7

*In re Rock Indus. Machinery Corp.*
   572 F.2d 1195 (7th Cir. 1978) ................................................................. 7

*In re Sassoon Jeans, Inc.*
   90 B.R. 608 (S.D.N.Y. 1988) ................................................................. 7

*Marin v. Coated Sales, Inc. (In re Coated Sales, Inc.)*
   1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) ................................................................. 6

*Meyers v. Martin (In re Martin)*
   91 F.3d 389 (3d Cir. 1996) ................................................................. 4

DOCS_LA:336163.5

*Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*
    163 F.3d 570 (9th Cir. 1998) ................................................................................................. 6

*Walter v. Sunwest Bank (In re Walter)*
    83 B.R. 14 (B.A.P. 9th Cir. 1988) ..................................................................................... 3, 4


**Statutes**

11 U.S.C. § 363 ................................................................................................................................. 6

11 U.S.C. § 363(b)(1) ............................................................................................................... 3, 4, 7

11 U.S.C. § 363(f) ..................................................................................................................... 1, 5, 6

11 U.S.C. § 363(f)(2) ........................................................................................................................ 5

11 U.S.C. § 363(k) ............................................................................................................................ 1

11 U.S.C. § 363(m) .................................................................................................................. 1, 2, 6

28 U.S.C. § 157 ................................................................................................................................. 1

28 U.S.C. § 157(b)(2) ....................................................................................................................... 1

28 U.S.C. § 1334 .............................................................................................................................. 1

28 U.S.C. § 1408 .............................................................................................................................. 1


**Rules**

Fed. R. Bankr. P. 2002 ..................................................................................................................... 8

Fed R. Bankr. P. 2002(c) ................................................................................................................. 8

Fed. R. Bankr. P. 6004(h) ................................................................................................................ 8

**EXHIBITS:**


**A – Order**

**B – Purchase Agreement**

iii

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), hereby file this *Memorandum of Points and Authorities* in support of their *Motion For Approval of Sale of Assets and Related Relief* (the "Motion"),[1] and represent as follows:

## I.

## **INTRODUCTION**

Following the prepetition and postpetition marketing of their assets, the Debtors entered into a *Stalking Horse APA* for the sale of a majority of their assets.  The stalking horse bidder and eventual purchaser was Hytera US Inc. (the "Purchaser"), which is an indirect affiliate of the Debtors.  The sale transactions contemplated in the Stalking Horse APA closed in two steps, on January 12, 2021 (the "January Sale") and February 5, 2021 (the "February Sale"), for combined cash consideration of more than $8.1 million.

The January Sale transferred the Debtors' distribution network to the Purchaser along with certain operating assets and contracts. The February Sale transferred the Debtors' "non-accused" assets to the Purchaser. Motorola, who objected to the Stalking Horse APA, agreed with the Debtors to bifurcate the January Sale and February Sale so that the Illinois District Court could determine whether or not to grant Motorola's request for an injunction. As the Court is aware, the Illinois District Court denied the injunction, which permitted the Debtors to sell all its inventory, whether accused or "non-accused." Thus, after the denial of the injunction request, the  February  Sale (relating solely to non-accused inventory)was approved.

In connection with the original sale motion that was filed in July 2020 [Docket No. 118] and in light of the pending injunction motion in the Illinois District Court, the Debtors never sought authorization to sell their "accused" inventory. Now that there is clarity regarding the Debtors' sale of accused inventory after the Illinois District Court's denial of the injunction, the Debtors, who no longer have an operating business, need to liquidate the remaining inventory, all of which they believe is "accused" inventory.

To that end, the Debtors seek authorization to sell their remaining inventory (the "Inventory") that, due to the Debtors' intellectual property disputes with Motorola, was previously

---

[1]    A capitalized term not defined herein shall have the meaning ascribed to it in the Purchase Agreement.

DOCS_LA:336163.5

excluded from the two prior asset sales to the Purchaser. The proposed Sale will transfer title to such inventory to the Purchaser in exchange for the amount of $1,199,395. The Debtors are holding over $1.2 million of the Purchaser's cash that was sent to the Debtors by former customers who should have paid the Purchaser rather than the Debtors. The Debtors will use this cash to offset the purchase price and remit the balance, if any, to the Purchaser after the Sale closes.

For the reasons set forth herein, the Debtors believe that the proposed Sale will maximize the value of the Debtors' assets, is for fair consideration, and will maximize creditor returns.

**II.**

**BACKGROUND**

**A.     Jurisdiction and Venue**

The Court has jurisdiction over the Motion pursuant to 28 U.S.C. § 157 and 1334. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2). Venue of these cases and the Motion is proper in this district pursuant to 28 U.S.C. § 1408. The statutory predicates for the relief sought herein are sections 105 and 363(b), (f), (k) and (m) of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014, and Local Rule 6004-1.

**B.     General Background**

On May 26, 2020 (the "Petition Date"), the Debtors each filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate and manage their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

On June 15, 2020, the United States Trustee for the Central District of California, pursuant to section 1102(a)(1) of the Bankruptcy Code, appointed the Official Committee of Unsecured Creditors (the "Committee").

The factual background regarding the Debtors, including their current and historical business operations and the events precipitating their chapter 11 filings, is set forth in detail in the *Declaration of Ni Huang, President and Chief Financial Officer in Support of Emergency First Day Motions* [Docket No. 17], and incorporated herein by reference.

2

**C.    The Inventory**

The Inventory is the remaining inventory of the Debtors that is listed on Exhibit A of the Purchase Agreement.

### III.

### THE PROPOSED SALE

**A.    Material Terms of the PURCHASE AGREEMENT**

The Debtors are proposing to sell the Inventory to the Purchaser free and clear of all liens, claims, rights, interests, and encumbrances whatsoever, other than liens specifically assumed by the Purchaser under the Purchase Agreement, in accordance with sections 363(b), (f), and (m) of the Bankruptcy Code.

The following are the material terms of the proposed Sale to the Purchaser under the PURCHASE AGREEMENT:[2]

    i.    **Purchase Price:**  The Purchase Price consists of $1,199,395, which amount shall be paid from the Purchaser's cash the Debtors are holding. To the extent the cash on hand is insufficient to cover the full Purchase Price, the Purchaser shall pay the difference in cash at closing. To the extent the cash on hand exceeds the Purchase Price, the Debtors shall transfer the excess cash to the Purchaser at closing.  *See* Purchase Agreement, at § 2.

    ii.    **Inventory:**  As specified in the Purchase Agreement, all Inventory specified on Exhibit A of the Purchase Agreement.  *See* Purchase Agreement, at § 2.

    iii.    **Timing/Closing**:  The Closing must occur no later than May 21, 2021.  *See* Purchase Agreement, at § 6(a)(i).

    iv.    **Representations, Warranties and Covenants:**  Customary for a transaction of this kind.  Except as specifically set forth in the Purchase Agreement, the Purchaser will accept the Inventory at the Closing "AS-IS," "WHERE-IS," and "WITH ALL FAULTS."  *See* Purchase Agreement, at § 4.

---

[2]    The description herein only summarizes certain provisions of the Purchase Agreement, and the terms of the Purchase Agreement control in the event of any inconsistency.  Capitalized terms used in this summary that are not otherwise defined shall have the meanings ascribed to them in the Purchase Agreement.

3

# IV.

## ARGUMENT

**A.    The Proposed Sale of the Inventory Should Be
Approved Under Section 363(b) of the Bankruptcy Code**

A debtor, after notice and a hearing, may use, sell, or lease property, other than in the ordinary course of business.  11 U.S.C. § 363(b)(1).  A debtor's application of its sound business judgment in the use, sale, or lease of property is subject to great judicial deference.  *See, e.g., In re Moore*, 110 B.R. 924 (Bankr. C.D. Cal. 1990); *In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985); *see also Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business . . . whether the proffered business justification is sufficient depends on the facts of the case.  As the Second Circuit held in *Lionel*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.").

In interpreting section 363(b)(1) of the Bankruptcy Code, courts have held that a transaction involving property of the estate generally should be approved where the debtor or trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business."  *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986); *accord In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983); *Walter*, 83 B.R. at 19-20; *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (approval where a sound business purpose exists).  Among other factors, courts should consider the consideration to be paid, the financial condition and needs of the debtor, the qualifications of the buyer, and whether a risk exists that the assets proposed to be sold would decline in value if left in the debtor's possession.  *See Equity Funding Corp. of Am. v. Fin. Assocs. (In re Equity Funding Corp.)*, 492 F.2d 793, 794 (9th Cir. 1974) (affirming trial court's finding that the proposed sale of the debtor's assets would be in the best interest of the estate in light of impending deterioration of market value of debtor's assets).

1    It is the Debtors' business judgment that the proposed Sale of the Inventory is supported by

2    sound business reasons and is in the best interest of the Debtors, their estates, and their creditors and

3    stakeholders. The consideration to be paid by the Purchaser, represents a fair and reasonable offer

4    and will provide maximum value to the Debtors under the current circumstances.

5    **B.    The Sale of the Inventory Free and Clear of Liens, Claims,**
     **Encumbrances, and Interests Pursuant to 11 U.S.C. §§ 363(f) Should Be Approved**
6

7    The Debtors request that the Court approve the sale of the Inventory free and clear of all

8    liens, claims, encumbrances, and interests (collectively, "Interests"),[3] with any such Interests to

9    attach to the sale proceeds with the same validity, enforceability, and priority, if any, as existed with

10   respect to the Inventory as of the Petition Date.

11   Section 363(f) of the Bankruptcy Code expressly authorizes a debtor to sell property outside

12   the ordinary course of business "free and clear of any interest in such property of an entity" if any

13   one of the five following conditions is met: (1) applicable non-bankruptcy law permits sale of such

14   property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the

15   price at which such property is to be sold is greater than the aggregate value of all liens on such

16   property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in a legal or

17   equitable proceeding, to accept a money satisfaction of such interest.  11 U.S.C. § 363(f).  Because

18   section 363(f) of the Bankruptcy Code is written in the disjunctive, any one of these five conditions

19   provides authority to sell the Inventory free and clear of liens.  *See Citicorp Homeowners Servs., Inc.*

20   *v. Elliot (In re Elliot),* 94 B.R. 343, 345 (E.D. Pa. 1988).

21   Under section 363(f)(2) of the Bankruptcy Code, a debtor may sell estate property free and

22   clear of liens, claims, interests, and encumbrances if the entity asserting the interest consents.

23   Further, to the extent that any other party asserting an Interest receives notice of the Motion

24   and does not file a written objection hereto, such party should be deemed to have consented to the

25   proposed Sale of the Inventory free and clear of its asserted Interest(s).  *See In re Channel One*

26   *Communications, Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990).

27
28   ---
     [3]    For the avoidance of doubt, to the extent any of the Inventory is subject to Motorola's intellectual property rights as
     a matter of non-bankruptcy law, such Inventory will be sold subject to such intellectual property rights, but any
     monetary obligations arising from Motorola's judgment shall remain with the Debtors' estates.

5

1    In all events, the Debtors submit that every other Interest that is not a liability assumed by

2    Purchaser will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code,

3    and that any such Interest will be adequately protected by either being assumed or paid at the time of

4    closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses the

5    Debtors may possess with respect thereto.   The Debtors have conducted a search of purported

6    holders of liens against the Inventory in conjunction with the proposed Sale.   The Debtors have

7    served or will serve such purported lienholders (if any) with notice of the Motion, and will serve

8    notice of any order approving the Sale on such lienholders.

