Ira D. Kharasch (CA Bar No. 109084)
John W. Lucas (CA Bar No. 271038)
Jason H. Rosell (CA Bar No. 269126)
Victoria A. Newmark (CA Bar No. 183581)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone:  (310) 277-6910
Facsimile:  (310) 201-0760
E-mail:  ikharasch@pszjlaw.com
         jlucas@pszjlaw.com
         jrosell@pszjlaw.com
         vnewmark@pszjlaw.com

*Counsel to Debtors and Debtors in Possession*

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>HCA WEST, INC., *et al.*,<br><br>          Debtors and Debtors-in<br>          Possession.<br><br>Affects:<br><br>☒ All Debtors<br><br>☐ HCA WEST, INC., ONLY<br><br>☐ HAI EAST, INC., ONLY<br><br>☐ HNA, INC., ONLY | Case No. 8:20-bk-11507-ES<br><br>Chapter 11<br><br>Jointly Administered With Case Nos.:<br>8:20-BK-11508-ES and 8:20-BK-11509-ES<br><br>**SECOND AMENDED DISCLOSURE STATEMENT IN SUPPORT OF SECOND AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION**<br><br>Hearing:<br><br>Date:      December 2, 2021<br>Time:      10:30 a.m. (Pacific Time)<br>Place:      ZoomGov |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# Table of Contents

**Page**

I.    INTRODUCTION ...................................................................................................2

II.   EXPLANATION OF CHAPTER 11 ......................................................................3

    A.    Overview of Chapter 11 ...............................................................................3

    B.    Chapter 11 Plan ............................................................................................4

    C.    Confirmation of a Chapter 11 Plan ..............................................................4

III.  OVERVIEW OF THE PLAN .................................................................................5

    A.    Summary of the Terms of the Plan ...............................................................5

        1.    Liquidation Trust ..............................................................................5

        2.    Substantive Consolidation ................................................................5

    B.    Summary of Distributions Under the Plan....................................................6

IV.   QUESTIONS AND ANSWERS REGARDING THIS DISCLOSURE STATEMENT
       AND THE PLAN....................................................................................................7

V.    HISTORY OF THE DEBTORS .............................................................................9

    A.    Corporate History..........................................................................................9

    B.    Prepetition Indebtedness ...............................................................................9

    C.    Events Leading to the Commencement of the Chapter 11 Cases ................10

        1.    Trade Secret Action ........................................................................10

        2.    Antitrust Action ..............................................................................11

VI.   THE DEBTORS' CHAPTER 11 CASES...............................................................11

    A.    Commencement of the Chapter 11 Cases ....................................................11

    B.    Appointment of the Official Committee of Unsecured Creditors.............................12

    C.    Retention of Professionals ...........................................................................12

    D.    Appointment of Independent Director .........................................................12

    E.    Appointment of Chief Restructuring Officer...............................................12

    F.    Asset Sales ...................................................................................................13

        1.    Sale of Business Operations............................................................13

        2.    Sale of Non-Accused Products ......................................................14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3.    Sale of Accused Products..............................................................14

G.    Executory Contracts and Unexpired Leases ......................................14

H.    Schedules of Assets and Liabilities and Establishment of Bar Dates...................15

I.    Estate Wind Down ....................................................................15

VII.    THE CHAPTER 11 PLAN .............................................................16

A.    Classification and Treatment of Claims and Interests .........................16

1.    Administrative Expense Claims...............................................16

2.    Professional Fee Claims........................................................16

3.    Priority Tax Claims..............................................................17

4.    Class 1:  Other Priority Claims ..............................................17

5.    Class 2:  Secured Tax Claims .................................................17

6.    Class 3:  Secured Claims........................................................18

7.    Class 4:  Non-Motorola General Unsecured Claims....................18

8.    Class 5:  Motorola General Unsecured Claims...........................19

9.    Class 6:  Interests ................................................................19

B.    Means for Implementation of the Plan...........................................19

1.    Substantive Consolidation. ....................................................19

2.    The Liquidation Trust ...........................................................20

3.    The Source of Distributions. ..................................................22

4.    Claims Reconciliation Process.................................................23

5.    Preservation of Right to Conduct Investigations. ........................23

6.    Preservation of Privilege and Defenses. ...................................23

7.    Abandonment of Property.......................................................23

C.    Claims Reconciliation Process.....................................................23

1.    Objections to, and Resolution, of Disputed Claims.......................23

2.    Claim Objections. ...............................................................23

3.    Estimation of Certain Claims..................................................24

D.    Distributions Under the Plan......................................................24

1.    Manner of Cash Payments. ...................................................24

2.    Setoff and Recoupment ......................................................24

3.    No De Minimis Distributions ...............................................24

4.    No Distributions With Respect to Disputed Claims. ..................25

5.    No Interim Distributions. ....................................................25

6.    Preservation of Causes of Action ..........................................25

E.    Exculpation and Injunction ..........................................................26

1.    Term of Bankruptcy Injunction or Stay. ................................26

2.    Exculpation for Estate Fiduciaries. ......................................26

3.    Injunction. ......................................................................26

4.    Releases by the Debtors. ....................................................27

5.    Satisfaction and Release of Insider Claims Against the Debtors ...............28

6.    Reservation of Rights of Motorola and the Insiders. .................28

7.    Preservation of Insurance .....................................................28

F.    Executory Contracts and Unexpired Leases ..................................29

1.    Rejection. .........................................................................29

2.    Bar Date for Rejection Damage Claims ..................................29

G.    Retention of Jurisdiction ..............................................................29

H.    Miscellaneous Plan Provisions .....................................................29

1.    Conditions Precedent to the Effective Date. ...........................29

2.    Plan Supplement. ..............................................................29

3.    Dissolution of the Board of Directors. ..................................29

4.    Dissolution of Committee. ..................................................30

VIII.    CONFIRMATION AND CONSUMMATION PROCEDURES ......................................30

A.    Overview ....................................................................................30

B.    Confirmation of the Plan ..............................................................31

1.    Elements of Section 1129 of the Bankruptcy Code ..................31

2.    Acceptance .......................................................................33

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

3. Best Interests of Creditors Test.................................................................33

4. Feasibility.......................................................................................34

C. Effect of Confirmation.....................................................................34

IX. CONCLUSION...................................................................................34

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## NOTICE TO HOLDERS OF CLAIMS

The purpose of this Disclosure Statement is to enable you, as a creditor whose Claim is impaired under the Plan, to make an informed decision in exercising your right to accept or reject the Plan.

**THIS DISCLOSURE STATEMENT CONTAINS IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO VOTE TO ACCEPT OR REJECT THE PLAN. PLEASE READ THIS DOCUMENT WITH CARE.**

**PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF. IN THE EVENT OF ANY CONFLICT BETWEEN THE DESCRIPTIONS SET FORTH IN THIS DISCLOSURE STATEMENT AND THE TERMS OF THE PLAN OR ANY OTHER APPLICABLE DOCUMENT, THE TERMS OF THE PLAN OR ANY SUCH APPLICABLE DOCUMENT SHALL GOVERN.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE, AND RULE 3016(b) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE (THE "BANKRUPTCY RULES") AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAW OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT HAS BEEN NEITHER APPROVED NOR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION (THE "SEC"), NOR HAS THE SEC PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING, OR TRANSFERRING SECURITIES OR CLAIMS OF THE DEBTORS SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.**

**AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER ACTIONS OR THREATENED ACTIONS, THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTORS AND DEBTORS IN POSSESSION IN THESE CHAPTER 11 CASES.**

Each Holder of a Claim entitled to vote to accept or reject the Plan should read this Disclosure Statement and the Plan in their entirety before voting. No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and section 1125 of the Bankruptcy Code. Except for the Debtors and certain of their professionals, no person has been authorized to use or promulgate any information concerning the Debtors, their business, or the Plan other than the information contained in this Disclosure Statement and if given or made, such information may not be relied upon as having been authorized by the Debtors. You should not rely on any information relating to the Debtors, their business, or the Plan other than that contained in this Disclosure Statement and the Exhibits hereto.

After carefully reviewing this Disclosure Statement, including the attached Exhibits, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the

enclosed ballot and return the same to the address set forth on the ballot, in the enclosed, postage prepaid, return envelope so that it is actually received by the Balloting Agent no later than the Voting Deadline. All votes to accept or reject the Plan must be cast using the appropriate ballot. Votes which are cast in any other manner will not be counted. **All ballots must be actually received by Omni Agent Solutions (the "Voting Agent") no later than December 28, 2021 at 5:00 p.m. (Pacific Time).** In the event you have questions regarding the voting procedures, please contact Nancy Lockwood at nlockwood@pszjlaw.com.

**DO NOT RETURN ANY OTHER DOCUMENTS WITH YOUR BALLOT.**

You will be bound by the Plan if it is confirmed by the Bankruptcy Court, even if you do not vote to accept the Plan, or if you are the Holder of an unimpaired Claim.

| THE PLAN PROPONENTS URGE ALL HOLDERS OF IMPAIRED CLAIMS TO ACCEPT THE PLAN |
|---|

## I.

## INTRODUCTION

The above-captioned debtors and debtors in possession (collectively, the "Debtors" or the "Company")[1] in the above-captioned cases (the "Chapter 11 Cases") pending in the United States Bankruptcy Court for the Central District of California, Santa Ana (the "Bankruptcy Court") hereby submit this disclosure statement (the "Disclosure Statement"), pursuant to section 1125 of Title 11 of the United States Code (the "Bankruptcy Code") with respect to the *Second Amended Joint Chapter 11 Plan of Liquidation* (the "Plan"). This Disclosure Statement is to be used in connection with the solicitation of votes on the Plan by the Debtors. A copy of the Plan is attached hereto as Exhibit A.

THE DEBTORS WILL SEEK APPROVAL OF THIS DISCLOSURE STATEMENT AT A HEARING SCHEDULED FOR **DECEMBER 2, 2021 AT 10:30 A.M. (PACIFIC TIME)** (THE "HEARING"). ONLY HOLDERS OF ALLOWED CLAIMS IN CLASS 4 (NON-MOTOROLA GENERAL UNSECURED CLAIMS) AND CLASS 5 (MOTOROLA GENERAL UNSECURED CLAIMS) ARE ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN. ACCORDINGLY, THE DEBTORS ARE ONLY SOLICITING ACCEPTANCES OF THE PLAN FROM HOLDERS OF ALLOWED CLAIMS IN CLASS 4 (NON-MOTOROLA GENERAL UNSECURED CLAIMS) AND CLASS 5 (MOTOROLA GENERAL UNSECURED CLAIMS).

THE DEBTORS BELIEVE THAT THE PLAN IS IN THE BEST INTERESTS OF, AND PROVIDES THE HIGHEST AND MOST EXPEDITIOUS RECOVERIES TO, HOLDERS OF ALL CLAIMS AGAINST THE DEBTORS. ALL HOLDERS OF CLAIMS ENTITLED TO VOTE TO ACCEPT OR REJECT THE PLAN ARE URGED TO VOTE IN FAVOR OF THE PLAN.

THE SOLICITATION PACKAGE ACCOMPANYING EACH OF THE BALLOTS CONTAINS APPLICABLE VOTING INSTRUCTIONS. **TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED, EXECUTED, AND ACTUALLY RECEIVED BY THE**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[1]    A capitalized term not defined herein shall have the meaning ascribed to it in Appendix 2 of the Plan.

**BALLOTING AGENT BY 5:00 P.M. (PACIFIC TIME), ON DECEMBER 28, 2021 (THE "VOTING DEADLINE").**

All capitalized terms used in the Disclosure Statement and not defined herein shall have the meanings ascribed thereto in the Plan. Unless otherwise stated, all references herein to "Schedules" and "Exhibits" are references to schedules and exhibits to this Disclosure Statement.

The Debtors propose the Plan for the resolution and satisfaction of all Claims against and Interests in the Debtors. The Plan contemplates the substantive consolidation of the Estates into a single Estate for all purposes associated with confirmation and consummation. The Plan also provides for the establishment of a Liquidation Trust on the Effective Date for the primary purpose of administering and liquidating the Liquidation Trust Assets and for the secondary purposes of, *inter alia*, (a) collecting accounts receivable, (b) resolving all Administrative Expense Claims, Professional Fee Claims, and Claims, and (c) making all Distributions provided for under the terms of the Plan. The Liquidation Trust shall be under the direction and control of the Liquidation Trustee, as trustee of the Liquidation Trust. On the Effective Date, all of the Estates' Assets, which are principally Cash and Causes of Action, shall vest in the Liquidation Trust. The Plan contemplates monetization of these Assets and the distribution of the net proceeds thereof to Holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims in order of their payment priority as prescribed by the Plan in satisfaction of the Debtors' obligations hereunder. **The Debtors believe that the Plan represents a fair and equitable allocation of the Debtors' assets among creditors.**

Notably, the Plan effectuates a global settlement of the claims by and between the Debtors, certain Insiders of the Debtors, and Motorola – which filed the largest unsecured claim in the Chapter 11 Cases. Under the proposed settlement, as effectuated by the Plan, (a) Holders of Class 4 Claims (Non-Motorola General Unsecured Claims) will receive their *pro rata* share of $2 million (the "Non-Motorola GUC Fund"), which will be funded, in part, by a $200,000 contribution from the Insiders, (b) Holders of Class 5 Claims (Motorola General Unsecured Claims) will receive their *pro rata* share of the remaining assets of the Debtors, after payment of Administrative Claims and the Non-Motorola GUC Fund, (c) the Insiders will waive and release any claims against the Debtors, and (d) the Debtors will waive and release any and all claims against Motorola and the Insiders relating to the Debtors.

**As a result of the global settlement embodied in the Plan, the Debtors estimate that Holders of Class 4 Claims (Non-Motorola General Unsecured Claims) will recovery 47% to 73% under the Plan, which is dramatically better than the approximate 2.1% that may be recovered in chapter 7.**

## II.

## EXPLANATION OF CHAPTER 11

### A.    Overview of Chapter 11

Chapter 11 is the principal chapter of the Bankruptcy Code pursuant to which a debtor in possession may reorganize its business or liquidate in an orderly fashion for the benefit of its creditors, stockholders, and other parties in interest.

The commencement of a chapter 11 case creates an estate comprising all the legal and equitable interests of the debtor in possession as of the date the petition is filed. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession" unless the bankruptcy court orders the appointment of a trustee. In these Chapter 11 Cases, the Debtors remain as debtors in possession. Additionally, pursuant to section 1102(a) of the Bankruptcy Code, the United States Trustee appointed an official committee of unsecured creditors (the "Committee").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

The filing of a petition under the Bankruptcy Code triggers the automatic stay provisions of the Bankruptcy Code. Section 362 of the Bankruptcy Code provides, among other things, for an automatic stay of all attempts by creditors or other third parties to collect on prepetition claims against a debtor or otherwise interfere with its property or business. Exempted from the automatic stay are governmental authorities seeking to exercise regulatory or policing powers. Except as otherwise ordered by a bankruptcy court, the automatic stay remains in full force and effect until the effective date of a confirmed chapter 11 plan.