9    In sum, this Court should approve the Sale of the Inventory to the Purchaser free and clear of

10   Interests under sections 363(f) and (k) of the Bankruptcy Code, except as otherwise set forth in the

11   Purchase Agreement.

12   **C.    The Purchaser Acted in Good Faith in Connection With the Proposed**
13   **Sale and is Therefore Entitled to the Protections of 11 U.S.C. § 363(m)**

14   The reversal or modification on appeal of an authorization of a sale or lease of property under

15   section 363 of the Bankruptcy Code does not affect the validity of a sale or lease under such

16   authorization to an entity that purchased or leased such property in good faith, whether or not such

17   entity knew of the pendency of the appeal, unless such authorization and such sale or lease were

18   stayed pending appeal.   11 U.S.C. § 363(m).   While the Bankruptcy Code does not define "good

19   faith," one court has held:

20   > [t]he requirement that a Buyer act in good faith . .  speaks to the
21   > integrity of his conduct in the course of the sale proceedings.
>    Typically, the misconduct that would destroy a Buyer's good faith
22   > status at a judicial sale involves fraud, collusion between the Buyer
>    and other bidders or the trustee, or an attempt to take grossly unfair
23   > advantage of other bidders.

24   *In re Abbotts Dairies of Pennsylvania, Inc*., 788 F.2d 143, 147 (3d Cir. 1986) (citations omitted).

25   Although the Purchaser is an indirect affiliate of the Debtors, the proposed Sale was

26   negotiated in good faith, at arm's length and without collusion or fraud of any kind and approved by

27   the Debtors' independent board member.   Further, all of the material terms of the Sale have been

28   fully disclosed.   Accordingly, this Court should find that Purchaser acted in good faith within the

6

meaning of section 363(m) of the Bankruptcy Code.  *See generally Paulman v. Gateway Venture Partners III, L.P. (In re Filtercorp, Inc.)*, 163 F.3d 570 (9th Cir. 1998); *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 280 (9th Cir. 1992); *Marin v. Coated Sales, Inc. (In re Coated Sales, Inc.)*, 1990 WL 212899 (S.D.N.Y. Dec. 13, 1990) (holding that to show lack of good faith, a party must demonstrate "fraud, collusion, or an attempt to take grossly unfair advantage of other bidders"); *see also In re Sassoon Jeans, In*c., 90 B.R. 608, 610 (S.D.N.Y. 1988) (quoting *In re Bel Air Assocs., Ltd.*, 706 F.2d 301, 305 (10th Cir. 1983)); *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (examining the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings" (quoting *In re Rock Indus. Machinery Corp.*, 572 F.2d 1195, 1998 (7th Cir. 1978)).

Notwithstanding the foregoing, the Debtors shall present evidence, as necessary, prior to or at the Sale Hearing relating to the Purchaser's good faith.

**D.      The Sale Complies with the Consumer Privacy Requirements of Section 363(b)(1) of the Bankruptcy Code**

Pursuant to section 363(b)(1) of the Bankruptcy Code, the Debtors may not sell personally identifiable information if the Debtors, in connection with offering their products or services, have a policy prohibiting the transfer of such information and if such policy is in effect on the date of the commencement of the case, unless:

a.  such sale is consistent with such policy, or

b.  after appointment of a consumer privacy ombudsman in accordance with section 332, and after notice and a hearing, the court approves such sale or such lease —

(i)  giving due consideration to the facts, circumstances and conditions of such sale or such lease; and

(ii)  finding that no showing was made that such sale or such lease would violate applicable nonbankruptcy law.

11 U.S.C. § 363(b)(1).

As of the Petition Date, the Debtors' privacy policy did not prohibit the transfer of personally identifiable information.  In addition, the Inventory does not include any customer records.  As a result, the Debtors submit that pursuant to its privacy policy in existence on the Petition Date, and

7

the fact that the Inventory is composed solely of inventory, the Sale can be consummated  without the need for a consumer privacy ombudsman to be appointed.

**E.**    **Notice of the Proposed Sale and Related**
       **Matters Is Reasonable Under the Circumstances**

The Debtors have served the Motion upon (i) the Office of the United States Trustee, (ii) counsel to the Committee; (iii) counsel for the Purchaser; (iv) the parties that file with the Court requests for notice of all matters in accordance with Bankruptcy Rule 2002; (v) all entities known to the Debtors to have asserted any liens or other interests in any Inventory; (vi) all federal, state, and local regulatory, taxing and other authorities which have a reasonably known interest in the relief requested by the Motion, including the United States Attorney's office, all state attorneys general in states in which the Debtors and/or its network of dealers does business, and the Internal Revenue Service; and (vii) all of the Debtors' known creditors and all other known dealers, vendors, suppliers, lenders, and contract/license/lease counterparties.

Under Bankruptcy Rule 2002(a) and (c), the Debtors are required to notify their creditors of the proposed Sale, the terms and conditions of the Sale, and the deadline for filing any objections thereto.  The notices prepared by the Debtors contain the type of information required under Bankruptcy Rule 2002, and other relevant information.  Thus, the Debtors submit that adequate notice of the Motion and the Sale Hearing has been and will be provided.  *See, e.g., In re Delaware & Hudson Ry.*, 124 B.R. 169, 180 (Bankr. D. Del. 1991) (the disclosures necessary in a sale notice need only include the terms of the sale and the reasons why such a sale is in the best interests of the estate and do not need to include the functional equivalent of a disclosure statement).

**F.**    **Request for Waivers of Stay Under Bankruptcy Rule 6004(h)**

In order to allow the immediate realization of value from the proposed Sale, the Debtors respectfully request that any orders on the Motion be effective immediately, notwithstanding the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h).

As the Debtors expressed above, their goal is to efficiently and expeditiously administer the estates' financial and business affairs.  An expedient conclusion to the Sale process will inure to the benefit of the estates and their creditors.  Waiver of any stay will permit the proposed Sale to take place as early as possible under the circumstances.

8

# V.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Debtors respectfully request that this Court enter an order: (i) granting the Motion; (ii) approving the Purchase Agreement and the Sale of the Inventory to Purchaser, free and clear of all liens, claims, encumbrances, and interests; and (iii) granting such other and further relief as is just and proper under the circumstances.

Dated:  April 14, 2021                    PACHULSKI STANG ZIEHL & JONES LLP


                                   By:     /s/ John W. Lucas
                                          Ira D. Kharasch (CA Bar No. 109084)
                                          John W. Lucas (CA Bar No. 271038)
                                          Jason H. Rosell (CA Bar No. 269126)
                                          Victoria A. Newmark (CA Bar No. 183581)
                                          PACHULSKI STANG ZIEHL & JONES LLP
                                          10100 N. Santa Monica Blvd., 13th Floor
                                          Los Angeles, California 90067
                                          Telephone     (310) 277-6910
                                          Facsimile:    (310) 201-0760
                                          E-mail:       ikharasch@pszjlaw.com
                                                        jlucas@pszjlaw.com
                                                        jrosell@pszjlaw.com
                                                        vnewmark@pszjlaw.com

                                          *Counsel to the Debtors and*
                                          *Debtors in Possession*

9

# **<u>EXHIBIT A</u>**

## **Order**

Ira D. Kharasch (CA Bar No. 109084)
John W. Lucas (CA Bar No. 271038)
Jason H. Rosell (CA Bar No. 269126)
Victoria A. Newmark (CA Bar No. 183581)
PACHULSKI STANG ZIEHL & JONES LLP
10100 N. Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone:    (310) 277-6910
Facsimile:    (310) 201-0760
E-mail:      ikharasch@pszjlaw.com
             jlucas@pszjlaw.com
             jrosell@pszjlaw.com
             vnewmark@pszjlaw.com

*Counsel to the Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>HCA WEST, INC., *et al.*,<br><br>               Debtors and Debtors-in<br>               Possession.<br><br>Affects:<br><br>☒  All Debtors<br><br>☐  HCA WEST, INC., ONLY<br><br>☐  HAI EAST, INC., ONLY<br><br>☐  HNA, INC., ONLY | Case No.  8:20-bk-11507-ES<br>Chapter 11<br><br>Jointly Administered With Case Nos.:<br>8:20-bk-11508-ES and 8:20-bk-11509-ES<br><br>**ORDER (1) APPROVING PURCHASE AGREEMENT AMONG THE DEBTORS AND THE PURCHASER, (2) APPROVING SALE OF THE INVENTORY OF THE DEBTORS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS PURSUANT TO BANKRUPTCY CODE SECTIONS 105, 363(b), (f) AND (m), AND GRANTING RELATED RELIEF**<br><br>Hearing:<br><br>Date:     May 6, 2021<br>Time:     10:30 a.m. (Pacific Time)<br>Place:    ZoomGov |

The Court having considered the *Motion of the Debtors for Approval of Sale of the Debtors' Assets to the Purchaser* [Docket No. ●] (the "Sale Motion")[1] filed by the above-captioned debtors and debtors in possession (collectively, the "Debtors"), whereby the Debtors sought an order, among other things, (a) approving the entry into the Bill of Sale and Purchase Agreement, dated April 14, 2021, substantially in the form attached to the Motion as Exhibit B (the "Purchase Agreement") and (b) authorizing the sale of the Inventory and the transactions contemplated thereby (the "Sale Transaction") to Hytera US Inc. (the "Purchaser"), pursuant to the terms of the Purchase Agreement; and adequate and sufficient notice of the Sale Motion having been given to all parties in interest in these cases; and all such parties having been afforded due process and an opportunity to be heard with respect to the Sale Motion and all relief requested therein; and the Court having reviewed and considered: (a) the Sale Motion; (b) the objections to the Sale Motion, if any; and (c) the arguments of counsel made, and the evidence proffered or adduced, at the Sale Hearing; and after due deliberation and sufficient cause appearing;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      This Court has jurisdiction over the Sale Motion under 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

B.      The statutory bases for the relief sought in the Motion are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and Local Rule 6004-1.

C.      As evidenced by the affidavits of service on file with the Court, (i) due, proper, timely, adequate, and sufficient notice, and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein, has been provided in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Purchase Agreement; (ii) such notice was good, sufficient, and appropriate under the circumstances; and (iii) no other or further notice of the Sale Motion is or shall be required.

D.      As demonstrated by (i) evidence adduced at and prior to the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, the Debtors have determined that

---

[1]    A capitalized term not defined herein shall have the meaning ascribed to it in the Purchase Agreement.

the Purchase Agreement represents the highest and/or best offer for the Inventory and that no further marketing or sales process with respect to the Inventory is in the best interests of the Debtors' estates or creditors or is likely to lead to an offer that provides consideration in excess of the consideration provided in the Purchase Agreement.

E.      Upon entry of this Order (the "Sale Order"), the Debtors shall have full authority to consummate the Sale Transaction.

F.      Approval of the Purchase Agreement and consummation of the Sale Transaction is in the best interests of the Debtors, their estates, creditors, and other parties in interest.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for the sale to the Purchaser pursuant to section 363(b) of the Bankruptcy Code.

G.      The Purchase Agreement was negotiated, proposed, and entered into by the Debtors and the Purchaser without collusion, in good faith, and from arm's length bargaining positions.

H.      The sale price in respect of the Inventory was not controlled by any agreement among potential acquirers of the Debtors' Assets, and neither the Debtors nor the Purchaser engaged in collusion or any other conduct that would cause or permit the Purchase Agreement or Sale Transaction to be avoided under section 363(n) of the Bankruptcy Code.  Accordingly, neither the Purchase Agreement nor the Sale Transaction may be avoided and no party shall be entitled to any damages or other recovery pursuant to section 363(n).