**B.    Chapter 11 Plan**

The formulation of a chapter 11 plan is the principal purpose of a chapter 11 case. The plan sets forth the means for satisfying the holders of claims against and interests in a debtor's estate. A chapter 11 plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets. In either event, upon confirmation of the plan, it becomes binding on the debtor and all of its creditors and equity holders, and the prior obligations owed by the debtor to such parties are compromised and exchanged for the obligations specified in the plan.

In general, after a chapter 11 plan has been filed, the holders of impaired claims against and equity interests in a debtor are permitted to vote to accept or reject the plan. Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires the Debtors to prepare and file a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan. **This Disclosure Statement is presented to Holders of Claims against the Debtors to satisfy the requirements of section 1125 of the Bankruptcy Code in connection with the Debtors' solicitation of votes on the Plan.**

**C.    Confirmation of a Chapter 11 Plan**

If all applicable classes of claims and equity interests accept a chapter 11 plan, the bankruptcy court may confirm the plan if the bankruptcy court independently determines that the requirements of section 1129(a) of the Bankruptcy Code have been satisfied. **The Debtors believe that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code.**

Chapter 11 of the Bankruptcy Code does not require that each holder of a claim or interest in a particular class vote in favor of a chapter 11 plan for the bankruptcy court to determine that the class has accepted the plan. Rather, a class of claims will be deemed to have accepted the plan if the court determines that the plan has been accepted by more than a majority in number and at least two-thirds in amount of those claims actually voting in such class. **Only the Holders of Allowed Claims who are entitled to vote, and actually vote, will be counted as either accepting or rejecting the Plan.**

In addition, classes of claims or equity interests that are not "impaired" under a chapter 11 plan are conclusively presumed to have accepted the plan and thus are not entitled to vote. Furthermore, classes that are to receive no distribution under the plan are conclusively deemed to have rejected the plan. Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or equity interests in an impaired class. **Class 4 (Non-Motorola General Unsecured Claims) and Class 5 (Motorola General Unsecured Claims) are impaired under the Plan and entitled to vote on the Plan. In addition, Class 6 (Interests) is deemed impaired under the Plan and is deemed to reject the Plan.**

In general, a bankruptcy court may confirm a chapter 11 plan even though fewer than all the classes of impaired claims against and equity interests in a debtor accept such plan. For a chapter 11 plan to be confirmed, despite its rejection by a class of impaired claims or equity interests, the plan must be accepted by at least one class of impaired claims (determined without counting the vote of insiders) and the proponent(s) of the plan must show, among other things, that the plan does not

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

"discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or equity interests that has not accepted the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a rejecting class of claims or equity interests if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, in an amount equal to the allowed amount of such claim or such other treatment as accepted by the holder of such claim; and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive on account of such junior claim or equity interest any property at all unless the senior class is paid in full.

A plan does not "discriminate unfairly" against a rejecting class of claims or equity interests if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims or equity interests, and (b) no senior class of claims or equity interests is to receive more than 100% of the amount of the claims or equity interests in such class. **The Debtors believe that the Plan will satisfy the foregoing requirements as to any rejecting class of Claims or Interests, and can therefore be confirmed despite any such rejection by any Class.**

**III.**

**OVERVIEW OF THE PLAN**

The Plan contemplates the substantive consolidation of the Estates into a single Estate for all purposes associated with confirmation and consummation.

A.    **Summary of the Terms of the Plan**

1.    **Liquidation Trust**

The Plan provides for the establishment of a Liquidation Trust on the Effective Date for the primary purpose of administering and liquidating the Liquidation Trust Assets and for the secondary purposes of, *inter alia*, (a) collecting accounts receivable, (b) resolving all Administrative Expense Claims, Professional Fee Claims, and Claims, and (c) making all Distributions provided for under the terms of the Plan. The Liquidation Trust shall be under the direction and control of the Liquidation Trustee, as trustee of the Liquidation Trust. On the Effective Date, all of the Estates' Assets, which are principally Cash and the Causes of Action, shall vest in the Liquidation Trust. The Plan contemplates monetization of these Assets and the distribution of the net proceeds thereof to Holders of Allowed Administrative Expense Claims, Allowed Professional Fee Claims, and Allowed Claims in order of their payment priority as prescribed by the Plan in satisfaction of the Debtors' obligations hereunder.

2.    **Substantive Consolidation**

The Plan provides for the substantive consolidation of the Estates into a single Estate for all purposes associated with confirmation and consummation. As a result of the substantive consolidation of the Estates, each Class of Claims and Interests will be treated as against a single consolidated Estate without regard to the separate identification of the Debtors, and all Claims filed against more than one Debtor either on account of joint and several liability or on account of the same debt shall be deemed a single Claim against the consolidated Estates; *provided, however*, in the event the Bankruptcy Court does not approve the substantive consolidation of the Estates, each Class of Claims and Interests will be subdivided by Estate and each Estate's assets will be distributed to the holders of Allowed Claims in accordance with the absolute priority rule as set forth in the Plan. The Solicitation Procedures Order shall provide that the Debtors will tabulate votes on both a consolidated and unconsolidated basis by Estate for all purposes associated with confirmation and consummation.

5

**B.**    **Summary of Distributions Under the Plan**

The following is a summary of the proposed distributions under the Plan. It is qualified in its entirety by reference to the full text of the Plan, which is attached to this Disclosure Statement as Exhibit A.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, and Priority Tax Claims, as described in Section 3 of the Plan, have not been classified and thus are excluded from the Classes set forth in the Plan. The following table summarizes the classification of the Classes of Claims and Interests under the Plan and whether you are entitled to vote on the Plan.

| CLASS | DESCRIPTION | IMPAIRED / UNIMPAIRED | ENTITLED TO VOTE |
|-------|-------------|----------------------|------------------|
| **CLASS 1** | Other Priority Claims | Unimpaired | No - Deemed to Accept |
| **CLASS 2** | Secured Tax Claim | Unimpaired | No – Deemed to Accept |
| **CLASS 3** | Secured Claims | Unimpaired | No - Deemed to Accept |
| **CLASS 4** | Non-Motorola General Unsecured Claims | Impaired | Yes |
| **CLASS 5** | Motorola General Unsecured Claims | Impaired | Yes |
| **CLASS 6** | Interests | Impaired | No - Deemed to Reject |

Except as required by applicable bankruptcy law, postpetition interest shall not accrue or be payable on account of any Claim.

The treatment in the Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of an Allowed Claim or an Allowed Interest may have in or against the Debtors or their property. This treatment supersedes and replaces any agreements or rights those Holders have in or against the Debtors or their property. All Distributions under the Plan will be tendered to the entity holding the Allowed Claim.

**EXCEPT AS SPECIFICALLY SET FORTH IN THE PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY ADMINISTRATIVE EXPENSE CLAIM, PROFESSIONAL FEE CLAIM, OR CLAIM THAT IS NOT ALLOWED.**

As discussed in the Liquidation Analysis attached hereto as Exhibit B, the Debtors estimate that recoveries for Holders of Allowed Non-Motorola General Unsecured Claims will be greater under the Plan than in a liquidation under chapter 7 of the Bankruptcy Code. In addition, the Debtors believe that distributions under chapter 7 of the Bankruptcy Code would likely be delayed due to the time it will take a chapter 7 trustee to assess the Company's assets, review and analyze claims, and evaluate

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and litigate claims against third parties. Holders of Allowed Claims entitled to vote to accept or reject the Plan should review the Liquidation Analysis (including all footnotes thereto) in assessing whether to vote to accept or reject the Plan.

**IV.**

**QUESTIONS AND ANSWERS REGARDING THIS
DISCLOSURE STATEMENT AND THE PLAN**

**Why are the Debtors sending me this Disclosure Statement?**

The Debtors are seeking to obtain Bankruptcy Court approval of the Plan. Prior to soliciting acceptances of the Plan, section 1125 of the Bankruptcy Code requires the preparation and approval of a Disclosure Statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance of the Plan. This Disclosure Statement is being submitted in accordance with such requirements.

**What happens to my recovery if the Plan is not confirmed, or does not go effective?**

In the event that the Plan is not confirmed, the Debtors believe it is unlikely that the Debtors will be able to achieve the same recoveries for creditors that are available under the Plan. If the Plan is not confirmed in a timely manner, it is unclear whether the global settlement could be implemented and what, if anything, Holders of Claims would ultimately receive in respect of their Claims against the Debtors. It is possible that any alternative may provide Holders of Claims with less than they would have received pursuant to the Plan. Moreover, non-confirmation of the Plan will likely result in either the conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or dismissal of the Chapter 11 Cases in their entirety.

**If the Plan provides that I get a distribution, do I get it upon confirmation or when the Plan goes effective, and what do you mean when you refer to "confirmation," "Effective Date," and "consummation?"**

"Confirmation" of the Plan refers to the approval of the Plan by the Bankruptcy Court. Confirmation of the Plan does not guarantee that you will receive the distribution contemplated under the Plan. After confirmation of the Plan by the Bankruptcy Court, there are conditions that need to be satisfied or waived so that the Plan can be consummated and become effective. References to the "Effective Date" mean the date that all conditions to the Plan have been satisfied or waived and the Plan has been fully consummated.

As set forth in the Plan, the Liquidation Trustee shall not make any interim Distributions absent further order of the Bankruptcy Court. Accordingly, it is contemplated that the Liquidation Trustee will monetize the Causes of Action after the Effective Date and make a single and final Distribution to general unsecured creditors.

**Where is the cash required to fund the Plan coming from?**

On the Effective Date, all of the Assets of the substantively consolidated Estate, including all Causes of Action, as well as the rights and powers of the Debtors, the consolidated Estate, and the Committee shall automatically vest in the Liquidation Trust. Specifically, and without limitation, the Liquidation Trust, through the Liquidation Trustee, shall have the right to receive all accounts receivable and the proceeds related thereto.

**How do I vote for or against the Plan?**

This Disclosure Statement, accompanied by a ballot or ballots to be used for voting on the Plan, is being distributed to the holders of Claims entitled to vote on the Plan. If you are a Holder of a Claim in Class 4 (Non-Motorola General Unsecured Claims) or Class 5 (Motorola General Unsecured Claims) (the "Voting Classes"), you may vote for or against the Plan by completing the ballot and returning it in the envelope provided.

**What is the deadline to vote on the Plan?**

All ballots must be actually sent to the Debtors so as to be received on or before **5:00 p.m. (Pacific Time) on December 28, 2021 at 5:00 p.m. (Pacific Time) (the "Voting Deadline")**.

**Why is the Bankruptcy Court holding a confirmation hearing?**

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court to hold a hearing on confirmation of the Plan. Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to confirmation of the Plan.

**When is the confirmation hearing scheduled to occur?**

The Bankruptcy Court has scheduled the confirmation hearing for **[●], 2021 at [●] a.m. (Pacific Time)** before the Honorable Judge Erithe A. Smith, United States Bankruptcy Judge, in the United States Bankruptcy Court, Central District of California, Ronald Reagan Federal Building and Courthouse, 411 West Fourth Street, Suite 5040, Santa Ana, CA 92701. The confirmation hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the confirmation hearing or any adjournment thereof. Objections to confirmation of the Plan must be filed and served on the Debtors and certain other parties, by no later than **[●], 2021 at 5:00 p.m. (Pacific Time)** in accordance with the notice of the confirmation hearing that accompanies this Disclosure Statement. Unless objections to confirmation of the Plan are timely served and filed in compliance with the Solicitation Procedures Order, they might not be considered by the Bankruptcy Court.

**What is the purpose of the confirmation hearing?**

The consummation of a chapter 11 plan is the principal objective of a chapter 11 case. The confirmation of a chapter 11 plan by the Bankruptcy Court binds the debtor, any person acquiring property under the chapter 11 plan, any creditor or equity interest holder of a debtor and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code.

**What role does the Bankruptcy Court play after the confirmation hearing?**

After the Plan is confirmed, the Bankruptcy Court will still have jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan including, but not limited to all matters described in section 12 of the Plan.

**Do the Debtors recommend voting in favor of the Plan?**

**Yes**. In the opinion of the Debtors, the Plan is preferable to liquidation under chapter 7 of the Bankruptcy Code, as described in this Disclosure Statement and the Liquidation Analysis attached as Exhibit B hereto, and any other reasonably available alternative because the Debtors believe the Plan provides for a larger distribution to the Debtors' general unsecured creditors than would otherwise result from a liquidation under chapter 7 of the Bankruptcy Code or any other reasonably available

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

alternative.  **Accordingly, the Debtors recommend that Holders of Claims in Class 4 (Non-Motorola General Unsecured Claims) and Class 5 (Motorola General Unsecured Claims) support confirmation of the Plan and vote to accept the Plan**.

V.

## HISTORY OF THE DEBTORS

### A.    Corporate History

The Debtors were one of the top providers of mobile two-way radios in the United States.  The Debtors supplied their products to over 400 independent dealers nationwide, who in turn offer and service professional communications systems that integrate the Company's products.  The Company's radios were used for security and other communications applications in various industries in the public and private sectors of local communities, including hospitals, local law enforcement, school districts, universities, and financial companies.

The Company historically maintained operations in Miami, Florida and Los Angeles, California and employed approximately 40 people in sales, technical support, finance, logistics, human resources, legal, and marketing.  Hytera East also historically maintained local business operations in the Dominican Republic.

For the year ended December 31, 2019, Hytera East and Hytera West had revenues of $27.2 million and $15.7 million, respectively.

Hytera East and Hytera West are both 100% wholly owned subsidiaries of holding company Debtor HYT North America which is, in turn, wholly owned by non-debtor Hytera Communications Corporation, Ltd. (002583.SZ) ("Hytera China" and, together with the Debtors, "Hytera"), a public company listed on the Shenzhen Stock Exchange.

### B.    Prepetition Indebtedness

As of the Petition Date, the Debtors' prepetition indebtedness consisted primarily of the following:

    i.    Intercompany Obligations.  Hytera West and Hytera East historically engaged in intercompany transactions from time to time for inventory and services.  As of the Petition Date, Hytera West owed an intercompany payable to Hytera East on account of these transactions in the approximate amount of $6 million.

    ii.    Accounts Payable. As of the Petition Date, the Debtors owed approximately $1 million (Hytera East) and $100,000 (Hytera West) to utilities, employees, taxing authorities, third party vendors, insurance premiums, and other service providers.

    iii.    Damages Awarded in Motorola Solutions, Inc. v. Hytera Communications Corporation, Ltd.: As described in more detail below, prior to the Petition Date, a jury rendered a verdict against the Debtors and Hytera China in Case No. 1:17-CV-01973 (the "Trade Secret Action") in the U.S. District Court for the Northern District of Illinois (the "District Court") and awarded damages totaling $345.8 million in compensatory damages and $418.8 million in punitive damages, for a total of $764.6

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

million.  On March 5, 2020, the District Court entered final judgment (the "Motorola Judgment").