I.      The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  The Purchaser is acting in good faith within the meaning of section 363(m) in consummating the Sale Transaction.

J.      The consideration to be provided by the Purchaser pursuant to the Purchase Agreement: (i) is fair and reasonable; (ii) is the highest and/or best offer for the Inventory; (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practically available alternative; and (iv) constitutes reasonably equivalent value and fair consideration.

K.      The transfer of the Inventory to the Purchaser will be a legal, valid, and effective transfer of the Inventory and will vest the Purchaser with all right, title, and interest of the Debtors to the Inventory free and clear of all liens, claims, encumbrances, and other interests of any kind and

3

every kind whatsoever (including liens, claims, encumbrances and interests of any Governmental Body), other than liens specifically assumed by Purchaser under the Purchase Agreement. The Debtors may sell the Inventory free and clear of all such liens, claims, encumbrances and interests because the standards set forth in section 363(f)(2) of the Bankruptcy Code have been satisfied.

L.      The transfer of the Inventory to the Purchaser or its designee(s) will not subject the Purchaser or its designee(s) to any liability whatsoever (including any successor liability) with respect to the operation of the Business prior to the Closing or by reason of such transfer.

M.      The Purchase Agreement is a valid and binding contract between the Debtors and the Purchaser, which are and shall be enforceable according to their respective terms.

N.      There is other good and sufficient cause to grant the relief requested in the Motion and approve the Purchase Agreement and the Sale Transaction.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED**.

2.      Except as otherwise provided in this Sale Order, any objections to the Motion or the entry of this Sale Order that have not been withdrawn, waived or settled, and all reservations of rights included therein, are hereby DENIED and OVERRULED.

3.      The Purchase Agreement, including all of its terms and conditions, and the Sale Transaction are hereby approved.

4.      Pursuant to section 363 of the Bankruptcy Code, the Debtors are authorized to (i) execute, deliver, and perform under, consummate, and implement the Purchase Agreement together with all additional instruments and documents that are requested by the Purchaser and may be reasonably necessary or desirable to implement the Purchase Agreement, and (ii) take any and all actions as they deem necessary, appropriate, or advisable for the purpose of assigning, transferring, granting, conveying, and conferring to the Purchaser or reducing to Purchaser's possession, the Inventory, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Purchase Agreement, including, without limitation, any and all actions reasonably requested by the Purchaser to effectuate the Purchase Agreement.

4

DOCS_LA:336163.5

5.      Pursuant to sections 105(a) and 363(f)[2] of the Bankruptcy Code, upon the Closing: (i) the transfer of the Inventory to the Purchaser pursuant to the Purchase Agreement shall constitute a legal, valid, and effective transfer of the Inventory and shall vest the Purchaser with all right, title, and interest in and to the Inventory; and (ii) the Inventory shall be transferred to the Purchaser free and clear of all liens, claims, encumbrances, and other interests of any kind and every kind whatsoever (including liens, claims, encumbrances and interests of any Governmental Body), other than liens specifically assumed by Purchaser under the Purchase Agreement, in accordance with section 363(f) of the Bankruptcy Code, with any such liens, claims, encumbrances and interests of which the Inventory are sold free and clear to attach to the proceeds of the Sale Transaction, in the order of their priority, with the same validity, force, and effect which they had against the Inventory prior to the entry of this Sale Order, subject to any rights, claims, and defenses the Debtors and all interested parties may possess with respect thereto.

6.      This Sale Order is and shall be effective as a determination that all liens, claims, encumbrances, and interests, other than liens specifically assumed by Purchaser under the Purchase Agreement, shall be and are, without further action by any Person, released with respect to the Inventory as of the Closing Date.

7.      Except to the extent expressly included in the Assumed Liabilities or to enforce the Purchase Agreement, pursuant to sections 105 and 363 of the Bankruptcy Code, all persons and entities, including, without limitation, the Debtors, the Official Committee of Unsecured Creditors (the "Committee"), all debt security holders, all equity security holders, the Debtors' employees or former employees, governmental, tax, and regulatory or investigatory authorities of any sort, lenders, parties to or beneficiaries under any benefit plan, trade and other creditors asserting or holding any liens, claims, encumbrances, and other interests of any kind and every kind whatsoever against, in or with respect to any of the Debtors, the Business, or all or any part of the Inventory (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtors, all

---

[2]   For the avoidance of doubt, to the extent any of the Inventory is subject to Motorola's intellectual property rights as a matter of non-bankruptcy law, such Inventory will be sold subject to such intellectual property rights, but any monetary obligations arising from Motorola's judgment shall remain with the Debtors' estates.

5

or any part of the Inventory, the operation of the Business prior to the Closing Date, or the transfer of the Inventory to the Purchaser shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting, or otherwise pursuing such liens, claims, encumbrances, or other interests, whether by payment, setoff, or otherwise, directly or indirectly, against the Purchaser or any affiliate, successor, or assign thereof, or against the Inventory.

8. The Purchaser shall not be deemed or considered a successor to the Debtors or the Debtors' estates by reason of any theory of law or equity, and the Purchaser has not assumed nor is it in any way responsible for any liability or obligation of the Debtors or the Debtors' estates, except as otherwise expressly provided in the Purchase Agreement.

9. The Purchase Agreement and the Sale Transaction shall not be avoided under section 363(n) of the Bankruptcy Code, and no party shall be entitled to any damages or other recovery pursuant to section 363(n) in respect of the Purchase Agreement, or the Sale Transaction.

10. The Purchase Agreement and the Sale Transaction are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Purchase Agreement and the Sale Transaction shall not affect the validity of the sale of the Inventory to the Purchaser or any other aspect of the Sale Transaction, unless this Sale Order is duly stayed pending such appeal. The Purchaser is a good faith purchaser of the Inventory and is entitled to all of the benefits and protections afforded by section 363(m) of the Bankruptcy Code.

11. This Sale Order is and shall be binding upon and shall govern acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of fees, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities, who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments that reflect that the Purchaser is the assignee and owner of the Inventory free and clear of all liens, claims, encumbrances and interests, other than liens specifically assumed by Purchaser under the Purchase Agreement (all such entities being referred to as "Recording Officers"). All Recording Officers are authorized and

6

specifically directed to strike recorded claims, liens and interests against the Inventory recorded prior to the date of this Sale Order, other than liens specifically assumed by Purchaser.

12.     No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the transactions authorized herein, including the Purchase Agreement and the Sale Transaction.

13.     The terms and provisions of the Purchase Agreement, the other ancillary agreements, and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, the Purchaser, and their respective affiliates, successors and assigns, and any affected third parties, notwithstanding the dismissal of any of the Debtors' cases or any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code or conversion of the Debtors' cases to cases under chapter 7, as to which trustee(s) such terms and provisions likewise shall be binding and not subject to rejection or avoidance.  The Purchase Agreement, the Sale Transaction, and this Sale Order shall be binding upon, and shall not be subject to rejection or avoidance by, any chapter 7 or chapter 11 trustee appointed in the Bankruptcy Cases.  Further, nothing contained in any plan of reorganization (or liquidation) confirmed in these chapter 11 cases or any order confirming any plan of reorganization (or liquidation) or any other order entered in these cases shall conflict with or derogate from the provisions of the Purchase Agreement or the terms of this Sale Order.

14.     The failure to include specifically any particular provision of the Purchase Agreement or in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Purchase Agreement be authorized and approved in its entirety.

15.     To the extent of any inconsistency between the provisions of this Sale Order, the Purchase Agreement, and any documents executed in connection therewith, the provisions contained in the Sale Order, the Purchase Agreement, and any documents executed in connection therewith shall govern, in that order.

16.     The provisions of this Sale Order authorizing the sale and assignment of the Inventory free and clear of all liens, claims, encumbrances and interests, other than liens specifically assumed by Purchaser under the Purchase Agreement, shall be self-executing, and notwithstanding the failure of the Debtors, the Purchaser, or any other party to execute, file, or obtain releases,

7

DOCS_LA:336163.5

1    termination statements, assignments, consents, or other instruments to effectuate, consummate,

2    and/or implement the provisions hereof, all liens, claims, encumbrances, and other interests on or

3    against such Inventory (other than liens specifically assumed by Purchaser under the Purchase

4    Agreement), if any, shall be deemed released, discharged, and terminated.

5        17.    Notwithstanding the provisions of Bankruptcy Rules 6004(h) or 7062, this Sale Order

6    shall be effective and enforceable immediately and shall not be stayed.

7        18.    This Court shall retain exclusive jurisdiction to resolve any controversy or claim

8    arising out of or related to this Sale Order, the Purchase Agreement, or any other related agreements,

9    including without limitation: (a) any actual or alleged breach or violation of this Sale Order, the

10   Purchase Agreement, or any related agreements, (c) the enforcement of any relief granted in this

11   Sale Order, or (d) as otherwise set forth in the Purchase Agreement.

12                                    * * *

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8

# EXHIBIT B

## PURCHASE AGREEMENT

## BILL OF SALE AND AGREEMENT

**THIS BILL OF SALE AND AGREEMENT** (the "**Agreement**") is made and entered into as of April 14, 2021, by and between Hytera US Inc., a Delaware corporation (the "**Buyer**"), on the one hand, and HAI East, Inc. (formerly known as Hytera America Incorporated), a Florida corporation and Chapter 11 debtor and debtor in possession (**"East"**) and HCA West, Inc. (formerly known as Hytera Communication America (West), Inc.), a Delaware corporation  and Chapter 11 debtor and debtor in possession (**"West"** and, collectively with East, the "**Sellers**" and, together with Buyer, the "**Parties**"), Sellers being Debtors and Debtors in Possession under Case Nos. 8:20-bk-11507-ES (as to West) and 8:20-bk-11508-ES (as to East) (collectively, the "**Case**") in the United States Bankruptcy Court for the District of Delaware (the "**Bankruptcy Court**").

## RECITALS

A.    Upon satisfaction of the last of the Closing Conditions (as defined below), Sellers are selling to Buyer and Buyer is acquiring from Sellers' their right, title and interest in and to the personal property consisting of the inventory that is specifically listed or described on **Exhibit "A"** attached hereto and incorporated herein by this reference to the extent that it exists and is owned by Sellers on the Closing Date (collectively, the "**Inventory**").  For the avoidance of all doubt, the Inventory shall include only the items listed on **Exhibit A**, unless such **Exhibit "A"** is amended by written agreement among the Parties, in which case the Inventory shall include all such items as are listed on **Exhibit "A,"** as so amended.  Concurrently with any such amendment of **Exhibit "A"** hereto, the Purchase Price (as defined below) shall be adjusted to reflect the inclusion of additional items on and/or exclusion of items previously included on **Exhibit "A."**

B.    Buyer and Sellers wish to provide for the transfer of such right, title and interest in and to the Inventory and for other terms and conditions applicable to such transfer, all as more particularly set forth below.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Buyer and Sellers hereby agree as follows:

1.    <u>Transfer of Assets</u>.  Subject to and upon the terms, conditions, disclaimers and acknowledgments hereinafter set forth (including, without limitation, those set forth in <u>Section 4 hereof</u> and the conditions set forth in <u>Section 6</u>, below (collectively, the "**Closing Conditions**"), Sellers hereby sell, assign, transfer, convey and deliver to Buyer the Inventory.