**C.    Events Leading to the Commencement of the Chapter 11 Cases**

    **1.    Trade Secret Action**

In the three years leading up to the commencement of these Chapter 11 Cases, the Debtors were embroiled in costly and contentious legal disputes with competing electronics data communications and telecommunications equipment manufacturers Motorola Solutions, Inc. and Motorola Solutions Malaysia Sdn. Bhd. (together, "Motorola").  Among other allegations, Motorola sued for trade secret misappropriation and copyright infringement of its digital mobile radio ("DMR") technologies, asserting substantial damages claims against Hytera China, Hytera East, and Hytera West.  Specifically, Motorola contended that, in 2008, Hytera hired three Motorola engineers and that those engineers downloaded and misappropriated technical, marketing, sales, and legal documents containing Motorola trade secrets and copyrighted materials related to Motorola's DMR products.  Motorola alleged that Hytera then relied on those alleged trade secrets and copyrighted materials to launch its DMR products in 2010 and continued to rely on them to develop and supply DMR products to the present (collectively, the "Accused Products").

On March 14, 2017, Motorola filed the Trade Secret Action in the District Court.  From November 6, 2019 to February 13, 2020, a 39-day jury trial was held on liability and damages for each of Motorola's claims asserted in the Trade Secret Action.  On February 14, 2020, the jury found Hytera liable for trade secret misappropriation and copyright infringement, and awarded monetary damages in the amounts that Motorola requested:  $345,761,156 in compensatory damages and $418,800,000 in exemplary damages.  The District Court entered final judgment on March 5, 2020.

On February 18, 2020, Motorola filed an application for a temporary restraining order enjoining Hytera from, among other things, selling Accused Products worldwide, which remained pending as of the Petition Date.  However, subsequent to the Petition Date, the District Court denied Motorola's application, but stated that "Hytera shall be ordered to pay a reasonable royalty to Motorola for the future use of Motorola's trade secrets."

As of today's date, there are several post-trial matters still pending in the District Court, including, (i) the amount of the pre- and post-judgment interest; (ii) the amount of the ongoing royalty fees owed to Motorola for post-judgment use of the technology at issue; (iii) the amount of Motorola's attorneys' fees; and (iv) the amount of Motorola's bill of costs.

All other post-trial motions with respect to the Trade Secret Action have been denied.  Hytera has not yet filed an appeal from the Motorola Judgment.

The Trade Secret Action is only one of several pending actions between Hytera and Motorola.  The following actions between the parties remain pending:

    i.    On March 14, 2017, Motorola filed a patent infringement action against Hytera in the District Court.  *Motorola Solutions, Inc. v. Hytera Communications Corporation Ltd.*, No. 1:17-cv-01972 (N.D. Ill. Mar. 14, 2017).

    ii.    On March 28, 2017, Motorola filed a patent infringement action against Hytera in the U.S. International Trade Commission.  *In re Two-Way Radio Equipment and Systems, Related Software, and Components Thereof*, No. 337-TA-1053 (ITC Mar. 28, 2017).

    iii.    On October 26, 2017, Hytera filed three petitions for *inter partes* review of Motorola's patents at the U.S. Patent Trial and Appeal Board.  *Hytera Communications*

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

*Corporation Ltd. Motorola Solutions, Inc.*, IPR2017-02179, IPR2017-02183, IPR2018-00128 (PTAB, Oct. 26, 2017).

iv.    On November 9, 2017, Hytera filed a petition for *inter partes* review of Motorola's patent at the U.S. Patent Trial and Appeal Board. *Hytera Communications Corporation Ltd. Motorola Solutions, Inc.*, IPR2018-00176 (PTAB, Nov. 9, 2017).

v.    On December 4, 2017, Hytera filed an antitrust action against Motorola in U.S. District Court in the District of New Jersey under the Sherman Antitrust Act and the Clayton Act (the "Antitrust Action").

vi.    On August 28, 2018, Motorola filed a petition for *inter partes* review of Hytera's patent at the U.S. Patent Trial and Appeal Board. *Motorola Solutions, Inc. v. Hytera Communications Corporation Ltd.*, IPR2018-01621 (PTAB, Aug, 28, 2018).

vii.    On July 20, 2018, Motorola filed a petition for *inter partes* review of Hytera's patent at the U.S. Patent Trial and Appeal Board. *Motorola Solutions, Inc. v. Hytera Communications Corporation Ltd.*, IPR2018-01433 (PTAB, July 20, 2018).

For the avoidance of doubt, the claims of Hytera China and Motorola in the pending actions above are unaffected by the Plan and will continue between those parties.

### 2.    Antitrust Action

Hytera, along with Power Trunk, Inc. (together, the "Antitrust Plaintiffs") allege that Motorola has engaged in anticompetitive conduct in violation of federal and state antitrust and unfair competition laws and, on December 4, 2017, filed the Antitrust Action.    In their complaint, the Antitrust Plaintiffs allege that Motorola's anticompetitive conduct has had the effect of eliminating competition for handheld land-mobile radios ("LMR"), has resulted in less choice and higher costs for customers, and has harmed Hytera in the form of lost sales and profits.

From 2017-2019, Motorola accounted for approximately 75-80% of the U.S. market in both the Mission-Critical LMR Solutions and Business-Critical LMR Solutions product markets.    The Antitrust Plaintiffs further allege that but for Motorola's anticompetitive conduct, Hytera would have expanded their market share to 25-50% in Business-Critical LMR Solutions and Mission-Critical LMR Solutions, and would have increased their sales by approximately 2.5x to 5x from 2017-2019.

As of the date hereof, the Antitrust Action is pending. **Pursuant to the settlement embodied in the Plan, the Debtors' claims against Motorola related to the Antitrust Action will be released upon the Effective Date.** For the avoidance of doubt, Hytera China's and PowerTrunk's claims against Motorola related to the Antitrust Action are unaffected by the Plan and shall continue between those parties.

**VI.**

**THE DEBTORS' CHAPTER 11 CASES**

### A.    Commencement of the Chapter 11 Cases

On May 26, 2020 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases were commenced in the Bankruptcy Court and were assigned to the Honorable Erithe A. Smith, United States Bankruptcy Judge.  On May

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

27, 2020, the Bankruptcy Court entered an order directing the joint administration of the Chapter 11 Cases.

**B.**    **Appointment of the Official Committee of Unsecured Creditors**

On June 15, 2020, the United States Trustee for the Central District of California, pursuant to section 1102(a)(1) of the Bankruptcy Code, appointed the Committee.

Since its appointment, the Committee has been actively involved with the Debtors in overseeing the administration of the Chapter 11 Cases as a fiduciary for all unsecured creditors of all Debtors in these Chapter 11 Cases, and has consulted with the Debtors on various matters relevant to the Chapter 11 Cases, including the sale of substantially all of the Debtors' assets to Hytera US, Inc. (the "Purchaser").

**C.**    **Retention of Professionals**

During the Chapter 11 Cases, the Bankruptcy Court approved the retention of: (i) Pachulski Stang Ziehl & Jones LLP as general bankruptcy counsel; (ii) Steptoe & Johnson LLP as corporate and special counsel to the Debtors; (iii) Imperial Capital, LLC as investment banker and financial advisor to the Debtors; (iv) Omni Agent Solutions as case administration consultant for the Debtors; and (v) Levene, Neale, Bender, Yoo & Brill L.L.P. as bankruptcy counsel to the Committee.

**D.**    **Appointment of Independent Director**

On May 14, 2020, the Debtors appointed Craig A. Barbarosh as Independent Director for Hytera East and Hytera West. Under the resolutions appointing Mr. Barbarosh, he was granted sole responsibility for approving the sale of substantially all of the Debtors' assets.

On July 13, 2020, the Bankruptcy Court entered the *Final Order Authorizing Hytera America Incorporated and Hytera Communications America (West), Inc. to Assume the Second Amended and Restated Independent Director Service Agreement* [Docket No. 103].

Mr. Barbarosh, who sits on numerous corporate boards and has been an independent director in other bankruptcy cases, had no previous relationship with the Debtors and no relationship with Hytera China or any of its other affiliates.

**E.**    **Appointment of Chief Restructuring Officer**

On January 13, 2021, the Debtors filed the *Debtors' Application for Entry of Order Pursuant to Section 363 of the Bankruptcy Code Approving the Engagement Contract of David Stapleton as Chief Restructuring Officer of the Debtors and Stapleton Group to Assist the CRO and Related Relief* [Docket No. 395] (the "Stapleton Retention Application"), and on February 2, 2021, the Bankruptcy Court entered an order approving the Stapleton Retention Application *nunc pro tunc* to January 12, 2021 [Docket No. 429].

By the Stapleton Retention Application, the Bankruptcy Court authorized the Debtors to engage Chief Restructuring Officer, David Stapleton. As a result of the sale of substantially all of the Debtors' assets described below, the Debtors' former employees were hired by the buyer. The wind down of the Debtors' remaining affairs and the resolution of these Chapter 11 Cases would have been difficult without employees. To fill that gap, Mr. Stapleton and his team are managing the wind down of the Debtors' estates at the direction of the board of directors and with advice from counsel.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**F.** **Asset Sales**

**1.** **Sale of Business Operations**

On July 15, 2020, the Debtors filed their *Motion of Requesting (A) the Scheduling of an Auction and Sale Hearing in Connection With the Sale of the Specified Assets of the Debtors, (B) Approval of Bidding Procedures for Such Assets, (C) Approval of Purchase Agreement With Stalking Horse Bidder, (D) Approval of the Form and Scope of Notice of Auction and Sale Hearing, € Approval of Procedures for the Assumption, Assignment and Sale of Contracts and leases to the Purchaser, and (F) Approval of Sale of the Debtors' Assets to the Purchaser* [Docket No. 118] (the "Business Sale Motion").

Pursuant to the Business Sale Motion, the Debtors sought to sell their (a) distribution network/business, (b) non-Accused Products, and (c) other assets relating to the operation of the Debtors' business.

On July 29, 2020, the Bankruptcy Court entered its *Order (1) Approving Bidding Procedures, (2) Approving Assumption, Assignment, and Sale Procedures and Related Notices, (3) Scheduling the Sale Hearing, and (4) Granting Related Relief* [Docket No. 149] (the "Bidding Procedures Order"). Pursuant to the Bidding Procedures Order, the Bankruptcy Court designated that certain *Asset Purchase Agreement* (the "Initial APA"), dated as of July 15, 2020, by and among the Debtors and Purchaser, as a "Qualified Bid" for purposes of the Bidding Procedures.

On July 29, 2020, the Sellers and Hytera US entered into that certain *First Amendment to the Asset Purchase Agreement* (the "First Amendment"). Pursuant to the First Amendment, the Purchaser agreed to increase the purchase price by approximately $1.6 million to compensate the Sellers for certain pre-Closing Date purchases related to additional assigned contracts.

On August 13, 2020, the Debtors and Purchaser entered into that certain *Second Amendment to the Asset Purchase Agreement* (the "Second Amendment"). Pursuant to the Second Amendment, the Purchaser agreed to take assignment of certain of certain additional supply contracts.

On August 27, 2020, the Bankruptcy Court held a contested hearing on the Sale Motion. At the conclusion of oral argument, the Bankruptcy Court continued the hearing on the Business Sale Motion to December 17, 2020 to provide sufficient time to allow the District Court to rule on Motorola's pending application for an injunction with respect to the sale of Accused Products in the Trade Secret Action (discussed above).

Following the hearing, out of an abundance of caution, the Debtors reviewed the Initial APA and removed from the schedules all parts or assemblies of parts relating to all DMR radios—whether or not Motorola identified any violative aspect of that component at trial (the "Non-Accused Products").

On October 28, 2020, the Debtors filed their *Motion for an Order Scheduling Sale Hearing on Amended Asset Purchase Agreement* [Docket No. 274] (the "Motion to Schedule"). Pursuant to the Motion to Schedule, the Debtors sought to schedule the hearing on the sale of the Debtors' assets to the Purchaser, as amended by the *Third Amendment to Asset Purchase Agreement* (the "Third Amendment" and together with the previous amendments to the Initial APA, the "Amended APA"), which removed the Non-Accused Products from the assets to be sold to Purchaser.

On November 18, 2020, the Debtors filed a *Notice of Hearing of Third Amendment to Initial Asset Purchase Agreement* [Docket No. 290]. In addition to removing the Non-Accused Products: (a) the removal of inventory that had already been sold in the ordinary course of business, (b) the removal of accounts receivable that had already been collected, and (c) the addition of certain accounts receivable. Under the Initial APA, the cash consideration was $9,503,486. Under the Amended APA, the estimated cash consideration was $7,395,759.

13

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

On December 17, 2020, the Bankruptcy Court held a hearing (the "December 17 Hearing") on the approval of the Amended APA, which approved the sale of the Debtors' business without the Non-Accused Products. On December 23, 2020, the Bankruptcy Court entered an order [Docket No. 375] (the "Initial Sale Order"), which approved the sale of the Debtors' business, the purchase of certain accounts receivable, and assumption and assignment of certain contracts, all as set forth in the Initial Sale Order. Upon the closing of the sale, the Debtors' estates received $6,157,198 from the buyer.

### 2. Sale of Non-Accused Products

At the December 17 Hearing, the Bankruptcy Court directed the Debtors and Motorola to meet and confer regarding the sale of the Non-Accused Products. On January 13, 2021, the Debtors and Motorola Solutions, Inc. ("Motorola") filed a joint statement [Docket No. 402] notifying parties in interest that an agreement had been reached regarding the sale of the Non-Accused Products.

On January 29, 2021, the Bankruptcy Court entered the *Order (1) Approving Asset Purchase Agreement Among the Debtors and the Buyer, (2) Approving Sale of the Specified Assets of the Debtors Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), (f) and (m), and (3) Granting Related Relief* [Docket No. 426] (the "Non-Accused Product Sale Order").

Pursuant to the Non-Accused Product Sale Order, the Bankruptcy Court approved the sale of the Non-Accused Products to the Purchaser on the terms and conditions of the Amended APA, provided that upon the closing, the Debtors segregate 25% of sale proceeds of the Non-Accused Products (the "Segregated Cash"). As set forth in the Non-Accused Product Sale Order, the Debtors may not use the Segregated Cash absent Motorola's express written consent or Bankruptcy Court authorization.

On February 5, 2021, the sale of the Non-Accused Products closed and the Debtors received approximately $2 million in connection therewith.