2.    <u>Purchase Price</u>.  The purchase price for the Inventory (the "**Purchase Price**"), shall be seventy percent (70%) of the book value, as of the Closing Date, of the Inventory identified on Exhibit A as the "**Class A Inventory**" and ten percent (10%) of the book value, as of the Closing Date, of the Inventory identified on **Exhibit "A"** as the "**Class B Inventory**."  Based on the book value of the Inventory as of April 14, 2021 shown on **Exhibit A**, the Purchase Price is $1,102,700 (the "**Class A Inventory Purchase Price**"), calculated as 70% of Class A Inventory having a book value of $1,575,286, plus $96,694, calculated as 10% of the Class B

Inventory having a book value of $966,964 (the "**Class B Inventory Purchase Price**") for a total amount of $1,199,395 (the "**Estimated Purchase Price**"),  The Estimated Purchase Price shall be paid as follows:

        (a)      Concurrently with the consummation of the transaction contemplated herein (the "**Closing**"), the Estimated Purchase Price shall be deducted from the cash the Sellers are holding that is payable to the Buyer from the Buyer's customers, which amount totals $2,756,000 as of the date of this Agreement (the "**Buyer's Accounts Receivable**"). If the amount of the Buyer's Accounts Receivable exceeds the Estimated Purchase Price at the Closing, the excess amount will be transferred by Sellers to Buyer, by wire transfer to an account designated by Buyer in accordance with Section 6(a)(ii) below.  In the event that the Closing fails to occur for any reason by May 21, 2021, Sellers shall immediately transfer the full outstanding amount of the Buyer's Accounts Receivable to Buyer, by wire transfer to an account designated in writing by Buyer.  If the amount of the Buyer Accounts Receivable is less than the Estimated Purchase Price, Buyer shall pay any difference to Sellers at the Closing by wire transfer in accordance with Section 6(b)(ii) hereof.

        (b)      Promptly following the Closing, Buyer shall prepare and send to Sellers a statement of the items of Inventory that were purchased by the Buyer as of the Closing (the "**Closing Statement**").  If Sellers were not able to deliver any item on **Exhibit "A"** to the Buyer as of the Closing (*e.g.*, the items were not owned or otherwise in possession or control of the Sellers), the Estimated Purchase shall be adjusted accordingly. After the any such adjustments are made, the Estimated Purchase Price shall become the "Purchase Price." If the Purchase Price exceeds the Estimated Purchase Price, Buyer shall pay the difference to Sellers; if the Purchase Price is less than the Estimated Purchase Price, Sellers shall pay Buyer the difference.

        3.      <u>Sales, Use and Other Taxes</u>.  In addition to the Purchase Price, Buyer shall (i) bear and pay any and all sales, purchases, transfer, stamp, documentary stamp, use or similar taxes under the laws of the state(s) where the Inventory (or any portion thereof) is located, or any subdivision of any such state(s), which are or will be payable by reason of the sale and transfer of the Inventory (collectively, "**Transfer Taxes**"), and (ii) indemnify, defend, protect, and save and hold Sellers harmless of, from and against any and all claims, demands, causes of action, actions, liabilities, obligations, losses, costs and expenses  (including, without limitation, court or tribunal costs and reasonable attorneys' fees) as Sellers (or either of them) may suffer or incur with respect to any Transfer Taxes.

        4.      <u>"AS IS" Transaction</u>.  Buyer hereby acknowledges and agrees that Sellers neither make nor have made any representations or warranties whatsoever, express or implied, with respect to any matter relating to the Inventory (including, without limitation, income to be derived or expenses to be incurred in connection with the Inventory, the physical condition of the Inventory, the value of the Inventory (or any portion thereof), the title of the Inventory (or any portion thereof), what liens, judgments or other encumbrances may exist and whether the same are valid or enforceable against the Inventory, any matter relating to any licenses, purchase orders or contracts comprising part of the Inventory, the merchantability or fitness of the Inventory or any other portion of the Inventory for any particular purpose, or any other matter or thing relating to the Inventory or any portion thereof). Without in any way limiting the

foregoing, Sellers hereby disclaim any warranty (express or implied) of merchantability or fitness for any particular purpose as to any portion of the Inventory. Buyer has conducted an independent inspection and investigation of the title and physical condition of all portions of the Inventory and all such other matters relating to or affecting the Inventory as Buyer deemed necessary or appropriate and Buyer is acquiring the Inventory based solely upon such independent inspections and investigations.  Accordingly, Buyer shall accept the Inventory at the Closing "**AS IS, "WHERE IS,**" and "**WITH ALL FAULTS.**"

5.      <u>Bankruptcy Condition</u>.  Both Buyer's and Sellers' obligations under this Agreement are subject to Seller's obtaining, on or before May 21, 2021, entry of an order, substantially in the form and content attached as Exhibit A to the sale motion and incorporated herein by this reference (the **"Sale Order"**).  Sellers shall use commercially reasonable efforts to obtain such Sale Order and Buyer shall cooperate in all commercially reasonable respects in such efforts.

6.      <u>Additional Closing Conditions</u>.  In addition to the condition set forth in Section 5 above:

(a)      Buyer's obligations to consummate the transaction contemplated herein shall be conditioned upon the occurrence of the following:

(i)      The Closing shall have occurred by no later than  May 21, 2021 (the **"Outside Date"**); provided, however, Buyer shall not be entitled to rely upon the condition set forth in this clause (i) should the Closing fail to occur by such date by reason of Buyer's breach or default hereunder; and

(ii)      If the amount of the Buyer Accounts Receivable exceeds the Purchase Price, Sellers shall, concurrently with the Closing, pay the excess to Buyer by wire transfer in accordance with such written wiring instructions as Buyer may provide to Sellers not later than two (2) business days prior to the Closing.

(b)      Sellers' obligations to consummate the transaction contemplated herein shall be conditioned upon the occurrence of the following:

(i)      The Closing shall have occurred by no later than the Outside Date; provided, however, Sellers shall not be entitled to rely upon the condition set forth in this clause (ii) should the Closing fail to occur by such date by reason of Sellers' breach or default hereunder; and

(ii)      If the Purchase Price exceeds the amount of the Buyer Accounts Receivable, Buyer shall, concurrently with the Closing, pay the excess to Sellers by wire transfer in accordance with such written wiring instructions as Sellers

may provide to Buyer not later than two (2) business days prior to the Closing.

Upon the timely satisfaction of each of the closing conditions set forth in Section 5 and this <u>Section 6</u> (collectively, the **"Closing Conditions"**), the Closing shall be deemed to have occurred.  A Closing Condition may be waived or extended only in a writing providing for the same from the Party(ies) for whose benefit such Closing Condition was included in this Agreement.

7.      <u>Miscellaneous</u>.

7.1      <u>Risk of Loss</u>.  Notwithstanding anything to the contrary herein, the risk of loss or damage to the Inventory shall shift to the Buyer immediately upon the satisfaction of the last of the Closing Conditions and the occurrence of the Closing, irrespective of where  the Inventory is located as of the applicable date.

7.2      <u>Attorneys' Fees</u>.  In the event that any Party hereto brings an action or other proceeding to enforce or interpret the terms and provisions of this Agreement, the prevailing Party(ies) in that action or proceeding shall be entitled to have and recover from the non-prevailing Party(ies) all such fees, costs and expenses (including, without limitation, all court costs and reasonable attorneys' fees) as the prevailing Party(ies) may suffer or incur in the pursuit or defense of such action or proceeding.

7.3      <u>Notices</u>.  Unless otherwise provided herein, any notice, tender, or delivery to be given hereunder by any Party to the other(s) may be effected by personal delivery in writing, or by registered or certified mail, postage prepaid, return receipt requested, and shall be deemed communicated as o the date of mailing.  Mailed notices shall be addressed as set forth below, but each Party may change its address by written notice in accordance with this paragraph.

|  |  |
|---|---|
| To Sellers: | HAI East, Inc. and HCA West, Inc.<br>Attn: Mike Bergthold<br>Email:  mbergthold@stapletoninc.com |
| With a copy to: | Pachulski Stang Ziehl & Jones LLP<br>10100 Santa Monica Blvd., 13th Fl.<br>Los Angeles, CA 90067<br>Attn: Ira D. Kharasch and John W. Lucas<br>Email:  ikharasch@pszjlaw.com and<br>jlucas@pszjlaw.com |
| To Buyer: | Hytera US Inc.<br>8 Whatney<br>Suite 200<br>Irvine, California 96218<br>Attention: Alla Huang<br>Email: alla.huang@hytera.us |

4

With a copy to:          Cohen & Gresser LLP
                         800 Third Avenue
                         New York, New York 10022
                         Attention: Bonnie J. Roe, Esq.
                         Daniel H. Tabak, Esq.
                         Facsimile No.: (212) 957-4514
                         Email: broe@cohengresser.com;
                         dtabak@cohengresser.com

        7.4     Entire Agreement.  This Agreement contains the entire agreement between Buyer and Sellers relating to the purchase and sale of the Inventory.  Any oral representations or modifications concerning this Agreement or any such other document shall be of no force and effect excepting a subsequent modification in writing, signed by the Party to be charged.

        7.5     Modification.  This Agreement may be modified, amended or supplemented only by a written instrument duly executed by all the Parties hereto.

        7.6     Severability.  Should any term, provision or paragraph of this Agreement be determined to be illegal or void or of no force and effect, the balance of the Agreement shall survive.

        7.7     Captions.  All captions and headings contained in this Agreement are for convenience of reference only and shall not be construed to limit or extend the terms or conditions of this Agreement.

        7.8     Waiver.  No waiver of any of the provisions of this Agreement shall be deemed, or shall constitute, a waiver of other provisions, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the Party making the waiver.

        7.9     Brokerage Obligations. Sellers and Buyer each represent and warrant to the other that such Party(ies) has incurred no liability to any broker or agent with respect to the payment of any commission regarding the consummation of the transaction contemplated hereby.  It is agreed that if any claims for commissions, fees or other compensation, including, without limitation, brokerage fees, finder's fees, or commissions are ever asserted against Buyer or Sellers in connection with this transaction, all such claims shall be handled and paid by the Party(ies) whose actions form the basis of such claim and such Party(ies) shall indemnify, defend (with counsel reasonably satisfactory to the Party(ies) entitled to indemnification), protect and save and hold the other harmless from and against any and all such claims or demands asserted by any person, firm or corporation in connection with the transaction contemplated hereby.

        7.10    Survival.  The respective covenants and agreements of Sellers and Buyer herein shall not be deemed waived or otherwise affected by the Closing.

        7.11    Binding Effect. This Agreement shall bind and inure to the benefit of the respective heirs, personal representatives, successors, and assigns of the Parties.

     7.12    <u>Applicable Law</u>.  This Agreement shall be governed by and construed in accordance with the internal laws of Delaware, without regard to its choice of law principles.

     7.13    <u>Construction</u>.  In the interpretation and construction of this Agreement, the Parties acknowledge that the terms hereof reflect extensive negotiations among the Parties and that this Agreement shall not be deemed, for the purpose of construction and interpretation, drafted by any Party(ies) hereto.

     7.14    <u>Counterparts</u>.  This Agreement may be signed in counterparts.  The Parties further agree that this Agreement may be executed by the exchange of signature pages by facsimile or electronic mail; provided that by doing so the Parties agree to provide original signatures promptly following the written request of the other(s).

     7.15    <u>Time is of the Essence</u>.  Time is of the essence in this Agreement, and all of the terms, covenants and conditions hereof.