### 3. Sale of Accused Products

On April 14, 2021, the Debtors filed their *Motion for Approval of Purchase Agreement Among the Debtors and the Purchaser, Approving Sale of the Inventory of the Debtors Free and Clear of All Liens, Claims, Encumbrances and Other Interests Pursuant to Bankruptcy Code Sections 105, 363(b), (f) and (m), and Granting Related Relief* [Docket No. 456] (the "Accused Products Sale Motion").

Pursuant to the Accused Products Sale Motion, the Debtors sought to sell their remaining inventory, comprised of Accused Products that, due to the Debtors' intellectual property disputes with Motorola discussed above, was previously excluded from the two prior asset sales to the Purchaser.

On May 10, 2021, the Bankruptcy Court entered its order [Docket No. 494] approving the Accused Products Sale Motion and authorizing the Debtors to sell the Accused Products to the Purchaser for approximately $1.2 million.

On May 13, 2021, the sale of the Accused Products closed and the Debtors received approximately $1.2 million in connection therewith.

### G. Executory Contracts and Unexpired Leases

On October 5, 2020, the Bankruptcy Court entered its *Order Pursuant to Section 365(d)(4)(B)(i) of the Bankruptcy Code Extending the Time Within Which the Debtors May Assume, Assume and Assign, or Reject Nonresidential Real Property Leases* [Docket No. 264] (the "Extension Order"). Pursuant to the Extension Order, the Debtors' time to assume or reject nonresidential real property leases was extended to December 12, 2020, without prejudice to the Debtors' right to seek further extensions as necessary.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

On November 23, 2020, in order to avoid the automatic rejection of its office lease pursuant to section 365(d)(4) of the Bankruptcy Code, Hytera West filed its *Motion for Order Approving the Assumption of Unexpired Lease of Non-Residential Real Property* [Docket No. 293] (the "Motion to Assume the California Lease").  The Motion to Assume the California Lease sought the entry of an order authorizing Hytera West to assume that *Standard Industrial / Commercial Single – Tenant Lease* (the "California Lease") relating to the premises at 8 Whatney, Building 200, Irvine, California.  The California Lease was a purchased asset under the Amended APA and it would have been a default if the Debtors permitted the California Lease to be rejected.

In connection with the Motion to Assume the California Lease, the Debtors filed their *Ex Parte Motion for Entry of Bridge Order Further Extending the Time to Assume or Reject a Certain Unexpired Lease of Nonresidential Real Property Through December 22, 2020* [Docket No. 298].  On November 30, 2020, the Bankruptcy Court entered its *Bridge Order Further Extending the Time to Assume or Reject a Certain Unexpired Lease of Nonresidential Real Property Through December 22, 2020* [Docket No. 301].

As of the date hereof, all unexpired leases of nonresidential real property have either (i) been assumed and assigned in connection with the sale of substantially all of the Debtors' assets or (ii) they have been rejected.  As a result, the Debtors' estates no longer have any administrative requirements relating to postpetition rent, maintenance, or monetary obligations arising from unexpired nonresidential real property leases.

## H.    Schedules of Assets and Liabilities and Establishment of Bar Dates

On July 1, 2020, the Debtors filed their schedules of assets and liabilities and statements of financial affairs.

On December 17, 2020, the Bankruptcy Court entered its *Order (A) Establishing the Procedures and Deadlines for Filing (I) Proofs of Claim and Interests and (II) Administrative Expense Claims Arising Between May 26, 2020 and December 31, 2020; (B) Approving Form and Manner of Notice of Bar Dates; and (C) Granting Related Relief* [Docket No. 338] (the "Bar Date Order").

Pursuant to the Bar Date Order, the Bankruptcy Court established February 19, 2021 as the deadline for:  (i) any persons or other entities (except for governmental entities) that wish to assert a prepetition claim against the Debtors or an interest in the Debtors, to file a proof of claim or interest or forever be barred from asserting such claim (the "General Bar Date"); and (ii) any persons or entities that wish to assert an administrative expense claim allowable under section 503(b) of the Bankruptcy Code, arising between May 26, 2020 and December 31, 2020 ("Administrative Claim") to file a request for payment or forever be barred from asserting such Administrative Claim against the Debtors.

## I.    Estate Wind Down

As of the date hereof, the CRO and his team are reviewing filed claims and actively pursuing the collection of accounts receivable. Since the engagement of the CRO and his team, they have collected in excess of $1.3 million in accounts receivable. The CRO is continuing to pursue the collection of the accounts receivable and expects further recoveries.

As of August 31, 2021, the Debtors' combined cash balance was $18,166,000.  Hytera West currently has approximately $4,742,000 of unrestricted cash and $314,000 of restricted cash on hand. Hytera East currently has approximately $12,862,000 of unrestricted cash on hand and $246,000 of restricted cash on hand.  HYT has approximately $2,000 of unrestricted cash on hand.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# VII.

# **THE CHAPTER 11 PLAN**

As a result of the chapter 11 process and through the Liquidation Trust and the Plan, the Debtors expect that creditors will obtain a greater recovery from the Estates than the recovery that would be available if the Assets had been liquidated under chapter 7 of the Bankruptcy Code. The Plan is annexed hereto as <u>Exhibit A</u> and forms part of this Disclosure Statement. The summary of the Plan set forth below is qualified in its entirety by the more detailed provisions set forth in the Plan.

## A.    **Classification and Treatment of Claims and Interests**

### 1.    **Administrative Expense Claims**

a.    ***Treatment***.  Except as otherwise provided in Section 5.1(b) of the Plan, or to the extent that a Holder of an Allowed Administrative Expense Claim agrees to different treatment with the Debtors or Liquidation Trustee, each Holder of an Allowed Administrative Expense Claim shall receive Cash in an amount equal to the unpaid amount of such Allowed Administrative Expense Claim on the later of the Effective Date or the date on which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is reasonably practicable; *provided*, *however*, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, or liabilities arising under obligations incurred by the Debtors, as debtors in possession, prior to the Effective Date, shall be paid by the Debtors, in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions, including, but not limited to, any applicable orders of the Bankruptcy Court.  In addition, Allowed Administrative Expense Claims of the United States Trustee for statutory fees under 28 U.S.C. § 1930 incurred prior to the Effective Date shall be paid on the Effective Date by the Debtors, and thereafter, as such fees may thereafter accrue and be due and payable, by the Liquidation Trustee in accordance with the applicable schedule for payment of such fees.

b.    ***Administrative Expense Claims Bar Date***.  To be eligible to receive Distributions under the Plan on account of an Administrative Expense Claim that is not otherwise Allowed by the Plan, a request for payment of an Administrative Expense Claim must have been or be filed with the Bankruptcy Court on or before the First Administrative Expense Claims Bar Date or the Second Administrative Expense Claims Bar Date, as applicable, or such other date as may be agreed to by the Liquidation Trustee.  Any Administrative Expense Claims that are not asserted in accordance herewith and with Section 5.1(a) of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, their Estates, the Liquidation Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

### 2.    **Professional Fee Claims.**

Each Professional requesting compensation for services rendered and reimbursement for expenses incurred during the period from the Petition Date through the Effective Date must (i) file and serve a properly noticed final fee application by no later than 45 days after the Effective Date and (ii) be paid (a) the full unpaid amount as is Allowed by the Bankruptcy Court within 7 calendar days after the date that such Claim is Allowed by Order of the Bankruptcy Court, or (b) upon such other terms as may be mutually agreed upon between the Holder of such an Allowed Professional Fee Claim and the Liquidation Trustee.  Any Professional Fee Claim that is not asserted in accordance with Section 5.2 of the Plan shall be deemed disallowed under the Plan and shall be forever barred against the Debtors, the Estates, the Liquidation Trust, or any of their Assets or property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset, recoup or recover such Claim.

a.    ***Professional Fee Estimate***.   Professionals shall estimate in good faith their unpaid Professional Fee Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date and shall deliver such reasonable, good faith estimate to the Debtors and the Committee no later than 7 calendar days prior to the Effective Date; *provided*, that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims. If a Professional does not provide an estimate, the Committee, in consultation with the Debtors, shall estimate in good faith the unpaid and unbilled fees and expenses of such Professional.

b.    ***Professional Fee Escrow***. If the Professional Fee Claims Estimate is greater than zero, as soon as reasonably practicable and no later than the Effective Date, the Debtors shall fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Claims Estimate, and no Liens, Claims, or Interests shall encumber the Professional Fee Escrow in any way.   The Professional Fee Escrow Account (including funds held in the Professional Fee Escrow) (i) shall not be and shall not be deemed property of the Debtors or the Liquidation Trust and (ii) shall be held in trust for the Professionals; *provided*, that funds remaining in the Professional Fee Escrow Account after all Allowed Professional Fee Claims have been irrevocably paid in full shall revert to the Liquidation Trust.  Allowed Professional Fee Claims shall be paid in Cash to such Professionals from funds held in the Professional Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court; *provided further*, that the Debtors' obligations with respect to Professional Fee Claims shall not be limited nor deemed to be limited in any way to the balance of funds held in the Professional Fee Escrow Account.

If the amount of funds in the Professional Fee Escrow Account is insufficient to fund payment in full of all Allowed Professional Fee Claims and any other Allowed amounts owed to Professionals, the deficiency shall be promptly funded to the Professional Fee Escrow Account from the Estates without any further action or order of the Bankruptcy Court.

**3.    Priority Tax Claims.**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a different treatment of such Claim, each Holder of an Allowed Priority Tax Claim, if any such Claim exists, shall receive Cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the date that is 90 calendar days after the Effective Date.

**4.    Class 1:  Other Priority Claims**

a.    ***Classification***.  Class 1 consists of all Allowed Other Priority Claims against any of the Debtors that are specified as having priority in section 507(a) of the Bankruptcy Code if any such Claims exist as of the Effective Date.

b.    ***Treatment***.  Except to the extent that a Holder of an Allowed Other Priority Claim against any of the Debtors has agreed to a different treatment of such Claim, each such Holder shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Other Priority Claim, Cash in an amount equal to such Allowed Other Priority Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Other Priority Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the applicable Debtor or the Liquidation Trustee and the Holder of the Allowed Other Priority Claim against the applicable Debtor.

**5.    Class 2:  Secured Tax Claims**

a.    ***Classification***.  Class 2 consists of all Allowed Secured Tax Claims against any of the Debtors that, absent the secured status of such Claim, would be entitled to priority in right of

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

payment under section 507(a) of the Bankruptcy Code if any such Claims exist as of the Effective Date.

b.    ***Treatment***.  Each Holder of an Allowed Secured Tax Claim against any of the Debtors shall receive, in full and final satisfaction, settlement, release, and discharge of each such Allowed Secured Tax Claim, Cash in an amount equal to such Allowed Secured Tax Claim, on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date the Secured Tax Claim becomes an Allowed Claim, and (iii) the date for payment provided by any agreement or arrangement between the applicable Debtor or the Liquidation Trustee and the Holder of the Secured Tax Claim. The applicable Debtor and the Liquidation Trustee (after the Effective Date) specifically reserve the right to challenge the validity, nature, and perfection of, and to avoid, pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported liens relating to the Secured Tax Claims.

**6.    <u>Class 3:  Secured Claims</u>**

a.    ***Classification***.  Class 3 consists of all Secured Claims.

b.    ***Treatment***.  On the Effective Date, or as soon as reasonably practicable thereafter, each Holder of an Allowed Class 3 Secured Claim will receive, at the election of the Liquidation Trustee, one of the following treatments in full satisfaction of its Allowed Class 3 Claim:

(1)    The Liquidation Trustee will convey to the Holder of the Allowed Class 3 Claim the collateral in which such Holder has a security interest;

(2)    The Liquidation Trustee will pay to the Holder of the Allowed Class 3 Claim, up to the amount of such Allowed Class 3 Claim, any net proceeds actually received from the sale or disposition of the collateral in which such Holder has a security interest;

(3)    Provided there is Distributable Cash on hand, the Liquidation Trustee will pay Cash to the Holder of the Allowed Class 3 Claim in the amount of such Allowed Class 3 Claim;

(4)    Such other distributions or treatment that are necessary to leave the rights of the Holder of the Allowed Class 3 Claim unimpaired or that are necessary to otherwise satisfy the requirements of chapter 11 of the Bankruptcy Code; or

(5)    Such other and less favorable distributions or treatments as may be agreed upon by and between the Holder of the Allowed Class 3 Claim and the Liquidation Trustee.

The Liquidation Trustee may, in his or her discretion, select which of these treatments each Holder of an Allowed Class 3 Claim will receive.  The Liquidation Trustee shall have until the later of (a) the Effective Date and (b) 90 calendar days after a Class 3 Claim has become an Allowed Class 3 Claim to elect which treatment to provide to such Holder of an Allowed Class 3 Claim.

**7.    <u>Class 4:  Non-Motorola General Unsecured Claims</u>**

a.    ***Classification***.  Class 4 consists of all Non-Motorola General Unsecured Claims, including, for the avoidance of doubt, Insider Claims.  The Debtors will provide ballots to Holders of asserted Class 4 Non-Motorola General Unsecured Claims in each of the Chapter 11 Cases. To the extent the Bankruptcy Court does not approve the substantive consolidation of the Debtors, the treatment described below will apply to each Class for each of the Debtors.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

b.      **Treatment**.  Except to the extent that a Holder of an Allowed Class 4 Claim agrees to a different treatment of such Claim, in full and final satisfaction, settlement, release, and discharge of the Allowed Class 4 Claims against each of the Debtors, each Holder of an Allowed Class 4 Claim will receive its Pro Rata share of the Class 4 Fund as soon as practicable as determined by the Liquidation Trustee in accordance with the Liquidation Trust Agreement; *provided, however*, the Liquidation Trustee shall distribute $2 million to Holders of Allowed Class 4 Claims no later than seven (7) calendar days after the Effective Date.  To the extent that a Holder of an Allowed Class 4 Claim holds such Claim against more than one Debtor, such Holder shall be entitled to a single distribution on account of each Claim that arises out of the same facts and circumstances regardless of the number of Debtors against which the Claim is asserted.  The Liquidation Trustee reserves its rights to dispute the validity of any Class 4 Claim, whether or not objected to prior to the Effective Date.  For the avoidance of doubt, pursuant to Section 12.5 of the Plan, the Insider Claims will be released on the Effective Date and the Insiders will not receive their Pro Rata share of the Class 4 Fund.

8.      **Class 5:  Motorola General Unsecured Claims**

a.      **Classification**.  Class 5 consists of the Motorola General Unsecured Claims. The Debtors will provide a ballot to the Holders of asserted Class 5 Claims in each of the Cases.  To the extent the Court does not approve the substantive consolidation of the Debtors, the treatment described below will apply to each Class of each of the Debtors.

b.      **Treatment**.  On the Effective Date, the Motorola General Unsecured Claims shall be Allowed in the amount of $596,613,891.00 (the "Allowed Class 5 Claims") against each Debtor.  Except to the extent that a Holder of an Allowed Class 5 Claim agrees to a different treatment of such Allowed Class 5 Claim, in full and final satisfaction, settlement, release, and discharge of the Allowed Class 5 Claims against the Debtors, each Holder of an Allowed Class 5 Claim will receive its Pro Rata share of the Distributable Cash as soon as practicable as determined by the Liquidation Trustee in accordance with the Liquidation Trust Agreement; *provided, however*, the Liquidation Trustee shall distribute at least $13 million to Holders of Allowed Class 5 Claims no later than seven (7) calendar days after the Effective Date.