     7.16    <u>Bankruptcy Court Jurisdiction</u>.  BUYER AND SELLERS AGREE THAT THE BANKRUPTCY COURT SHALL HAVE EXCLUSIVE JURISDICTION OVER ALL DISPUTES AND OTHER MATTERS RELATING TO (i) THE INTERPRETATION AND ENFORCEMENT OF THIS AGREEMENT; AND/OR (ii) THE INVENTORY, AND BUYER EXPRESSLY CONSENTS TO AND AGREES NOT TO CONTEST SUCH EXCLUSIVE JURISDICTION.

     7.17    <u>Further Assurances</u>.  From time to time after the Closing, and without further consideration, Buyer and Sellers shall each execute and deliver such other documents and instruments of transfer, conveyance, assignment, and delivery, and take such other actions as the other may reasonably request in order (i) more effectively to transfer, convey, and assign the Inventory to the Buyer, and (ii) otherwise to fully consummate the transaction contemplated herein; provided that nothing in this <u>Section 7.17</u> shall be deemed to impose on either Buyer or Sellers any obligation to incur any material cost or expense or to initiate or join in any litigation or other action or proceeding, nor shall Sellers be required to keep the Case open merely to enable it to continue performing its obligations under this provision.

**IN WITNESS WHEREOF**, the Parties have executed this Bill of Sale and Agreement as of the day and year first above written.

**SELLERS:**

**HAI East, Inc., a**
**Florida corporation**
**and Debtor and Debtor in Possession**

By:
Name: _David Stapleton_
Its: _Chief Restructuring Officer_

**HCAWest, Inc, a Delaware corporation**
**and Debtor and Debtor in Possession**

By:
Name: _David Stapleton_
Its: _Chief Restructuring Officer_

**BUYER:**

**Hytera US Inc,**
**a Delaware corporation**

By: _____
  Name: _____
  Its: _____

7

**IN WITNESS WHEREOF**, the Parties have executed this Bill of Sale and Agreement as of the day and year first above written.

**SELLERS:**

**HAI East, Inc., a
Florida corporation
and Debtor and Debtor in Possession**

**By:**
**Name:** _____
**Its:** _____

**HCAWest, Inc, a Delaware corporation
and Debtor and Debtor in Possession**

**By:** _____
**Name:** _____
**Its:** _____

**BUYER:**

**Hytera US Inc.,
a Delaware corporation**

**By:** _____
**Name:** ___Alla Huang_____
**Its:** ___President_____

# EXHIBIT "A"

**Inventory Summary**

*Detailed Accused Inventory Summary*
*In re: Cases 20-11509 ("HYT North America"), 20-11508 ("Hytera East") and 20-11507 ("Hytera West")*

**Accused Inventory**

| Item No. | Debtor | Description | Quantity | Cumulative Book Value ($) | Inventory Class | Discount Purchase Price |
|---|---|---|---|---|---|---|
| MD652i-G-U1 | Hytera East | EOL DMR MOBILE GPS UHF 400-470 MHz 1024CH 25W | 4 | $798.94 | A | $559.26 |
| MD652i-U1 | Hytera East | EOL DMR MOBILE UHF 400-470 MHz 1024CH 25W-SPECIAL ORDER | 36 | $6,106.44 | A | $4,274.51 |
| MD782i-G-U1 | Hytera East | DMR MOBILE GPS UHF 400-470 MHz 1024CH 45W | 4 | $989.73 | A | $692.81 |
| MD782i-G-U2 | Hytera East | DMR MOBILE GPS UHF 450-520 MHz 1024CH 45W | 115 | $27,587.92 | A | $19,311.54 |
| MD782i-U1 | Hytera East | DMR MOBILE UHF 400-470 MHz 1024CH 45W, FCC, AMBE++, ROAMING ACTIVE | 11 | $2,397.35 | A | $1,678.15 |
| MD786G-U1 | Hytera East | DMR MOBILE GPS UHF 400-470 MHz 1024CH 45W | 8 | $2,083.16 | B | $208.32 |
| MD786G-U2 | Hytera East | DMR MOBILE GPS UHF 450-520 MHz 1024CH 45W | 1 | $273.98 | B | $27.40 |
| PD502i-U1 | Hytera East | DMR PORTABLE UHF 400-470 MHz 32CH 4W NON DISPLAY IP54 1500mAh Li-Ion FCC, AMBE++, Roaming license | 11 | $1,265.21 | A | $885.65 |
| PD502i-UL913-U1 | Hytera East | 0 | 14 | $2,018.37 | A | $1,412.86 |
| PD502i-V1 | Hytera East | DMR PORTABLE VHF 136-174 MHz (STD ANT 147-160MHZ ) 32CH 5/1W NON DISPLAY IP54 1500mAh Li-ion | 71 | $8,157.43 | A | $5,710.20 |
| PD506V-1 | Hytera East | DMR PORTABLE VHF 136-174 MHz 32CH 5W NON DISPLAY IP54 1500mAh Li-Ion | 5 | $598.32 | B | $59.83 |
| PD562i-U1 | Hytera East | DMR Portable UHF 400-470 MHz 512CH 4W Display Ltd Keypad P54 1500mAh Li-Ion | 115 | $16,017.77 | A | $11,212.44 |
| PD562i-UL913-V1 | Hytera East | DMR PORTABLE UL913 VHF 136-174 MHz (STD ANT 147-160MHZ) 256CH 5/1W DISPLAY IP54 2000mAh Li-ion | 80 | $14,680.36 | A | $10,276.25 |
| PD602i-G-MD-Um | Hytera East | DMR PORTABLE GPS MAN DOWN UHF 400-527 MHz 32CH 4W NON DISPLAY IP67 1500mAh Li-Ion | 31 | $5,137.58 | A | $3,596.31 |
| PD602i-G-MD-V1 | Hytera East | DMR PORTABLE GPS VHF 136-174 MHz (STD ANT 153-164MHZ) 32CH 5/1W NON DISPLAY IP67 1500mAh Li-Ion | 103 | $15,907.31 | A | $11,135.12 |
| PD602i-G-V1 | Hytera East | DMR PORTABLE GPS VHF 136-174 MHz (STD ANT 153-164MHZ) 32CH 5/1W NON DISPLAY IP67 1500mAh Li-ion | 34 | $5,871.71 | B | $587.17 |
| PD602i-UL913-Um | Hytera East | Replaced by PD602i-G-MD-UL913-Um DMR PORTABLE Ex UL913 UHF 400-527 MHz 256CH 4W NON DISPLAY IP67 200 | 1 | $175.58 | A | $122.91 |
| PD602i-Um | Hytera East | DMR PORTABLE UHF 400-527 MHz 32CH 4W NON DISPLAY IP67 1500mAh Li-Ion | 6 | $748.37 | A | $523.86 |
| PD602i-V1 | Hytera East | DMR PORTABLE VHF 136-174 MHz 32CH 4W NON DISPLAY IP67 1500mAh Li-Ion STD ANTENNA 153-164MHZ | 40 | $5,795.54 | A | $4,056.88 |
| PD606G-U1 | Hytera East | DMR PORTABLE GPS UHF 400-527 MHz 32CH 4W NON DISPLAY IP67 1500mAh Li-Ion | 2 | $344.72 | B | $34.47 |
| PD662i-G-MD-UL913-Um | Hytera East | DMR Portable UL913 GPS MD UHF 400-527 MHz 1024CH 4W Display Ltd Keypad IP67 2000mAh Li-Ion | 1 | $223.67 | A | $156.57 |
| PD662i-G-MD-Um | Hytera East | DMR PORTABLE UHF MAN DOWN GPS 400-527 MHz 1024CH 4W Display Ltd Keypad IP67 1500mAh Li-Ion | 793 | $162,975.71 | A | $114,083.00 |
| PD662i-G-MD-V1 | Hytera East | DMR Portable Man Down VHF 136-174MHz (Std Ant 153-164MHz/1575MHz)1024CH 5W Disp Ltd Key IP67 1500mAh | 5 | $971.14 | A | $679.80 |
| PD682i-G-MD-Um | Hytera East | DMR PORTABLE Man Down GPS UHF 400-527 MHz 1024CH 4W Display Full Keypad IP67 1500mAh Li-Ion | 206 | $43,396.01 | A | $30,377.21 |
| PD682i-G-UL913-Um | Hytera East | EOL DMR Portable UL913 GPS UHF 400-527 MHz 1024CH 4W Display Full Keypad IP67 2000mAh Li-ion | 98 | $26,054.22 | B | $2,605.42 |
| PD682i-G-Um | Hytera East | EOL DMR Portable GPS UHF 400-527 MHz 1024CH 4W Display Full Keypad IP67 1500mAh Li-Ion | 1 | $217.43 | A | $152.20 |
| PD682i-G-V1 | Hytera East | EOL DMR Portable VHF 136-174MHz(Std Ant 153-164MHz/1575MHz) 1024CH 5W Disp Full Key IP67 1500mAhLi-I | 86 | $19,645.76 | A | $13,752.03 |
| PD702i-G-MD-U1 | Hytera East | DMR PORTABLE GPS MAN DOWN UHF 400-470 MHz 32CH 4W NON DISPLAY | 25 | $4,753.88 | A | $3,327.72 |
| PD702i-G-MD-V1 | Hytera East | DMR PORTABLE GPS MD VHF 136-174 MHz 32CH 5W NON DISPLAY STD ANTENNA 147-160MHZ | 56 | $10,005.44 | A | $7,003.81 |
| PD702i-G-U2 | Hytera East | EOL DMR PORTABLE GPS UHF 450-520 MHz 32CH 4W NON DISPLAY 2000mAh | 1 | $234.09 | B | $23.41 |
| PD702i-G-V1 | Hytera East | EOL DMR PORTABLE GPS VHF 136-174 MHz 32CH 5W NON DISPLAY STD ANTENNA 147-160MHZ | 1 | $231.98 | B | $23.20 |
| PD702i-MD-UL913-U1 | Hytera East | EOL DMR PORTABLE UL913 MAN DOWN UHF 400-470 MHz 32CH 4W NON DISPLAY 2400mAh | 81 | $19,347.25 | B | $1,934.73 |
| PD702i-V1 | Hytera East | DMR PORTABLE VHF 136-174 MHz 32CH 5W NON DISPLAY STD ANTENNA 147-160MHZ 2000mAh | 6 | $1,265.60 | A | $885.92 |
| PD752i-G-MD-U1 | Hytera East | DMR PORTABLE GPS UHF MAN DOWN 400-470 MHz 1024CH 4W DISPLAY LTD KEYPAD | 11 | $3,117.65 | A | $2,182.36 |
| PD752i-G-MD-U2 | Hytera East | EOL DMR PORTABLE GPS UHF MAN DOWN 450-520 MHz 1024CH 4W DISPLAY LTD KEYPAD | 73 | $19,672.23 | A | $13,770.56 |
| PD752i-G-MD-V1 | Hytera East | DMR PORTABLE GPS VHF MD 136-174MHz ( STD ANTENNA 147-160) 1024CH 4W DISPLAY LTD KEYPAD 2000MAH LI IO | 5 | $1,221.34 | A | $854.94 |
| PD752i-G-U1 | Hytera East | EOL DMR PORTABLE GPS UHF 400-470 MHz 1024CH 4W DISPLAY LTD KEYPAD 2000mAh Li-ION | 283 | $76,027.26 | B | $7,602.73 |
| PD752i-U2 | Hytera East | EOL DMR PORTABLE UHF 450-520MHz 1024CH 4W DISPLAY LTD KEYPAD | 31 | $7,850.28 | A | $5,495.20 |
| PD752i-V1 | Hytera East | DMR PORTABLE VHF 136-174MHz ( STD ANTENNA 147-160) 1024CH 4W DISPLAY LTD KEYPAD 2000MAH LI ION | 7 | $1,365.34 | A | $955.74 |
| PD782i-G-MD-U5 | Hytera East | EOL DMR PORTABLE GPS MD 806-870 1-3W 896-941 MHz 1-2.5w 1024CH DISP 2000mAh Li-Ion DMR II | 39 | $9,615.48 | A | $961.55 |
| PD782i-G-MD-UL913-U1 | Hytera East | DMR PORTABLE UL913 GPS MAN DOWN UHF 400-470 MHz 1024CH 4W DISPLAY 2400mAh | 2 | $523.13 | A | $366.19 |
| PD782i-G-MD-UL913-U5 | Hytera East | EOL DMR PORTABLE UL913 GPS MAN DOWN  806-870 1-3W 896-941 MHz 1-2.5w 1024CH DISP 2400mAh Li-Ion | 37 | $13,261.81 | B | $1,326.18 |
| PD782i-G-MD-UL913-V1 | Hytera East | DMR PORTABLE UL913 GPS MAN DOWN  VHF 136-174 MHz 1024CH 5W DISPLAY STD ANTENNA 147-160MHZ | 14 | $4,327.65 | A | $3,029.36 |
| PD782i-MD-UL913-U1 | Hytera East | EOL DMR PORTABLE UL913 MAN DOWN UHF 400-470 MHz 1024CH 4W DISPLAY | 1 | $338.91 | B | $33.89 |
| PD782i-MD-V1 | Hytera East | EOL DMR PORTABLE MAN DOWN VHF 136-174 MHz 1024CH 5W DISPLAY  STD ANTENNA 147-160MHZ | 11 | $3,107.40 | B | $310.74 |
| PD782i-U1 | Hytera East | DMR PORTABLE UHF 400-470 MHz 1024CH 4W DISPLAY 2000mAh Li-ion | 2 | $396.72 | A | $277.70 |
| PD786G-U2 | Hytera East | DMR PORTABLE GPS 450-520 MHz 1024CH 4W DISPLAY | 18 | $5,107.26 | B | $510.73 |
| PD982i-G-BT-U5 | Hytera East | DMR PORTABLE GPS 806-870 1-3W 896-941 MHz 1-2.5w 1024CH DISP 2000mAh Li-Ion DMR II | 13 | $4,141.47 | B | $414.15 |