9.      **Class 6:  Interests**

a.      **Classification**.  Class 6 consists of all Interests in the Debtors.

b.      **Treatment**.  On the Effective Date, all Interests in the Debtors shall be canceled, and the Holders of Class 6 Interests shall not be entitled to, and shall not receive or retain, any property on account of such Interests under the Plan.

B.      **Means for Implementation of the Plan.**

1.      **Substantive Consolidation.**

The Debtors seek entry, pursuant to section 105 of the Bankruptcy Code, of a Bankruptcy Court order that, upon the Effective Date, substantively consolidates the Estates into a single consolidated Estate and consolidates all of the debts of all of the Debtors, for all purposes associated with confirmation and consummation. However, in the event that the Bankruptcy Court does not approve the substantive consolidation of the Debtors there will be deemed to be a sub-class (*e.g.*, Class 4.01, Class 4.02, etc.) corresponding to each of the Debtors and the Holders of Allowed Class 4 Non-Motorola General Unsecured Claims, Allowed Class 5 Motorola General Unsecured Claims and Holders of Allowed Class 6 Interests will receive the same treatment on a per Debtor basis, as is proposed on a consolidated basis.

On and after the Effective Date, all Assets and liabilities of each of the Debtors shall be treated as though they were merged into the Estate of HCA West, Inc. for all purposes associated with confirmation and consummation, and all guarantees by any Debtor of the obligations of any other

19

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Debtor shall be eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor shall be treated as one collective obligation of the Debtors, subject to all rights, claims, defenses, and arguments available to the Debtors or the Liquidation Trust.

Substantive consolidation will not (i) alter the state of incorporation or state of formation of any Debtor for purposes of determining the applicable law for any of the Causes of Action, (ii) alter or impair the legal and equitable rights of the Liquidation Trustee to prosecute any of the Causes of Action, or (iii) otherwise impair, release, discharge, extinguish or affect any of the Causes of Action or issues raised as a part thereof.

Notwithstanding anything to the contrary herein, on the Effective Date, all Claims by a Debtor against any other Debtor will be extinguished without any distributions being made on account of such Claims.

## 2.    The Liquidation Trust

a.    ***Formation of the Liquidation Trust***.  On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement for the purpose of administering and liquidating the Liquidation Trust Assets, prosecuting and resolving the Causes of Action, objecting to all Claims, and effectuating the Distributions to be made under the Plan to the Holders of Allowed Claims in accordance with the terms of the Plan.

b.    ***Federal Income Tax Treatment of the Liquidation Trust***.  For federal income tax purposes, it is intended that the Liquidation Trust be classified as a "grantor trust" for federal income tax purposes, pursuant to sections 671-677 of the Internal Revenue Code of 1986, as amended, and that the Liquidation Trust be owned by the Beneficiaries.  Accordingly, for federal income tax purposes, it is intended that the Beneficiaries be treated as if they had received a distribution from the Estates of an undivided interest in each of the Liquidation Trust Assets and then contributed such interest to the Liquidation Trust.

c.    ***Funding the Liquidation Trust***.  On the Effective Date, all of the Assets of the substantively consolidated Estate, including all Causes of Action, as well as the rights and powers of the Debtors, the consolidated Estate, and the Committee shall automatically vest in the Liquidation Trust.  Specifically, and without limitation, the Liquidation Trust, through the Liquidation Trustee, shall have the right to prosecute all Causes of Action, and receive all accounts receivable and the proceeds related thereto.

d.    ***Termination of Liquidation Trust***.  The duties, responsibilities, and powers of the Liquidation Trustee shall terminate in accordance with the terms of the Plan and the Liquidation Trust Agreement after (a) all the Liquidation Trust Assets have been fully administered, (b) all reasonably possible Distributions have been made in accordance with the terms of the Plan, and (c) all Disputed Claims have been resolved.

Upon the termination of the Liquidation Trust, the Liquidation Trustee shall file with the Bankruptcy Court a report thereof, seeking an order discharging the Liquidation Trustee and a final decree closing any open Chapter 11 Cases.  The Liquidation Trustee shall not unduly prolong the duration of the Liquidation Trust.  As efficiently and expeditiously as possible, the Liquidation Trustee shall endeavor to resolve, settle, or otherwise dispose of all Liquidation Trust Assets, effect the distribution of the Liquidation Trust Assets in accordance with the terms of the Plan, and terminate the Liquidation Trust as soon as practicable.

e.    ***Vesting and Transfer of Assets to the Liquidation Trust***.  Pursuant to section 1141(b) of the Bankruptcy Code, the Assets of the Estates shall vest in the Liquidation Trust; *provided*, *however*, that the Liquidation Trustee may seek Bankruptcy Court approval to abandon or otherwise not accept any Assets that the Liquidation Trustee believes, in good faith, have no meaningful value

to the Liquidation Trust, provided that at least 14 calendar days' notice of any such request is provided to parties to pending litigation in which the Debtors, or their former officers and directors, are parties. Any Assets the Liquidation Trustee so abandons or otherwise does not accept shall not vest in the Liquidation Trust and shall re-vest in the Debtors; *provided further, however*, that pursuant to an order of the Bankruptcy Court following proper notice, the Liquidation Trustee may abandon any Assets to any Person. For the avoidance of doubt, the Liquidation Trustee may not abandon, destroy, or otherwise dispose of the Debtors' books and records without a further order of the Bankruptcy Court upon at least 14 calendar days' notice of any such request to parties to pending litigation in which the Debtors, or their former officers and directors, are parties.

As of the Effective Date, all Assets vested in the Liquidation Trust and all Assets dealt with in the Plan, shall be free and clear of all Claims, Liens, and Interests except as otherwise specifically provided in the Plan or in the Confirmation Order. The Liquidation Trustee shall make distributions in accordance with the Plan and the Liquidation Trust Agreement.

f.    ***Appointment and Powers of the Liquidation Trustee***. The Liquidation Trustee shall be appointed pursuant to the Confirmation Order, as of the Effective Date. The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3) as well as the representative of the Estates appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The powers, rights, and responsibilities of the Liquidation Trustee shall be specified in and subject to the terms of the Liquidation Trust Agreement and shall include the authority and responsibility to: (i) receive, manage, invest, supervise and protect the Liquidation Trust Assets; (ii) pay taxes and other obligations incurred by the Liquidation Trust; (iii) retain and compensate, without further order of the Bankruptcy Court, the services of professionals (the "Liquidation Trust Professionals") to advise and assist in the administration, prosecution and Distribution of Liquidation Trust Assets; (iv) calculate and implement Distributions of Distributable Cash (v) prosecute, compromise and settle all Disputed Claims and all claims and Causes of Action vested in the Liquidation Trust; (vi) provide reasonable access to the Debtors' books and records upon request from any Holder of a Claim, Administrative Expense Claim, or Professional Fee Claim; and (vii) pay Professional Fees of professionals retained in the Chapter 11 Cases which are Allowed pursuant to any order of the Bankruptcy Court, whether such Professional Fees were incurred before or after the Effective Date. Other rights and duties of the Liquidation Trustee shall be set forth in the Liquidation Trust Agreement.

The Liquidation Trustee shall have all of the rights and powers of a trustee in bankruptcy, a chapter 11 trustee and/or a debtor in possession to the same extent as would be held by those officers if the Plan had not been confirmed, and shall have the benefit of all time frames that would be applicable to actions by such officers, including without limitation pursuant to section 108 of the Bankruptcy Code

g.    ***Compensation of Liquidation Trustee***. The Liquidation Trustee shall be reasonably compensated out of the Liquidation Trust Assets for his or her services and reimbursed out of the Liquidation Trust for his or her reasonable expenses in accordance with the Liquidation Trust Agreement.

h.    ***Resignation of Liquidation Trustee***. The Liquidation Trustee may resign at any time. The Liquidation Trustee shall file such written resignation with the Bankruptcy Court. Any party in interest may request a hearing before the Bankruptcy Court regarding the Liquidation Trustee's resignation. If no such hearing is requested, the resignation shall take effect 30 days after the filing of the notice of resignation with the Bankruptcy Court. The resigning Liquidation Trustee shall, by the earliest date possible, deliver to the Liquidation Trustee's successor all of the Liquidation Trust Assets that were in the possession of the resigning Liquidation Trustee along with a complete record and inventory of all such Liquidation Trust Assets.

i.    ***Removal of Liquidation Trustee***. The Bankruptcy Court may remove a Liquidation Trustee for good cause shown on a motion submitted by a Beneficiary of the Liquidation

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Trust or the U.S. Trustee following notice to parties in interest, including without limitation, the Liquidation Trustee. The removal will take effect upon the date the Bankruptcy Court specifies. Any removed Liquidation Trustee shall, by the earliest date possible, deliver to the Liquidation Trustee's successor all of the Liquidation Trust Assets that were in the possession of the removed Liquidation Trustee along with a complete record and inventory of all such Liquidation Trust Assets.

        j.    **_Successor Liquidation Trustee_**. Any vacancy in the office of Liquidation Trustee shall be appointed by the Bankruptcy Court after notice and a hearing.

        k.    **_Liability of the Liquidation Trustee_**. The Liquidation Trustee shall not be personally liable for any claim asserted against the Liquidation Trust or the Liquidation Trustee, except as set forth below. The Liquidation Trustee shall not be liable for any error of judgment made in good faith or with respect to any action taken or omitted to be taken in good faith, unless with respect to the Liquidation Trustee's own respective fraud, gross negligence or willful misconduct. Notwithstanding anything to the contrary set forth herein or in the Liquidation Trust Agreement, no provision of the Plan or the Liquidation Trust Agreement shall be construed to relieve the Liquidation Trustee from liability for gross negligence, fraud or willful misconduct.

        l.    **_Indemnification_**. From and after the Effective Date, the Liquidation Trustee and the independent contractors, employees, and/or professionals employed by the Liquidation Trust (collectively, the "Indemnified Parties" and each an "Indemnified Party") shall be, and hereby are, indemnified by the Liquidation Trust, to the fullest extent permitted under applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees and defense costs, and other assertions of liability arising out of any such Indemnified Parties' good faith exercise of what such Indemnified Party reasonably understands to be its powers or the discharge of what such Indemnified Party reasonably understands to be its duties conferred by the Plan, the Liquidation Trust Agreement, or by any order of the Bankruptcy Court entered pursuant to, or in furtherance of, the Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order of a court of competent jurisdiction to be due to such Indemnified Party's own respective fraud, gross negligence or willful misconduct), including but not limited to, acts or omissions concerning pursuing or not pursuing any Causes of Action or objections to Claims, on and after the Effective Date. The foregoing indemnification shall also extend to matters directly or indirectly, in connection with, arising out of, based on, or in any way related to (i) the Plan; (ii) the services to be rendered pursuant to the Plan; (iii) any document or information, whether verbal or written, referred to herein or supplied to the Liquidation Trustee; or (iv) proceedings by or on behalf of any claimant or Creditor. Subject to the terms of the Plan and the Liquidation Trust Agreement, the Liquidation Trust shall, on demand, advance or pay promptly, in either case from the Liquidation Trust Reserve, on behalf of each Indemnified Party, reasonable attorneys' fees and other expenses and disbursements which such Indemnified Party would be entitled to receive pursuant to the foregoing indemnification obligation; provided, however, that any Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance amounts if a court of competent jurisdiction ultimately determines that such Indemnified Party is not entitled to indemnification hereunder due to the gross negligence, fraud, or willful misconduct of such Indemnified Party. Any person entitled to indemnification hereunder shall have the right to employ such person's own separate counsel in any such action, payable solely from the Liquidation Trust Reserve, subject to the terms and conditions of the Plan.

        The Liquidation Trustee is authorized, but not required, to obtain and purchase (solely from funds in the Liquidation Trust Reserve) insurance coverage with respect to the responsibilities, liabilities, and obligations of the Indemnified Parties under the Plan.

    **3.**    **The Source of Distributions.**

        The sources of all distributions and payments under the Plan are the Liquidation Trust Assets (or proceeds of any Liquidation Trust Assets), including without limitation Cash and Distributable

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Cash, proceeds of all Causes of Action, and proceeds of or recoveries from any other remaining property of the Debtors and their Estates.

**4.**    **Claims Reconciliation Process.**

From and after the Effective Date, the Liquidation Trust shall be solely responsible for objecting to Claims which are not otherwise Allowed.

**5.**    **Preservation of Right to Conduct Investigations.**

Any and all rights to conduct investigations pursuant to Bankruptcy Rule 2004 held by the Debtors or the Committee prior to the Effective Date shall vest with the Liquidation Trust upon the Effective Date and shall continue in effect until dissolution or termination of the Liquidation Trust.

**6.**    **Preservation of Privilege and Defenses.**

No action taken by the Debtors in connection with the Plan shall be (or be deemed to be) a waiver of any privilege or immunity of the Debtors, as applicable, including any attorney-client privilege or work-product privilege attaching to any documents or communications (whether written or oral) (collectively, the "Transferred Privileges"). The Confirmation Order shall provide that notwithstanding the Debtors providing any Transferred Privileges to the Liquidation Trustee, the Liquidation Trust, or any party or Person associated with the Liquidation Trust, such Transferred Privileges shall be without waiver in recognition of the joint and/or successorship interest in prosecuting any Claim or Cause of Action on behalf of the Estates and shall remain privileged and shall vest in the Liquidation Trust, in trust, and, consistent with sections 1123(a)(5)(B) and 1123(b)(3)(B) of the Bankruptcy Code, for the sole benefit of the Liquidation Trustee and the Liquidation Trust beneficiaries; *provided, however*, the Liquidation Trustee shall not share information protected by any Transferred Privilege with a holder of a general unsecured claim to the extent that such protected information implicates the claims the creditors have against the Liquidation Trust or claims the Liquidation Trust has against the Holder of a Claim; *provided further, however*, that the Liquidation Trustee shall not waive any Transferred Privilege, or otherwise disclose any material subject to a Transferred Privilege, to the extent such Transferred Privilege is held jointly with a third party, without the express written consent of such third party.

**7.**    **Abandonment of Property.**

If and to the extent the Liquidation Trustee determines to abandon any Liquidation Trust Assets, then the Liquidation Trustee may abandon such assets in accordance with the Plan or any further order of the Bankruptcy Court.