| Item No. | Debtor | Description | Quantity | Cumulative Book Value ($) | Inventory Class | Discount Purchase Price |
|---|---|---|---|---|---|---|
| PDC760 UxB2 | Hytera East | PORTABLE 350-527MHZ 6Mode B2 AMERICA VER LTE,Trunking GPS/BD/GLONASS,Bluetooth,Basic Encryp 2900mAh | 103 | $93,719.03 | A | $65,603.32 |
| RD622i-U1 | Hytera East | EOL DMR REPEATER UHF 400-470 MHz 1W to 25W 100% continuous duty cycle | 33 | $22,845.02 | A | $15,991.51 |
| RD622i-U2 | Hytera East | EOL DMR REPEATER UHF 450-520 MHz 1W to 25W 100% continuous duty cycle | 1 | $663.80 | A | $464.66 |
| RD622i-V1 | Hytera East | EOL DMR REPEATER VHF136-174 MHz to 25W 100% continuous duty cycle | 24 | $16,358.71 | A | $11,451.10 |
| RD982i-S-HP100-T-U1 | Hytera East | DMR SUPER REPTR UHF400-470MHz 16CH 100W TRUNK LITE ANALOG AND DMR CONVENTIONAL MODE ONLY | 5 | $16,127.55 | A | $11,289.29 |
| RD982i-S-HP100-U1 | Hytera East | DMR SUPER REPEATER UHF 400-470 MHz 16CH 100W ANALOG AND DMR CONVENTIONAL MODE ONLY | 31 | $54,670.08 | A | $38,269.06 |
| RD982i-S-U1 | Hytera East | DMR SUPER REPEATER UHF 400-470 MHz 50W ANALOG AND DMR CONVENTIONAL MODE ONLY | 35 | $36,737.73 | A | $25,716.41 |
| RD982i-S-U2 | Hytera East | DMR SUPER REPEATER UHF 450-520 MHz 50W ANALOG AND DMR CONVENTIONAL MODE ONLY | 17 | $17,798.43 | A | $12,458.90 |
| RD982i-S-U5 | Hytera East | DMR SUPER REPEATER 806-941M (RoHS) Hytera ID 16CH 35W/5W 25/20/12.5K CTCSS/CDCSS AMBE++ | 1 | $959.01 | A | $671.31 |
| RD982i-S-V1 | Hytera East | DMR SUPER REPEATER VHF 136-174 MHz 50W ANALOG AND DMR CONVENTIONAL MODE ONLY | 9 | $8,691.63 | A | $6,084.14 |
| RD982i-S-V2 | Hytera East | DMR SUPER REPEATER UHF 210-270 MHz 50W ANALOG AND DMR CONVENTIONAL MODE ONLY | 2 | $2,338.44 | A | $1,636.91 |
| SD-13080100000097 | Hytera East | DWS-T/SmartOne Offline map SAP   DWS-T/SmartOne | 1 | $32.48 | B | $3.25 |
| SO-1013001000033 | Hytera East | DS-6610 MPUC 2-Way Wireless Gateway, DC12V(RoHS) | 1 | $1,180.12 | B | $118.01 |
| SO-13080100000019 | Hytera East | DS-6610 MPUC software package (with 2 Hytera mobile radio DFSI SAPs, including Hytera DMR2 DFSI, DMR | 1 | $92.19 | B | $9.22 |
| SO-13080100000028 | Hytera East | Smart One, E&M Signal SAP - Per channel | 3 | $1,512.88 | B | $151.29 |
| SO-13080100000102 | Hytera East | Smart One(PUC) for Mutiple Systems, Basic Dispatch Package(1 server + 1 client) | 2 | $13,217.54 | B | $1,321.75 |
| SO-13080100000105 | Hytera East | SmartOne recording function license | 1 | $786.74 | B | $78.67 |
| SO-13080100000108 | Hytera East | Smart One (PUC), Additional Dispatch Client License - Per client | 8 | $26,727.55 | B | $2,672.76 |
| SO-13080100000110 | Hytera East | SmartOne Dispatch feature authorized-AVL(RoHS)(REACH) | 9 | $10,004.87 | B | $1,000.49 |
| SO-13080100000111 | Hytera East | SmartOne Hytera DMR Trunking CSSI SAP authorized | 1 | $2,541.95 | B | $254.20 |
| SO-13080100000120 | Hytera East | SmartOne DMR Conventional repeater SAP authorized | 6 | $1,090.23 | B | $109.02 |
| SO-549910100000120 | Hytera East | Speaker, GigaWorks T20 Series II Creative | 5 | $322.95 | A | $226.07 |
| X1ei-U1 | Hytera East | EOL COVERT 400-470MHZ 4W,GPS,man down, ,IP67,1800mah li-ion battery,dual charger,antenna-SPECIAL ORD | 2 | $603.39 | A | $422.37 |
| X1e-V 06 LA SERIES | Hytera East | COVERT 136-174MHZ 5W,GPS,man down, IP67,1800mah li-ion,dual charger,antenna153-164mhz SA06 FW | 3 | $896.64 | B | $89.66 |
| X1pi-U1 (02) | Hytera East | COVERT PLUS Display 400-470MHZ NA 4W/1W 1024CH 25K/20K/12.5K GPS MD BT IP67 1800mah LI batt charger | 43 | $15,298.17 | A | $10,708.72 |
| X1pi-U2 (02) | Hytera East | COVERT PLUS Display 450-520MHZ NA 4W/1W 1024CH 25K/20K/12.5K GPS MD BT IP67 1800mah LI batt charger | 45 | $15,058.57 | A | $10,541.00 |
| X1pi-U5 (02) | Hytera East | COVERT PLUS Display radio 1- 3W 806-870MHz, 1 - 2.5 watts 896-941MHz, 1800 mAh GPS MD TIER II,Analog | 6 | $2,280.20 | A | $228.02 |
| X1pi-V1 (02) | Hytera East | COVERT PLUS Display 136-174MHZ NA 5W/1W 1024CH 25K 20K 12.5K GPS MD BT IP67 1800mah LI Batt Charger | 3 | $1,034.24 | A | $723.97 |
| DT-13010100000031 | Hytera West | Multi site XPT license(upgrade from single site) R7.6 or above | 1 | $290.00 | B | $29.00 |
| DT-985RD98000000 | Hytera West | NEW PN DT-13010100000030 Single-Site XPT License for RD98i-S Repeater | 5 | $726.10 | B | $72.61 |
| DT-985RD98000002 | Hytera West | 13010100000032 Multi-Site XPT License for RD98XS Repeater from conventional to XPT R7.6 or above | 2 | $1,170.00 | B | $117.00 |
| HYT-13080100000110 | Hytera West | SmartOne Dispatch Function License-AVL | 5 | $6,726.49 | | |
| MD652i-U1 | Hytera West | EOL DMR MOBILE UHF 400-470 MHz 1024CH 25W-SPECIAL ORDER | 54 | $9,013.68 | B | $901.37 |
| MD652i-U2 | Hytera West | EOL DMR MOBILE UHF 450-527 MHz 1024CH 25W- SPECIAL ORDER | 146 | $24,370.32 | B | $2,437.03 |
| MD782i-G-FD-V1 | Hytera West | EOL DMR Duplex Mobile Radio VHF 136-174MHz power 5 - 50 watts,GPS DMR Tier II, Conventional | 8 | $4,063.73 | A | $2,844.61 |
| MD782i-G-Trunking-LP-U1 | Hytera West | MD782i (GPS/Trunking) 400-470MHz Power 1 - 25 watts, with GPS,,DMR Tier II and analogue conventional | 77 | $20,172.24 | B | $2,017.22 |
| MD782i-G-U1 | Hytera West | DMR MOBILE GPS UHF 400-470 MHz 1024CH 45W | 50 | $12,533.95 | A | $8,773.77 |
| MD782i-G-U2 | Hytera West | DMR MOBILE GPS UHF 450-520 MHz 1024CH 45W | 303 | $66,335.39 | A | $46,434.77 |
| MD782i-G-U5 | Hytera West | DMR MOBILE GPS 806-941 MHz 1024CH 35W | 144 | $35,877.18 | B | $3,587.72 |
| MD782i-G-U5-RFB | Hytera West | DMR MOBILE GPS 806-941 MHz 1024CH 35W | 3 | $0.00 | B | $0.00 |
| MD782i-G-V1 | Hytera West | DMR MOBILE GPS VHF 136-174 MHz 1024CH 50W FCC, AMBE++, ROAMING ACTIVE | 16 | $3,200.84 | A | $2,240.59 |
| MD782i-U2-RFB | Hytera West | DMR MOBILE UHF 450-520 MHz 1024CH 45W REFURBISHED 18 MONTHS WARRANTY | 2 | $0.00 | A | $0.00 |
| PD502i-U1 | Hytera West | DMR PORTABLE UHF 400-470 MHz 32CH 4W NON DISPLAY IP54 1500mAh Li-Ion FCC, AMBE++, Roaming license | 3 | $377.07 | A | $263.95 |
| PD502i-UL913-U1 | Hytera West | PORTABLE RADIO UL913 UHF 400-470MHZ 256CH 4/1W 25K/20K/12.5KCTCSS/CDCSS AMBE++2000mAhEx Li-Ion RoHS | 8 | $1,051.82 | A | $736.27 |
| PD502i-UL913-V1 | Hytera West | DMR PORTABLE UL913 VHF 136-174 MHz (STD ANT 147-160MHZ ) 32CH 5/1W NON DISPLAY IP54 2000mAh Li-Ion | 16 | $2,129.79 | A | $1,490.85 |
| PD502i-V1 | Hytera West | DMR PORTABLE VHF 136-174 MHz (STD ANT 147-160MHZ ) 32CH 5/1W NON DISPLAY IP54 1500mAh Li-Ion | 19 | $2,194.71 | A | $1,536.30 |
| PD562i-U1 | Hytera West | DMR Portable UHF 400-470 MHz 512CH 4W Display Ltd Keypad IP54 1500mAh Li-Ion | 4 | $473.28 | A | $331.30 |
| PD562i-UL913-U1 | Hytera West | DMR Portable UL913 UHF 400-470 MHz 512CH 4W Display Ltd Keypad IP54 2000mAh Li-Ion | 42 | $6,394.50 | A | $4,476.15 |
| PD562i-UL913-V1 | Hytera West | DMR PORTABLE UL913 VHF 136-174 MHz (STD ANT 147-160MHZ) 256CH 5/1W DISPLAY IP54 2000mAh Li-Ion | 19 | $3,187.90 | A | $2,231.53 |
| PD562i-V1 | Hytera West | DMR PORTABLE VHF 136-174 MHz (STD ANT 147-160MHZ) 512CH 5/1W DISPLAY IP54 1500mAh Li-Ion | 118 | $13,961.76 | A | $9,773.23 |
| PD562i-V1-RFB | Hytera West | DMR PORTABLE VHF 136-174 MHz (STD ANT 147-160MHZ) 512CH 5/1W DISPLAY IP54 1500mAh Li-Ion | 1 | $159.12 | B | $15.91 |
| PD602i-G-MD-UL913-Um | Hytera West | DMR PORTABLE Ex UL913 GPS MD UHF 400-527 MHz 256CH 4W NON DISPLAY IP67 2000mAh Li-Ion | 9 | $1,579.05 | A | $1,105.34 |
| PD602i-G-MD-Um | Hytera West | DMR PORTABLE GPS MAN DOWN UHF 400-527 MHz 32CH 4W NON DISPLAY IP67 1500mAh Li-Ion | 4 | $640.17 | A | $448.12 |