**C.**    **Claims Reconciliation Process**

**1.**    **Objections to, and Resolution, of Disputed Claims.**

From and after the Effective Date, the Liquidation Trust shall have the exclusive authority to compromise, resolve, and Allow any Disputed Claim without the need to obtain approval from the Bankruptcy Court, subject to the Liquidation Trust Agreement, and any agreement entered into by the Liquidation Trust with respect to the Allowance of any Claim shall be conclusive evidence and a final determination of the Allowance of such Claim; *provided*, *however*, that, under the Plan, all Disputed Claims will have no right to receive any Distributions under the Plan unless and until such Claims are affirmatively Allowed by a Final Order.

**2.**    **Claim Objections.**

All objections to Claims (other than Professional Fee Claims) shall be filed by the Liquidation Trust on or before the Claim Objection Deadline, which date may be extended by filing a motion on

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

or before the then Claim Objection Deadline.  If a timely objection has not been filed to a proof of claim or the Schedules have not been amended with respect to a Claim that was Scheduled by the Debtors but was not Scheduled as contingent, unliquidated, or disputed, then the Claim to which the proof of claim or Scheduled Claim relates will be treated as an Allowed Claim.

**3.     Estimation of Certain Claims.**

The Liquidation Trust may, at any time, move for a Bankruptcy Court order estimating any contingent Claim, Disputed Claim, or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction and power to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. The estimated amount of any Claim so determined by the Bankruptcy Court shall constitute the maximum recovery that the Holder thereof may recover after the ultimate liquidation of its Claim, irrespective of the actual amount that is ultimately Allowed.  All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and are not necessarily exclusive of one another.

**D.     Distributions Under the Plan**

**1.     Manner of Cash Payments.**

Cash payments to domestic Holders of Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Liquidation Trustee or, at the Liquidation Trustee's option, by wire transfer from a domestic bank.  Cash payments to foreign Holders of Allowed Claims may be paid, at the Liquidation Trustee's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

**2.     Setoff and Recoupment**

**NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE PLAN, THE LIQUIDATION TRUSTEE, ON BEHALF OF THE LIQUIDATION TRUST, MAY SETOFF, RECOUP, OR WITHHOLD AGAINST DISTRIBUTIONS ON ACCOUNT OF ANY CLAIM OR ANY ADMINISTRATIVE EXPENSE CLAIM, ANY CLAIMS THAT A DEBTOR, THE ESTATES, OR THE LIQUIDATION TRUST MAY HAVE AGAINST THE HOLDER OF SUCH CLAIM OR ADMINISTRATIVE EXPENSE CLAIM. THE LIQUIDATION TRUST AND THE LIQUIDATION TRUSTEE WILL NOT BE DEEMED TO WAIVE OR RELEASE ANY CLAIM AGAINST THE HOLDER OF SUCH CLAIM OR ADMINISTRATIVE EXPENSE CLAIM BY FAILING TO EFFECT SUCH A SETOFF OR RECOUPMENT; BY ALLOWING ANY CLAIM OR ADMINISTRATIVE EXPENSE CLAIM, AS APPLICABLE, AGAINST THE DEBTORS OR THE LIQUIDATION TRUST; OR BY MAKING A DISTRIBUTION ON ACCOUNT OF SUCH CLAIM OR ADMINISTRATIVE EXPENSE CLAIM.**

**3.     No De Minimis Distributions.**

Notwithstanding anything to the contrary in the Plan, no Cash payment of less than $100 will be made by the Liquidation Trustee to any Holder of an Allowed Claim.  No consideration will be provided in lieu of the de minimis distributions that are not made under this section.

If the amount of any Distribution to be made pursuant to the Plan on account of an Allowed Claim would be less than $100, the Liquidation Trustee will not pay such Distribution and will hold such Distribution for the benefit of the Holder of such Allowed Claim.  When and if the aggregate amount of Distributions on account of such Allowed Claim totals at least $100, the Liquidation Trustee

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

will distribute such Distributions to the Holder of such Allowed Claim in accordance with the terms of the Plan.

If, at the time a final Distribution is to be made under the Plan, the aggregate amount of Distributions held by the Liquidation Trustee for the benefit of a Holder of an Allowed Claim total less than $100, then (i) such Distributions shall not be paid to such Holder and such Distributions shall vest in the Liquidation Trust and be distributed to other Holders of Allowed Claims in accordance with the terms of the Plan, and (ii) the Holder of such Allowed Claim will be forever barred from receiving such Distribution or asserting any claim against the Liquidation Trust, the Liquidation Trust Assets, or the Liquidation Trustee on account of such Allowed Claim.

**4.    No Distributions With Respect to Disputed Claims.**

Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim or is deemed to be an Allowed Claim for Distribution purposes.

**5.    No Interim Distributions.**

Notwithstanding any other Plan provision, the Liquidation Trustee shall not make any interim Distributions absent further order of the Bankruptcy Court; *provided*, *however*, that any such order shall require the Liquidation Trustee to reserve the full amount of any Disputed Claim unless otherwise authorized by the Bankruptcy Court for cause.

**6.    Preservation of Causes of Action.**

The Liquidation Trustee, on behalf of the Debtors, their Estates and/or the Liquidation Trust, shall retain, and may exclusively enforce, any and all claims, rights, or Causes of Action, whether arising before or after the Petition Date, in any court or other tribunal, including, without limitation, an adversary proceeding filed in these Chapter 11 Cases. Subject to the Plan and the Liquidation Trust Agreement, the Liquidation Trustee, on behalf of the Debtors, their Estates and the Liquidation Trust, shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise on any reasonable terms any and all claims, rights and Causes of Action, and shall not be required to seek prior approval from the Bankruptcy Court to do so, except as otherwise provided in the Plan, and shall have the full rights and powers to commence and pursue any such Causes of Action (including, without limitation, any Avoidance Actions), on or after the Effective Date to at least the same extent as a trustee or debtor in possession could commence such actions prior to the Effective Date. With respect to any matter affecting Liquidation Trust Assets, the Liquidation Trustee stands in the shoes of the Debtors as debtors in possession, the Estates, the Committee, and/or the Liquidation Trust and may take such actions in their name without the need to intervene in, amend any pending matters, proceedings, or actions, or obtain any further order of the Bankruptcy Court.

The Plan provides that the Liquidation Trustee is authorized to exercise and perform the rights, powers, and duties held by the Debtors, their Estates, and/or the Liquidation Trust, including without limitation the authority under section 1123(b)(3) of the Bankruptcy Code to provide for the settlement, adjustment, retention and enforcement of claims and interests of the Debtors, their Estates, or the Liquidation Trust, including, but not limited to all Causes of Action (including, without limitation, Avoidance Actions).

The Plan preserves all claims and Causes of Action against any and all third parties, including, but not limited to, all creditors and interest holders, and others. Nothing contained in the Plan shall be construed as an acknowledgment or concession regarding the existence or validity of any claim or Cause of Action.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

For the avoidance of doubt, the Plan also preserves any rights, claims, and defenses the Debtors' may hold against Finnegan, Henderson, Farabow, Garrett, & Dunner, LLP, including any malpractice claims.

**E.    Exculpation and Injunction**

**1.    Term of Bankruptcy Injunction or Stay.**

Except as otherwise expressly provided in the Plan or the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and which are in effect on the confirmation Date, shall remain in full force and effect until the Effective Date.

**2.    Exculpation for Estate Fiduciaries.**

**Upon the occurrence of the Effective Date, except as otherwise specifically provided in the Plan or any Plan Supplement, no Exculpated Party shall have or incur, and each Exculpated Party shall be exculpated from any claim, obligation, cause of action, or liability for any Exculpated Claim, except for gross negligence, willful misconduct, fraud, or criminal conduct, but in all respects such entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan. The Exculpated Parties have, and upon confirmation of the Plan, shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.**

**3.    Injunction.**

**The Plan provides, and the Confirmation Order shall provide, among other things, that any Person (other than the Debtors, the Committee, the Debtors' Estates or the Liquidation Trustee) who has held, holds, or may hold a claim against, interest in, or right with respect to the Debtors' Estates, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, or any claim against or interest in the Debtors, the Debtors' Estates or the Liquidation Trust for which the Debtors' Estates or the Liquidation Trust are or may be liable is, with respect to any such claim, interest, or right, permanently enjoined from and after the Effective Date from taking any of the following actions (other than actions taken in the Bankruptcy Court or in any of the Chapter 11 Cases to enforce any rights or obligations under the Plan or to defend challenges to the validity or amount of a Disputed Claim), absent further order of the Bankruptcy Court: (i) asserting, commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting any of the Debtors' Estates, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, on account of any claim for which the Debtors or Liquidation Trustee are directly or indirectly liable, including without limitation, by way of contribution, indemnity or otherwise; (ii) enforcing, levying, attaching (including, without limitation, any prejudgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against any of the Debtors' Estates, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any lien of any kind against the Debtors' Estates, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; (v) prosecuting, commencing, continuing or otherwise asserting any right, claim or cause of action released pursuant to the Plan or that is otherwise inconsistent with the provisions of the Plan against the Debtors' Estates, the Assets, the Liquidation Trust, or the Liquidation Trust Assets; and (vi) acting to obtain**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

possession of the Liquidation Trust Assets or to exercise control over the Liquidation Trust Assets or any rights or interests of the Debtors, their Estates, the Liquidation Trust, or the Liquidation Trustee with respect to the Assets or the Liquidation Trust Assets.  If the Liquidation Trustee, the Liquidation Trust Assets or the Debtors' Estates are injured by any willful violation of such injunction, the Liquidation Trustee shall be entitled to seek actual damages, including costs and attorneys' fees, and, in appropriate circumstances, punitive damages, from the willful violator(s).  Notwithstanding the foregoing, holders of Disputed Claims are not enjoined from and shall retain all rights to defend or prosecute such Disputed Claims in the Bankruptcy Court, including, without limitation, the right to assert affirmative defenses, setoff, or recoupment, if applicable.  Nothing herein shall impair or delay any rights of any Holder of a Claim against the Debtors, their Estates, the Assets, the Liquidation Trust, or the Liquidation Trust Assets, to pursue any action against any third party who may be directly liable to such Holder.

Nothing contained in Section 12.3 of the Plan shall be construed to in any way enjoin, prevent, or limit the Liquidation Trustee's rights, power, and authority under the Plan and the Liquidation Trust Agreement.

Nothing contained in Section 12.3 of the Plan shall be construed to in any way enjoin, prevent, or limit the ability of a party that was granted relief from the automatic stay during the Chapter 11 Cases to liquidate its claims, or from continuing to liquidate such claims, in the applicable court.

**4.** **Releases by the Debtors.**

As of the Effective Date, for good and valuable consideration, including the contributions of the Released Parties in facilitating the administration of these Chapter 11 Cases and other actions contemplated by the Plan and the other contracts, instruments, releases, agreements, or documents executed and delivered in connection with the Plan, including the Insider Contribution, the Released Parties are deemed forever released and discharged by the Debtors and Estates from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors or the Estates, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Debtors or the Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other entity, based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, these Chapter 11 Cases, the Plan, the Disclosure Statement, or related agreements, instruments or other documents, including any rights or remedies under section 506 of the Bankruptcy Code, other than Claims or liabilities to the extent arising out of or relating to any act or omission of a Released Party that constitutes gross negligence, actual fraud or willful misconduct, as determined by a Final Order.

For the avoidance of doubt, the foregoing releases include the release of any Claims of the Debtors and the Estates relating to, arising from, or in connection with the Antitrust Action; *provided, however*, nothing in the Plan, the Disclosure Statement, or the Confirmation Order shall be deemed to amend, limit, modify, or otherwise affect any obligation, requirement, defense or claim or remedy or relief for Motorola or the Insiders (or any person or entity claiming by or through the Insiders) in any dispute, action, or matter between Motorola and the Insiders (or any person or entity claiming by or through the Insiders).

Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the releases contained in the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

27

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

5.     **Satisfaction and Release of Insider Claims Against the Debtors.**

As of the Effective Date, for good and valuable consideration, including the releases set forth in Section 12.4 of the Plan, the Insiders have agreed to forego any distribution from the Debtors and the Estates on account of any Claims of the Insiders, including the Insider Proofs of Claims, and compromise and settle such Claims in the Plan. As of the Effective Date, the Debtors and the Estates are deemed settled, forever released and discharged by the Insiders from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Insiders, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing or hereinafter arising, in law, equity or otherwise, that the Insiders would have been legally entitled to assert based in whole or in part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, these Chapter 11 Cases, the Plan, the Disclosure Statement, or related agreements, including, but not limited to, the Insider Claims; *provided, however*, nothing in the Plan, the Disclosure Statement, or the Confirmation Order shall be deemed to amend, limit, modify, or otherwise affect any right, obligation, requirement, defense or claim or remedy or relief for the Insiders (or any person or entity claiming by or through the Insiders) against Motorola, including in the Antitrust Action, Patent Action, or Trade Secret Action.

For the avoidance of doubt, upon the Effective Date, the Insider Proofs of Claim and any amounts identified on the Debtors' Schedules of Assets and Liabilities as being owed to the Insiders are deemed satisfied by the terms of the Plan.

6.     **Reservation of Rights of Motorola and the Insiders.**

For the avoidance of doubt, and notwithstanding anything to the contrary contained in the Plan, the Disclosure Statement, or the Confirmation Order, nothing in the Plan, any of the releases contained therein, the Disclosure Statement, or the Confirmation Order shall (a) be deemed to amend, limit, modify, or otherwise affect any right, obligation, requirement, defense, claim, remedy, or relief for Motorola against an Insider (or any person or entity claiming by or through an Insider), including in the Antitrust Action, Patent Action, or Trade Secret Action, or (b) grant, or be construed as granting, any license to or release under (i) any intellectual property of Motorola to any Debtor or Insider or (ii) any claim and/or cause of action held by Motorola against an Insider.  Similarly, for the avoidance of doubt, and notwithstanding anything to the contrary contained in the Plan, the Disclosure Statement, or the Confirmation Order, nothing in the Plan, any of the releases contained therein, the Disclosure Statement, or the Confirmation Order shall (a) be deemed to amend, limit, modify, or otherwise affect any right, obligation, requirement, defense, claim, remedy, or relief for any Insider, including Hytera Communications Corporation Limited and PowerTrunk Inc., against Motorola or (b) grant, or be construed as granting, any release under any claim and/or cause of action held by any of the Insiders against Motorola, including any claim and/or cause of action that relates to the Debtors or in which the Debtors were parties.

7.     **Preservation of Insurance.**

The provisions of the Plan and the Confirmation Order shall not diminish or impair the enforceability of any insurance policies that may cover claims against any Debtor or any other Person or prevent any Person from seeking or enforcing coverage with respect to any claim under any applicable insurance policies of the Debtors.  The Liquidation Trustee shall be authorized, in its sole discretion, to pay from the Liquidation Trust Reserve any fees, expenses, or premiums necessary to maintain such insurance coverage.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

## F.    Executory Contracts and Unexpired Leases

### 1.    Rejection.

Subject to Section 12.4 of the Plan, upon the Effective Date, all agreements executed by the Debtors before the Effective Date, other than agreements that were previously either assumed and assigned or rejected by a Final Order, to the extent that these agreements constitute executory contracts or unexpired leases under section 365 of the Bankruptcy Code, shall be rejected.  The Confirmation Order shall constitute a Final Order under section 365 of the Bankruptcy Code approving such rejection.