| Item No. | Debtor | Description | Quantity | Cumulative Book Value ($) | Inventory Class | Discount Purchase Price |
|---|---|---|---|---|---|---|
| PD602i-G-MD-V1 | Hytera West | DMR PORTABLE GPS VHF 136-174 MHz (STD ANT 153-164MHZ) 32CH 5/1W NON DISPLAY IP67 1500mAh Li-Ion | 58 | $9,885.72 | A | $6,920.00 |
| PD602i-UL913-V1 | Hytera West | EOL DMR PORTABLE Ex UL913 VHF 136-174MHz 256CH 5W NON DISP IP67 2000mAh Li-Ion STD ANTENNA 153-164MH | 6 | $1,310.40 | B | $131.04 |
| PD662i-V1 | Hytera West | DMR PORTABLE VHF 136-174 MHz 32CH 4W NON DISPLAY IP67 1500mAh Li-Ion STD ANTENNA 153-164MHZ | 111 | $15,822.22 | A | $11,075.55 |
| PD662i-G-MD-Um | Hytera West | DMR Portable UHF MAN DOWN GPS 400-527 MHz 1024CH 4W Display Ltd Keypad IP67 1500mAh Li-Ion | 312 | $66,941.84 | A | $46,859.29 |
| PD662i-G-MD-V1 | Hytera West | DMR Portable Man Down VHF 136-174MHz (Std Ant 153-164MHz/1575MHz)1024CH 5W Disp Ltd Key IP67 1500mAh | 21 | $4,066.98 | A | $2,846.89 |
| PD662i-G-MD-V1-RFB | Hytera West | PD662 G(MD) 136-174M (RoHS) Hytera US 1024CH 5/1W 25K/20K/12.5K CTCSS/CDCSS AMBE++(1500mAh Li-Ion ba | 4 | $943.80 | B | $94.38 |
| PD662i-G-UL913-V1 | Hytera West | EOL DMR Portable UL913 VHF136-174MHz(Std Ant 153-164MHz/1575MHz)1024CH 5W Disp Ltd Key IP67 2000mAh | 40 | $9,828.00 | A | $6,879.60 |
| PD662i-Um | Hytera West | DMR Portable UHF 400-527 MHz 1024CH 4W Display Ltd Key IP67 1500mAh Li-Ion | 12 | $2,223.96 | A | $1,556.77 |
| PD662i-V1 | Hytera West | DMR Portable VHF 136-174 MHz 1024CH 4W Display Ltd Key IP67 1500mAh Li-Ion ST ANT 153-164MHZ | 20 | $3,247.15 | A | $2,273.01 |
| PD682i-G-MD-UL913-UM | Hytera West | DMR Portable UL913 GPS  MD UHF 400-527 MHz  1024CH 4W Display Full Keypad IP67 2000mAh Li-Ion | 5 | $1,191.13 | A | $833.79 |
| PD682i-G-MD-Um | Hytera West | DMR Portable Man Down GPS UHF 400-527 MHz 1024CH 4W Display Full Keypad IP67 1500mAh Li-Ion | 14 | $2,608.76 | A | $1,826.13 |
| PD682i-G-MD-V1 | Hytera West | DMR Portable ManDown VHF 136-174MHz(Std Ant 153-164MHz/1575MHz) 1024CH 5W Disp Full Key IP67 1500mA | 31 | $6,288.63 | A | $4,402.04 |
| PD682i-G-UL913-Um | Hytera West | EOL DMR Portable UL913 GPS UHF 400-527 MHz 1024CH 4W Display Full Keypad IP67 2000mAh Li-Ion | 11 | $2,919.21 | B | $291.92 |
| PD682i-G-UL913-V1 | Hytera West | EOL DMR PortableUL913 GPS VHF 136-174MHz(Std Ant 153-164MHz/1575MHz)1024CH 5W DispFullKeyIP67 2000mA | 30 | $7,897.50 | B | $789.75 |
| PD682i-G-Um | Hytera West | EOL DMR Portable GPS UHF 400-527 MHz 1024CH 4W Display Full Keypad IP67 1500mAh Li-Ion | 10 | $2,406.30 | B | $240.63 |
| PD682i-G-V1 | Hytera West | EOL DMR Portable VHF 136-174MHz(Std Ant 153-164MHz/1575MHz) 1024CH 5W Disp Full Key IP67 1500mAhLi-I | 45 | $10,072.07 | B | $1,007.21 |
| PD702i-G-MD-U2 | Hytera West | EOL DMR PORTABLE GPS MAN DOWN UHF 450-520MHz 32CH 4W NON DISPLAY | 145 | $24,431.05 | A | $17,101.74 |
| PD702i-G-MD-UL913-U2 | Hytera West | EOL DMR PORTABLE UL913 GPS MAN DOWN UHF 450-520 MHz 32CH 4W NON DISPLAY | 18 | $5,377.32 | A | $3,764.12 |
| PD702i-MD-UL913-U1 | Hytera West | EOL DMR PORTABLE UL913 MAN DOWN UHF 400-470 MHz 32CH 4W NON DISPLAY 2400mAh | 13 | $3,655.47 | B | $365.55 |
| PD702i-MD-UL913-U2 | Hytera West | EOL DMR PORTABLE UL913 MAN DOWN UHF 450-520 MHz 32CH 4W NON DISPLAY 2400mAh | 2 | $454.23 | B | $45.42 |
| PD702i-U1 | Hytera West | DMR PORTABLE UHF 400-470 MHz 32CH 4W NON DISPLAY 2000 mAh | 111 | $17,253.84 | A | $12,077.69 |
| PD702i-U5 | Hytera West | EOL DMR PORTABLE TRUNKING  800 MHz 32CH 2.5W | 26 | $5,435.04 | B | $543.50 |
| PD702i-V1 | Hytera West | DMR PORTABLE VHF 136-174 MHz 32CH 5W NON DISPLAY  STD ANTENNA 147-160MHZ 2000mAh | 22 | $4,594.70 | A | $3,216.29 |
| PD752i-G-MD-U1 | Hytera West | DMR PORTABLE GPS UHF MAN DOWN 400-470 MHz 1024CH 4W DISPLAY LTD KEYPAD | 37 | $7,369.47 | A | $5,158.63 |
| PD752i-G-MD-U2 | Hytera West | EOL DMR PORTABLE GPS UHF MAN DOWN 450-520 MHz 1024CH 4W DISPLAY LTD KEYPAD | 4 | $1,112.28 | A | $778.60 |
| PD752i-G-MD-V1 | Hytera West | DMR PORTABLE GPS VHF MD 136-174MHz ( STD ANTENNA 147-160) 1024CH 4W DISPLAY LTD KEYPAD 2000MAH LI IO | 13 | $3,538.24 | A | $2,476.77 |
| PD752i-G-U1 | Hytera West | EOL DMR PORTABLE GPS UHF 400-470 MHz 1024CH 4W DISPLAY LTD KEYPAD 2000mAh LI-ION | 2 | $537.29 | B | $53.73 |
| PD752i-V1 | Hytera West | DMR PORTABLE UHF 136-174MHz 1024CH 4W DISPLAY LTD KEYPAD | 1 | $186.37 | A | $130.46 |
| PD782i-G-MD-U1 | Hytera West | DMR PORTABLE MAN DOWN GPS UHF 400-470 MHz 1024CH 4W DISP | 67 | $14,325.65 | A | $10,027.96 |
| PD782i-G-MD-U2 | Hytera West | EOL DMR PORTABLE MAN DOWN GPS UHF 450-520 MHz 1024CH 4W DISPLAY | 20 | $4,228.20 | A | $2,959.74 |
| PD782i-G-MD-U5 | Hytera West | EOL DMR PORTABLE GPS MD 806-870 1-3W 896-941 MHz 1-2.5w 1024CH DISP 2000mAh Li-Ion DMR II | 30 | $7,784.71 | B | $778.47 |
| PD782i-G-MD-UL913-U1 | Hytera West | DMR PORTABLE UL913 GPS MAN DOWN UHF 400-470 MHz 1024CH 4W DISPLAY 2400mAh | 65 | $16,895.76 | A | $11,827.03 |
| PD782i-G-MD-V1 | Hytera West | DMR PORTABLE GPS MAN DOWN VHF 136-174 MHz 1024CH 5W DISPLAY  STD ANTENNA 147-160MHZ FCC, AMBE++ | 3 | $695.53 | A | $486.87 |
| PD782i-G-TRK-U5 | Hytera West | DMR PORTABLE TRUNKING GPS MAN DOWN  806-870 1-3W 896-941 MHz 1-2.5w 1024CH DISP 2000mAh Li-Ion | 1 | $297.55 | B | $29.76 |
| PD782i-G-U1 | Hytera West | DMR PORTABLE GPS UHF 400-470 MHz 1024CH 4W DISPLAY 2000 mAh  Li-Ion | 4 | $1,140.32 | B | $114.03 |
| PD782i-MD-UL913-U1 | Hytera West | EOL DMR PORTABLE UL913 MAN DOWN UHF 400-470 MHz 1024CH 4W DISPLAY | 39 | $13,580.97 | B | $1,358.10 |
| PD782i-U2 | Hytera West | EOL DMR PORTABLE UHF 450-520 MHz 1024CH 4W DISPLAY 2000 mAh Li-Ion | 60 | $14,688.00 | A | $10,281.60 |
| PD782i-V1 | Hytera West | DMR PORTABLE VHF 136-174 MHz 1024CH 5W DISPLAY STD ANTENNA 147-160MHZ 2000mAh | 228 | $62,166.48 | A | $43,516.54 |
| PD792i-Ex-U1 | Hytera West | DMR PORTABLE GPS UHF 400-470 MHz 1024CH 1W DISPLAY FM/ATEX APPROVED 1800mAh LI-ION BATTERY, MD | 28 | $15,484.00 | B | $1,548.40 |
| PD792i-Ex-V1 | Hytera West | DMR PORTABLE GPS VHF 136-174 MHz 1024CH 1W DISPLAY FM/ATEX APPROVED 1800mAh LI-ION BATTERY, MD | 2 | $1,115.34 | B | $111.53 |
| PD982i-G-BT-U1 | Hytera West | DMR PORTABLE GPS BT MD UHF 350-527MHz Ant 400-470 MHz 1024CH 4W DISP 2000mAh Li-Ion IP68 MILSTD810 | 2 | $594.73 | A | $416.31 |
| PD982i-G-BT-V1 | Hytera West | DMR PORTABLE GPS BT MD VHF 136-174 MHz 1024CH 4W DISP STD ANTENNA 147-160MHZ 2000mAh Li-Ion IP68 | 9 | $2,439.63 | A | $1,707.74 |
| PD982i-G-BT-V1-RFB | Hytera West | DMR PORTABLE GPS BT MD VHF 136-174 MHz 1024CH 4W DISP STD ANTENNA 147-160MHZ 2000mAh  Li-Ion IP68 | 3 | $936.00 | B | $93.60 |
| PD982i-V1 | Hytera West | PD982 136-174M (RoHS) Hytera CA 1024CH 5/1W 25K/20K/12.5K CTCSS/CDCSS AMBE++(2000mAh Li-Ion battery/ | 32 | $8,973.12 | A | $6,281.18 |
| PDC760 UxB2 | Hytera West | PDC760 UxB2 350-527M Hytera (ROHS) US 1/4W 25K/20K/12.5K GPS AMBE++ (3GPP,7Mode 23Band) QC CDMA ( | 34 | $27,642.94 | A | $19,350.06 |
| RD622i-U1 | Hytera West | EOL DMR REPEATER UHF 400-470 MHz 1W to 25W 100% continuous duty cycle | 1 | $692.27 | A | $484.59 |