### 2.    Bar Date for Rejection Damage Claims.

Any Rejection Damage Claims arising from rejection under the Plan of an executory contract or unexpired lease must be filed with the Bankruptcy Court and served on the Liquidation Trustee and his or her counsel within 30 days after the Effective Date.  Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable against the Debtors, the Estates, the Liquidation Trust, and the Liquidation Trustee, and their property, and the entities holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims.  The Liquidation Trustee shall have the right to object to any such Rejection Damage Claims; *provided*, *however*, that any such objections must be served and filed not later than 180 calendar days after the Effective Date, absent further order of the Bankruptcy Court.

## G.    Retention of Jurisdiction

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan.

## H.    Miscellaneous Plan Provisions

### 1.    Conditions Precedent to the Effective Date.

The Plan will not be consummated or become binding unless and until the Effective Date occurs.  The Effective Date will be the first Business Day after the following conditions have been satisfied: (i) the Confirmation Order, in a form reasonably acceptable to the Debtors, shall have been entered by the Bankruptcy Court; (ii) the Confirmation Order is not stayed; (iii) the Liquidation Trustee and the Debtors shall have signed the Liquidation Trust Agreement;  (iv) the funding of the Professional Fee Escrow Account shall have occurred; (v) the funding of the Insider Contribution shall have occurred; (vi) the Debtors, the Committee, and Motorola shall have filed a joint notice of consent to the effectiveness of the Plan (the "Consent Notice"); and (vii) no material adverse effect has occurred in respect of the Assets.  Each of these conditions precedent, other than the filing of the Consent Notice, may be waived in whole or in part by the Debtors without further notice or order of the Bankruptcy Court.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 2.    Plan Supplement.

Any exhibits or schedules not filed with this Disclosure Statement or the Plan may be contained in the Plan Supplement, if any, and the Debtors hereby reserve the right to file such exhibits or schedules as a Plan Supplement.

### 3.    Dissolution of the Board of Directors.

Upon the Effective Date, the existing board of directors of any Debtor shall be deemed dissolved, and any remaining director, officer, employee, or independent contractor of any Debtor

29

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

shall be dismissed, and each of the Debtors' directors, officers, employees, independent contractors, members, designated representatives, agents, and Professionals employed pursuant to a Bankruptcy Court order shall, subject to those matters set forth below, be released and discharged from any further authority, duties, responsibilities and obligations relating to, arising from, or in connection with the Debtors or the Chapter 11 Cases.

### 4.    Dissolution of Committee.

Upon the Effective Date, the Committee shall cease to exist and its members, designated representatives, agents, and Professionals employed pursuant to a Bankruptcy Court order shall, subject to those matters set forth below, be released and discharged from any further authority, duties, responsibilities, and obligations relating to, arising from, or in connection with the Committee or the Chapter 11 Cases.  The Committee shall continue to exist after such date solely with respect to (i) all the applications filed pursuant to section 330 of the Bankruptcy Code seeking payment of fees and expenses incurred by any Professional, (ii) any post-confirmation modifications to, or motions seeking the enforcement of, the provisions of the Plan or the Confirmation Order, and (iii) providing such information, books and records as may be reasonably requested by the Liquidation Trustee on behalf of the Liquidation Trust or holder of a Claim.  The Committee and its Professionals shall not be entitled to any compensation from the Liquidation Trust Assets for any actions taken pursuant to this paragraph, except for reasonable out-of-pocket expenses (but not professional fees).

### VIII.

### CONFIRMATION AND CONSUMMATION PROCEDURES

### A.    Overview

A chapter 11 plan may provide anything from a complex restructuring of a debtor's business and its related obligations to a simple liquidation of the debtor's assets.  In either event, upon confirmation of the plan, it becomes binding on the debtor and all of its creditors and equity holders, and the obligations owed by the debtor to such parties are compromised and exchanged for the obligations specified in the plan.  Before soliciting acceptances of the proposed plan, section 1125 of the Bankruptcy Code requires the debtor to prepare and file a disclosure statement containing adequate information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment about the plan.  **This Disclosure Statement is presented to holders of Claims against the Debtors to satisfy the requirements of section 1125 of the Bankruptcy Code in connection with the Debtors' solicitation of votes on the Plan.**

If all classes of claims and equity interests accept a chapter 11 plan, the bankruptcy court may confirm the plan if the bankruptcy court independently determines that the requirements of section 1129(a) of the Bankruptcy Code have been satisfied.  Section 1129(a) sets forth the requirements for confirmation of a plan and, among other things, requires that a plan meet the "best interests of creditors" test and be "feasible."  The "best interests" test generally requires that the value of the consideration to be distributed to the holders of claims or equity interests under a plan may not be less than those parties would receive if the debtor were liquidated pursuant to a hypothetical liquidation occurring under chapter 7 of the Bankruptcy Code.  Under the "feasibility" requirement, the bankruptcy court generally must find that there is a reasonable probability that the debtor will be able to meet its obligations under its plan without the need for further financial reorganization.  **The Debtors believe that the Plan satisfies all the applicable requirements of section 1129(a) of the Bankruptcy Code, including, in particular, the best interests of creditors' test and the feasibility requirement.**

The Bankruptcy Code does not require that each holder of a claim or interest in a particular class vote in favor of a plan of reorganization for the bankruptcy court to determine that the class has accepted the plan.  Rather, a class of creditors will be determined to have accepted the plan if the bankruptcy court determines that the plan has been accepted by a majority in number and two-thirds

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

in amount of those claims actually voting in such class.  Similarly, a class of equity security holders will have accepted the plan if the bankruptcy court determines that the plan has been accepted by holders of two-thirds of the number of shares actually voting in such class.

In addition, classes of claims or equity interests that are not "impaired" under a plan of reorganization or liquidation are conclusively presumed to have accepted the plan and thus are not entitled to vote.  Furthermore, classes that are to receive no distribution under the plan are conclusively deemed to have rejected the plan.  Accordingly, acceptances of a plan will generally be solicited only from those persons who hold claims or equity interests in an impaired class.  A class is "impaired" if the legal, equitable, or contractual rights associated with the claims or equity interests of that class are modified in any way under the plan.  Modification for purposes of determining impairment, however, does not include curing defaults and reinstating maturity on the effective date of the plan.  **Class 4 (Non-Motorola General Unsecured Claims) and Class 5 (Motorola General Unsecured Claims) are impaired under the Plan and entitled to vote on the Plan.**

A bankruptcy court also may confirm a chapter 11 plan even though fewer than all the classes of impaired claims and equity interests accept such plan.  For a chapter 11 plan to be confirmed despite its rejection by a class of impaired claims or equity interests, the plan must be accepted by at least one class of impaired claims (determined without counting the vote of insiders) and the proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or equity interests that has not accepted the plan.

Under section 1129(b) of the Bankruptcy Code, a plan is "fair and equitable" as to a rejecting class of claims or equity interests if, among other things, the plan provides: (a) with respect to secured claims, that each such holder will receive or retain on account of its claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; and (b) with respect to unsecured claims and equity interests, that the holder of any claim or equity interest that is junior to the claims or equity interests of such class will not receive or retain on account of such junior claim or equity interest any property from the estate, unless the senior class receives property having a value equal to the full amount of its allowed claim.

A plan does not "discriminate unfairly" against a rejecting class of claims or equity interests if (a) the relative value of the recovery of such class under the plan does not differ materially from that of any class (or classes) of similarly situated claims or equity interests, and (b) no senior class of claims or equity interests is to receive more than 100% of the amount of the claims or equity interest in such class.

**B.**    **Confirmation of the Plan**

**1.**    **Elements of Section 1129 of the Bankruptcy Code**

At the confirmation Hearing, the Bankruptcy Court will confirm the Plan only if all of the conditions to confirmation under section 1129 of the Bankruptcy Code are satisfied, including the following:

a.    The Plan complies with the applicable provisions of the Bankruptcy Code.

b.    The Debtors have complied with the applicable provisions of the Bankruptcy Code.

c.    The Plan has been proposed in good faith and not by any means proscribed by law.

d.      Any payment made or promised by the Debtors or by an entity issuing securities or acquiring property under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court; and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable.

e.      The Debtors have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer or voting trustee of the Debtors or a successor to the Debtors under the Plan and the appointment to, or continuance in, such office of such individual is consistent with the interests of creditors and equity holders and with public policy, and the Debtors have disclosed the identity of any insider that will be employed or retained by such Debtors, and the nature of any compensation for such insider.

f.      With respect to each impaired class of Claims or Interests, each holder of an impaired Claim or impaired Interest either has accepted the Plan or will receive or retain under the Plan, on account of the Claims or Interests held by such entity, property of a value, as of the applicable consummation date under the Plan, that is not less than the amount that such entity would receive or retain if the Debtors were liquidated on such date under chapter 7 of the Bankruptcy Code.

g.      In the event that the Debtors do not move to confirm the Plan non-consensually, each class of Claims or Interests entitled to vote has either accepted the Plan or is not impaired under the Plan.

h.      Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Claims and Priority Claims will be paid in full on the applicable consummation date and that Tax Claims will be paid in full, in cash, on the applicable consummation date or as soon as practicable thereafter; however, the Debtors shall have the right to make deferred cash payments on account of such Tax Claims over a period not exceeding six (6) years after the date of assessment of such Claims, having a value, as of the applicable consummation date, equal to the allowed amount of such Claims.

i.      At least one impaired class of Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider holding a Claim in such class.

j.      Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtors or any other successor to the Debtors under the Plan, unless such liquidation or reorganization is proposed in the Plan.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

k.    All fees payable under section 1930 of Bankruptcy Code, as determined by the Bankruptcy Court at the confirmation Hearing, have been paid or the Plan provides for the payment of all such fees on the Effective Date of the Plan.

l.    The Plan provides for the continuation after the consummation of the Plan of payment of all retiree benefits at the level established under section 1114(e)(1)(B) or (g) of the Bankruptcy Code at any time prior to confirmation of the Plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

**The Debtors believe that the Plan will satisfy all the statutory provisions of chapter 11 of the Bankruptcy Code, that the Debtors have complied or will have complied with all of the provisions of the Bankruptcy Code, and that the Plan is being proposed and will be submitted to the Bankruptcy Court in good faith.**

2.    <u>Acceptance</u>

A class of Claims will have accepted the Plan if the Plan is accepted, with reference to a class of Claims, by at least two-thirds in amount and more than one-half in number of the Allowed Claims of each such class of Claims.  Each class of Interests will have accepted the Plan if the Plan is accepted with reference to a class of Interests, by at least two-thirds in amount of the Allowed Interests of each class of Interests.

3.    <u>Best Interests of Creditors Test</u>

Section 1129(a)(7) of the Bankruptcy Code requires that each holder of an impaired allowed claim or interest either (i) accept the Plan or (ii) receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date (the "<u>Best Interests Test</u>").  The first step in meeting this test is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtors' assets in the context of a chapter 7 liquidation in which a chapter 7 trustee is appointed and charged with reducing to cash any and all assets of the Debtors.  Accordingly, this is the assumption employed in preparing the Liquidation Analysis.  The Bankruptcy Court will determine whether the Cash and property issued under the Plan to each Class equals or exceeds the value that would be allocated to the holders of Claims in a liquidation under chapter 7 of the Bankruptcy Code. The Debtors believe that the holders of Claims against the Debtors will have an equal or greater recovery under the Plan than could be realized in a chapter 7 liquidation.

Accordingly, the only question is whether the creditors will have recovered more (or at least as much) under the Plan than they would recover through a liquidation by a chapter 7 trustee.

To determine the value that a holder of a Claim in an Impaired Class would receive if the Debtors were liquidated under chapter 7, the Bankruptcy Court must determine the aggregate dollar amount that would be generated from the liquidation of the Debtors' Assets if the Chapter 11 Cases had been converted to chapter 7 liquidation cases and the Debtors' Assets were liquidated by a chapter 7 trustee (the "<u>Liquidation Value</u>").  The Liquidation Value would consist of the net proceeds from distribution of the Debtors' Assets, augmented by Cash held by the Debtors and reduced by certain increased costs and Claims that arise in a chapter 7 liquidation case that do not arise in a chapter 11 case.

As explained below, the Liquidation Value available for satisfaction of Claims against the Debtors would be reduced by: (a) the costs, fees, and expenses of the liquidation under chapter 7, which would include disposition expenses and the compensation of a trustee and his counsel and other retained professionals, (b) the fees of the chapter 7 trustee, and (c) certain other costs arising from

conversion of the Chapter 11 Cases to chapter 7.  The Liquidation Analysis attached hereto as <u>Exhibit B</u> establishes that creditors will clearly benefit from confirmation of the Plan.

**Moreover, if these Chapter 11 Cases were converted to cases under chapter 7 of the Bankruptcy Code, Holders of Class 4 Claims (Non-Motorola General Unsecured Claims) would share in any recoveries *pari passu* with Holders of Class 5 Claims (Motorola General Unsecured Claims), whose claims may exceed $500 million.  As a result, and as reflected in the Liquidation Analysis, recoveries for Holders of Class 4 Claims would be reduced from 47% to 73% under the Plan to approximately 2.1% in chapter 7.**

It is also anticipated that a chapter 7 liquidation would result in a significant delay in payments being made to creditors.  Bankruptcy Rule 3002(c) provides that conversion of the Chapter 11 Cases to chapter 7 will trigger a new bar date for filing claims against the Estates, and that the new bar date will be more than 90 days after the Chapter 11 Cases convert.  Not only would a chapter 7 liquidation delay distribution to creditors, but it is possible that additional Claims that were not asserted in the Chapter 11 Cases, or were late-filed, could be filed against the Estates.  The Debtors have received and are analyzing late-filed Claims and may file claims objections in the near future.  Reopening the Bar Dates in connection with conversion to chapter 7 would provide these and other claimants an additional opportunity to timely file Claims against the Estates.  Moreover, the Debtors would lose the benefit of having an established Administrative Claim Bar Date.

After consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to creditors in the Chapter 11 Cases, including: (i) the increased costs and expenses of a liquidation under chapter 7 arising from fees payable to a trustee in bankruptcy and professional advisors to such trustee; and (ii) the substantial increases in claims which would be satisfied on a priority basis or on parity with creditors in the Chapter 11 Cases, the Debtors have determined that confirmation of the Plan will provide each holder of a Claim or Interest with a greater recovery than it would receive pursuant to liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

**4.**    **Feasibility**

The Bankruptcy Code requires that confirmation of a plan is not likely to be followed by liquidation or the need for further financial reorganization.  Because distributions will be made only to the extent of existing assets or future recoveries, the Debtors believe the Plan is feasible.