| Item No. | Debtor | Description | Quantity | Cumulative Book Value ($) | Inventory Class | Discount Purchase Price |
|---|---|---|---|---|---|---|
| RD622i-U2 | Hytera West | EOL DMR REPEATER UHF 450-520 MHz 1W to 25W 100% continuous duty cycle | 114 | $79,868.40 | A | $55,907.88 |
| RD622i-V1 | Hytera West | EOL DMR REPEATER VHF136-174 MHz 1W to 25W 100% continuous duty cycle | 4 | $2,856.65 | A | $1,999.66 |
| RD962i-U1 | Hytera West | EOL DMR REPEATER UHF 400-470MHZ 1-10 W BACKPACK SPECIAL ORDER | 1 | $1,164.15 | B | $116.42 |
| RD962i-V1 | Hytera West | EOL DMR REPEATER VHF 136-174MHZ 1-10 W BACKPACK SPECIAL ORDER | 3 | $3,143.22 | B | $314.32 |
| RD982i-S-HP100-T-U1 | Hytera West | DMR SUPER REPTR UHF400-470MHz 16CH 100W TRUNK LITE ANALOG AND DMR CONVENTIONAL MODE ONLY | 6 | $19,597.80 | A | $13,718.46 |
| RD982i-S-HP100-U1 | Hytera West | DMR SUPER REPEATER UHF 400-470 MHz 16CH 100W ANALOG AND DMR CONVENTIONAL MODE ONLY | 7 | $12,200.08 | A | $8,540.06 |
| RD982i-S-U1 | Hytera West | DMR SUPER REPEATER UHF 400-470 MHz 50W ANALOG AND DMR CONVENTIONAL MODE ONLY | 12 | $12,207.35 | A | $8,545.15 |
| RD982i-S-U2 | Hytera West | DMR SUPER REPEATER UHF 450-520 MHz 50W ANALOG AND DMR CONVENTIONAL MODE ONLY | 16 | $18,208.96 | A | $12,746.27 |
| RD982i-S-V1 | Hytera West | DMR SUPER REPEATER UHF 136-174 MHz 50W ANALOG AND DMR CONVENTIONAL MODE ONLY | 15 | $14,114.68 | A | $9,880.28 |
| RD982i-U2 | Hytera West | DMR REPEATER UHF 450-520 MHz 50W | 4 | $2,975.40 | A | $2,082.78 |
| RD982i-V1 | Hytera West | DMR REPEATER VHF 136-174 MHz 50W | 60 | $53,478.59 | A | $37,435.01 |
| RD982SU-1-RFB | Hytera West | DMR SUPER REPEATER UHF 400-470 MHz 50W ANALOG AND DMR CONVENTIONAL MODE ONLY 18 MONTH WARRANTY | 1 | $0.00 | B | $0.00 |
| SD-13080100000143 | Hytera West | Smart One for XPT, Subscriber Unit License - Per radio | 3 | $28.71 | B | $2.87 |
| SD-9813011160000 | Hytera West | SmartXPT Dispatch Basic Package (1 Client+1 Server+1 Gateway+1 Dispatch Repeater+2 Dispatching | 1 | $1,170.00 | B | $117.00 |
| SD-9813011160003 | Hytera West | XPT License (Per Site) | 2 | $2,340.00 | B | $234.00 |
| SD-9813011160006 | Hytera West | Subscriber Unit License (Per Radio) for radios | 125 | $1,608.75 | B | $160.88 |
| SO-10130020000002 | Hytera West | DS-6610 VPUC 8-way wireless gateway, DC12V(RoHS) | 5 | $7,020.00 | B | $702.00 |
| SO-10130020000003 | Hytera West | DS-6610 VPUC 8 way(8 mobile radio) wireless gateway unit, DC12V/AC220V (EU/UK/America/Australia/Chi | 5 | $6,892.26 | B | $689.23 |
| SO-13080100000020 | Hytera West | DS-6610 VPUC software package (with 8 Hytera radio DFSI SAPs, including Hytera DMR2 DFSI, DMR3 DFSI, | 10 | $13,912.24 | B | $1,391.22 |
| SO-13080100000021 | Hytera West | SmartOne(XPT) Dispatch Basic package (1 server + 25 terminals + 1 client + 2 channel | 2 | $2,040.05 | B | $204.01 |
| SO-13080100000023 | Hytera West | XPT digital access license (per site) | 5 | $5,275.00 | B | $527.50 |
| SO-13080100000028 | Hytera West | SmartOne E&M signal mobile radio SAP license (RoHS) (REACH) | 5 | $2,708.89 | B | $270.89 |
| SO-13080100000119 | Hytera West | SmartOne DMR Conventional repeater SAP authorized | 5 | $1,599.94 | B | $159.99 |
| SO-13080100000125 | Hytera West | SmartOne Hytera DMR Trunking Lite CSSI SAP license | 1 | $2,338.85 | B | $233.89 |
| SO-13080100000143 | Hytera West | Subscriber Unit License (Per Radio) for radios | 35 | $334.95 | B | $33.50 |
| SO-13080100000028 | Hytera West | Signal SAP -per channel | 1 | $0.00 | B | $0.00 |
| SO-13080100060181 | Hytera West | 5-year Google Map Online License - Per Client | 5 | $870.00 | B | $87.00 |
| SO-13080100060444 | Hytera West | Smart One Dispatch for DMR Trunk Lite, Basic Dispatch Package | 1 | $2,494.00 | B | $249.40 |
| SO-13080100060445 | Hytera West | Smart One for Trunk Lite, Additional Dispatch Client License - Per client | 4 | $6,148.00 | B | $614.80 |
| X1e-V 06 LA SERIES | Hytera West | COVERT 136-174MHZ 5W,GPS,man down, IP67,1800mah li-ion,dual charger,antenna153-164mhz SA06 FW | 10 | $3,078.90 | A | $307.89 |
| X1pi-UL913-U2 | Hytera West | X1p(2) G(MD)/BT(UL913) 450-520M (RoHS) Hytera US 1024CH 4/1W 25K/20 | 2 | $882.54 | A | $617.78 |
| X1pi-UL913-V1 | Hytera West | COVERT PLUS Display 136-174MHZ NA 5W/1W 1024CH 25K 20K 12.5K GPS MD BT IP67 1800mah LI Batt Cha | 1 | $547.30 | A | $383.11 |
| X1pi-V1 (02) | Hytera West | COVERT PLUS Display 136-174MHZ NA 5W/1W 1024CH 25K 20K 12.5K GPS MD BT IP67 1800mah LI Batt Charger | 1 | $320.92 | A | $224.64 |
| MD782i-G-U2 | Hytera West | | 800 | $191,912.00 | A | $134,338.40 |
| MD782G-U5 | Hytera West | | 340 | $88,026.00 | B | $8,802.60 |
| PD982G-U2 | Hytera West | | 257 | $80,651.74 | B | $8,065.17 |
| MD782G-U2 | Hytera West | | 308 | $80,098.18 | B | $8,009.82 |
| RD982S-U2 | Hytera West | | 13 | $15,742.09 | A | $11,019.46 |
| DT-1100800001850 | Hytera West | | 1 | $111.08 | B | $11.11 |
| DT-1100800002140 | Hytera West | | 1 | $567.05 | B | $56.71 |
| DT-1004062110050 | Hytera West | | 5 | $1,135.55 | B | $113.56 |
| DT-1520621102900 | Hytera West | | 5 | $7,669.85 | B | $766.99 |
| PD982i-U2 | Hytera West | | 267 | $74,869.47 | B | $7,486.95 |
| PD982i-U2 | Hytera West | | 320 | $89,731.20 | B | $8,973.12 |
| PD562i-V1 | Hytera West | DRM PORTABLE VHF 136-174 MHz (STD ANT 147-160MHZ) S12CH 5/1W DISPLAY IP54-1500mAh Li-Ion | 100 | $11,832.00 | B | $1,183.20 |
| X1pi-U1 (02) | Hytera West | | 80 | $27,611.20 | B | $2,761.12 |
| X1ei-U1 | Hytera West | EOL COVERT 400-470MHZ 4W, GPS, man down, IP67, 1800mah li-ion battery, dual charger, antenna-SPECIAL ORD | 60 | $17,994.60 | B | $1,799.46 |
| X1ei-U2 | Hytera West | | 98 | $27,730.08 | B | $2,773.01 |

| | |
|---|---|
| Cumulative Book Value | $2,548,959.97 |
| Class A Discount Purchase Price Cumulative Total | $1,102,700.42 |
| Class B Discount Purchase Price Cumulative Total | $96,694.72 |
| Clas A & B Discount Purchase Price Grand | $1,199,395.14 |