**C.**    **Effect of Confirmation**

Under section 1141 of the Bankruptcy Code, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor or equity security holder, whether or not the claim or interest of such creditor or equity security holder is impaired under the plan and whether or not such creditor or equity security holder voted to accept the plan.  Further, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors and equity security holders, except as otherwise provided in the plan or the confirmation order.

**IX.**

**<u>CONCLUSION</u>**

The Debtors believe that the Plan is in the best interest of all holders of Claims and urge all holders of impaired Claims against the Debtors to vote to accept the Plan and to evidence such acceptance by returning their ballots in accordance with the instructions accompanying the Disclosure Statement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

2   November 30, 2021                HCA WEST, INC.

3                                    HAI EAST, INC.

4                                    HNA, INC.

5

6                                    _____

7                                    David Stapleton
                                     Chief Restructuring Officer of
8                                    Debtors and Debtors in Possession

9

10

11

12  Submitted by:

13   November 30, 2021               PACHULSKI STANG ZIEHL & JONES LLP

14

15                                   By    /s/ Jason H. Rosell
                                           Ira D. Kharasch (CA Bar No. 109084)
16                                         John W. Lucas (CA Bar No. 271038)
                                           Jason H. Rosell (CA Bar No. 269126)
17                                         Victoria A. Newmark (CA Bar No. 183581)

18                                         *Counsel to the Debtors and*
                                           *Debtors in Possession*

19  DOCS_LA:338919.10

20

21

22

23

24

25

26

27

28

35

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# **EXHIBIT A**

**Plan**

**[Intentionally Omitted]**

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

## **EXHIBIT B**

**Liquidation Analysis**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**LIQUIDATION ANALYSIS**

*Projected as of January 31, 2022*

---

NOTHING CONTAINED IN THE FOLLOWING LIQUIDATION ANALYSIS IS INTENDED
TO BE OR CONSTITUTES A CONCESSION OR ADMISSION OF THE DEBTORS. THE
ACTUAL AMOUNT OF ALLOWED CLAIMS IN THESE CHAPTER 11 CASES COULD
DIFFER MATERIALLY FROM THE ESTIMATED AMOUNTS SET FORTH IN THE
LIQUIDATION ANALYSIS.

---

## Introduction

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the
Bankruptcy Court find, as a condition to confirmation of the Plan, that each Holder of a Claim or Interest
in each Impaired Class: (i) has accepted the Plan; or (ii) will receive or retain under the Plan property of a
value, as of the Effective Date, that is not less than the amount that such Person would receive if the Debtors
were liquidated under chapter 7 of the Bankruptcy Code.  To make these findings, the Bankruptcy Court
must: (1) estimate the Cash proceeds that a chapter 7 trustee would generate if each Chapter 11 Case was
converted to a chapter 7 case on the Effective Date and the Assets of such estate were liquidated; (2)
determine the distribution that each non-accepting Holder of a Claim or Interest would receive from the net
estimated liquidation proceeds under the priority scheme dictated in chapter 7; and (3) compare each
Holder's estimated recovery under liquidation to the distribution under the Plan that such Holder would
receive if the Plan were confirmed and consummated.

Based on the following hypothetical Liquidation Analysis, the Debtors believe that the Plan satisfies the
best interests test and that each Holder of an Impaired Claim or Interest will receive value under the Plan
on the Effective Date that is not less than the value such Holder would receive if the Debtors liquidated
under chapter 7 of the Bankruptcy Code.  The Debtors believe that this Liquidation Analysis and the
conclusions set forth herein are fair and represent management's best judgment regarding the results of a
liquidation of the Debtors under chapter 7 of the Bankruptcy Code taking into account various factors,
including the additional costs of a chapter 7 trustee and its counsel.  This Liquidation Analysis was prepared
for the sole purpose of assisting the Bankruptcy Court and Holders of Impaired Claims or Interests in
making this determination, and should not be used for any other purpose.  Nothing contained in this
Liquidation Analysis is intended as or constitutes a concession or admission for any purpose other than the
presentation of a hypothetical Liquidation Analysis for purposes of the best interests test.  Accordingly,
asset values discussed herein may be different than amounts referred to in the Plan.  This Liquidation
Analysis is based upon certain assumptions discussed herein and in the Combined Disclosure Statement
and Plan.

## Significant Assumptions

This Liquidation Analysis was prepared by Stapleton Group in connection with Stapleton Group's
representation of the Debtors in these Chapter 11 Cases and for use in this Disclosure Statement.  This
Liquidation Analysis assumes that the liquidation of the Debtors would commence on or about January 31,
2022 (the "Conversion Date") under the direction of a chapter 7 trustee and would continue for a period of
approximately twelve (12) months, during which time the chapter 7 trustee would reconcile claim amounts
with historical records, oversee the collection of outstanding accounts receivable, and oversee the final
reconciliation and payment of any outstanding Administrative Claims.  Upon completion of these tasks,
any remaining Cash would then be distributed to creditors in accordance with the priority scheme

DOCS_SF:105744.4

established under the Bankruptcy Code. The Debtors expect any chapter 7 trustee to retain professionals to assist in the liquidation of the Estates.

For the avoidance of doubt, the vast majority of the value of the Estates is derived from Cash on the Debtors' balance sheet. Accordingly, there would be minimal "liquidation of assets" activities prior to moving on directly to claims analysis and distribution of value to creditors in accordance with the priorities established under the Bankruptcy Code.

The Plan is based in part on a global settlement (the "Settlement") among the Debtors, Insiders, Committee, and Motorola. Pursuant to the Settlement, (1) the Insiders agreed to, among other things, contribute $200,000.00 to the Class 4 Fund and release all Insider Claims, (2) Motorola agreed to reduce its Claim from $673,026,994 to $496,613,891, and (3) Motorola agreed to, among other things, permit $1.8 million of cash to be used to fund the Class 4 Fund for the benefit of Holders of Non-Motorola General Unsecured Claims. For purposes of this Liquidation Analysis, the Debtors assume the terms of the Settlement are not enforceable upon conversion of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code.

This Liquidation Analysis was prepared on a consolidated basis for all Debtors. The liquidation of the Debtors' Assets is based on projected book values as of the Conversion Date, unless noted otherwise.

The statements in this Liquidation Analysis, including estimates of Allowed Claims, were prepared solely to assist the Bankruptcy Court in making the findings required under section 1129(a)(7) of the Bankruptcy Code and they may not be used or relied upon for any other purpose.

THE DEBTORS BELIEVE THAT ANY ANALYSIS OF A HYPOTHETICAL LIQUIDATION IS NECESSARILY SPECULATIVE. THERE ARE A NUMBER OF ESTIMATES AND ASSUMPTIONS UNDERLYING THE LIQUIDATION ANALYSIS THAT ARE INHERENTLY SUBJECT TO SIGNIFICANT UNCERTAINTIES AND CONTINGENCIES BEYOND THE CONTROL OF THE DEBTORS OR A CHAPTER 7 TRUSTEE. NEITHER THE LIQUIDATION ANALYSIS, NOR THE FINANCIAL INFORMATION ON WHICH IT IS BASED, HAS BEEN EXAMINED OR REVIEWED BY INDEPENDENT ACCOUNTANTS IN ACCORDANCE WITH STANDARDS PROMULGATED BY THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS. THERE CAN BE NO ASSURANCE THAT ACTUAL RESULTS WILL NOT VARY MATERIALLY FROM THE HYPOTHETICAL RESULTS PRESENTED IN THE LIQUIDATION ANALYSIS.

ADDITIONALLY, THE VALUE RANGE ASCRIBED IN THIS DISCLOSURE STATEMENT TO THE PLAN CONSIDERATION TO BE DISTRIBUTED TO CREDITORS DOES NOT PURPORT TO REFLECT OR CONSTITUTE AN APPRAISAL, NOR IS IT INTENDED TO BE AN ESTIMATE OF THE VALUE OF THE DEBTORS' BUSINESS AND ASSETS.

<u>**Summary Notes to Liquidation Analysis**</u>

1. *Dependence on assumptions*. This Liquidation Analysis is based on a number of estimates and assumptions that are inherently subject to significant economic, business, regulatory, and competitive uncertainties and contingencies beyond the control of the Debtors. Accordingly, there can be no assurance that the values reflected in this Liquidation Analysis would be realized if the Debtors were, in fact, to undergo such liquidation and actual results could vary materially and adversely from those contained herein.

2. *Additional claims in a liquidation*. The liquidation itself may trigger certain obligations and priority payments that otherwise would not be due in the ordinary course of business or would otherwise not exist under the Plan. These priority payments would be made in full before any distribution of proceeds to Holders of General Unsecured Claims or Interests. As discussed above, this Liquidation Analysis assumes the terms of the Settlement are not available in a chapter 7 liquidation. Accordingly, a conversion to chapter 7 may subject the chapter 7 estates to additional claims.

3. *Litigation claims*. This Liquidation Analysis does not attribute any value to potential litigation claims that may belong to the Estates, including any claims to recover potentially avoidable preferential and/or fraudulent transfers (if any).

4. *Chapter 7 liquidation costs*. It is assumed that a period of twelve (12) months would be required to complete the liquidation or wind-down of the Estates.

5. *Claim estimates*. Claims are estimated at the Conversion Date based on the Debtors' current projections. When Claims could not be projected, liabilities as of the Petition Date were used.

*Conclusion*: **The Debtors have determined, as summarized in the following analysis, that confirmation of the Plan will provide all Impaired Holders of Claims or Interests with a recovery (if any) that is not less than what they would otherwise receive pursuant to a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.**

DOCS_SF:105744.4

**HCA West, Inc., HAI East, Inc., HNA, Inc.**
**Liquidation Analysis**

| | | Projected As of Effective Date 1/31/2022 | Chapter 7 Recovery % | Chapter 7 Liquidation | Chapter 11 Recovery % | Chapter 11 Liquidation |
|---|---|---|---|---|---|---|
| **Current Assets** | | | | | | |
| Available Cash | | $ 17,400,000 | 100% | $ 17,400,000 | 100% | $ 17,400,000 |
| Cash Reserve From Accused Inventory Sale | | 505,456 | 100% | 505,456 | 100% | 505,456 |
| Accounts Receivable - Trade | N1 | 9,322,000 | 4% | 372,880 | 5% | 466,100 |
| Accounts Receivable - Non-Debtor Affiliates | N2 | 5,965,000 | 0% | - | 0% | - |
| Payment from Affiliates | | 200,000 | 0% | - | 100% | 200,000 |
| **Total Current Assets** | | | | $ 18,278,336 | | $ 18,571,556 |
| | | | | | | |
| **Estimated Cash Available for Liquidation** | | | | $ 18,278,336 | | $ 18,571,556 |
| | | | | | | |
| **Ch. 11 Admin and Priority Claims** | | | | | | |
| Professional Fees | N3 | | | | | |
| CRO | | | | 389,000 | | 389,000 |
| Legal | | | | 745,000 | | 745,000 |
| Other Professionals | | | | 75,000 | | 75,000 |
| Professional Fee Reserve | | | | 300,000 | | 300,000 |
| Post Petition Accounts Payable | | | | 130,000 | | 130,000 |
| Motorola Asserted Administrative Claim | N4 | | | 505,456 | | - |
| **Total Payments Required for Plan Confirmation** | | | | 2,144,456 | | 1,639,000 |
| | | | | | | |
| **Cash Available for Liquidation Expenses** | | | | $ 16,133,880 | | $ 16,932,556 |
| | | | | | | |
| **Liquidation Expenses** | N5 | | | | | |
| Ch 7 Trustee or Liquidation Trustee Fees | N6 | | | 480,000 | | 60,000 |
| Insurance & Other administrative | | | | 50,000 | | 50,000 |
| UST Fees - Estimate | | | | 265,000 | | 265,000 |
| Contingency | | | | 250,000 | | 250,000 |
| **Total liquidation expenses** | | | | $ 1,045,000 | | $ 625,000 |
| | | | | | | |
| **Remaining Distributable Cash to General Unsecured Creditors** | | | | $ 15,088,880 | | $ 16,307,556 |

| | | | Chapter 7 Liquidation | | Chapter 11 Liquidation N7 | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Low | | High |
| **Estimated Recovery to Unsecured Creditors** | | Claim | % | $ | % | $ | % | $ |
| Motorola Unsecured Claim - Ch. 7 | | 673,026,994 | 2.07% | 13,963,315 | - | - | - | - |
| Motorola Unsecured Claim - Ch.11 | | 596,613,891 | - | - | 2.4% | 14,307,556 | 2.4% | 14,307,556 |
| Non-Debtor Affiliate Unsecured Claims | | 50,007,574 | 2.07% | 1,037,509 | - | - | - | - |
| Non-Motorola & Non-Affiliate Unsecured Claims | N7 | 4,244,274 | 2.07% | 88,056 | 47% | 2,000,000 | - | - |
| Non-Motorola & Non-Affiliate Unsecured Claims | N7 | 2,744,274 | - | - | - | - | 73% | 2,000,000 |
| | | | | | | | | |
| Total | | | | $ 15,088,880 | | $ 16,307,556 | | $ 16,307,556 |

**Notes:**

**N1**  The Chapter 11 Plan of liquidation assumes Stapleton Group, as Liquidating Trustee, will find a buyer for the remaining third-party A/R and there will be a bulk purchase if the A/R is not sold prior to confirmation.

**N2**  For Liquidation Analysis purposes, pre-petition Accounts Receivable from non-debtor affiliates of $6MM will likely be offset by the Accounts Payable due to non-debtor affiliates. Accounts Payable due to non-debtor affiliates is in excess of $30MM.

**N3**  Estimated legal and professional fees to be incurred through the effective date.

**N4**  Solely for purposes of this liquidation analysis, the Debtors assume that Motorola is entitled to an administrative claim equal to the cash reserve, which represents potential royalties owed on Accused Inventory.

**N5**  The debtor will have no operations during this time, the only activities will be confirming claims, liquidating and collecting on assets, and distributing remaining funds in accordance with the approved plan.

**N6**  A Chapter 7 Plan of Liquidation is estimated to take 12 months to complete. A Chapter 7 Trustee would be assigned who would be unfamiliar with the companies operation and remaining assets. Stapleton Group was appointed as CRO for the debtors in January 2021. Stapleton has become familiar with the entities books and records through the preparation of the monthly operating reports. Stapleton estimates $60,000 in fees for the first 60 days of liquidation, and $15,000 per month after that.

**N7**  There are two unresolved legal claims. If these claims are included, the total Non-Motorola & Non-Affiliate general unsecured claims are approx. $4.2MM. If these claims are not included, the total Non-Motorola & Non-Affiliate general unsecured claims are approximately $2.7MM.